24-195/keh

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 9:25-cv-80457-RLR**

**G.M., individually, and as parent and legal**
**guardian of JANE DOE, a minor,**

       Plaintiff,

vs.

**SOUTH TECH ACADEMY, INC,**

       Defendant.

_____/

**DEFENDANT SOUTH TECH ACADEMY, INC.'S**
**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW, Defendant, SOUTH TECH ACADEMY, INC. ("South Tech"), by and

through the undersigned counsel, and pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure,

hereby files this Motion to Dismiss Plaintiffs', G.M., individually, and as parent and legal guardian

of JANE DOE, a minor (collectively, "Plaintiffs") Amended Complaint, and, in support thereof,

states as follows:

**INTRODUCTION AND BACKGROUND**

Plaintiffs Jane Doe and her mother, G.M., initiated this action against Defendant South

Tech Academy, Inc. and former Co-Defendant Damian Conti ("Mr. Conti"), former South Tech

teacher, on March 6, 2025. *See Initial Complaint, Exhibit A*. On March 11, 2025, Plaintiffs filed

their First Amended Complaint, removing Mr. Conti as a defendant and bringing claims for

negligent supervision, negligent retention, negligent training, deprivation of civil rights under 42

U.S.C. §1983, violation of Title IX of the educational amendments of 1972, and a claim for loss

of filial consortium on behalf of G.M. *See First Amended Complaint, Exhibit B*. Plaintiffs allege that at all times relevant, Jane Doe was a student at South Tech Academy and identify Mr. Conti as a South Tech teacher from July 27, 2022 through his arrest on February 6, 2024. *Ex. B*, ¶¶13-14.

Plaintiffs allege Conti, by virtue of his job as a teacher for South Tech, "met, groomed, sexually assaulted, harassed and victimized" Jane Doe; which began when Conti offered to be her mentor, recruited her to the volleyball team and started freely communicating with her despite knowing South Tech's prohibition against it *Ex. B*, ¶¶12, 15-19, 30. Plaintiffs allege Conti sexually assaulted Jane Doe for the first time in a shopping plaza parking lot on October 16, 2024, and by the end of October 2024, Conti was sexually assaulting Jane Doe in his classroom and storage closets on South Tech's campus, as well as after school when they would take joy rides. *Id.* ¶¶24-26. There are no allegations any South Tech administrator was aware of the driving lessons, joy rides, the gifts or sexual contact.

Plaintiffs allege that in December 2023, rumors about Mr. Conti's inappropriate behavior towards his female students were circulating among South Tech students, and South Tech staff disregarded them. *Ex. B*, ¶¶27-28. Plaintiffs allege Conti and Jane Doe both approached South Tech administrators, and they denied the rumors. *Ex. B*, ¶38. Plaintiffs allege that on February 1, 2024, Jane Doe again denied the rumors, named the alleged rumor spreaders *Ex. B*, ¶¶40-41. Plaintiffs allege that on Monday, February 5, 2024, Principal Turenne separately summoned Conti and Jane Doe to her office and advised them to refrain from speaking to dispel the rumors. *Ex. B*, ¶42. Plaintiffs allege that after school that same day, Conti met Jane Doe in a parking lot where he sexually assaulted Jane Doe one last time. *Ex. B*, ¶44. Plaintiffs do not allege any South Tech administrators were aware or should have been aware this meet-up occurred.

Plaintiffs allege that on the morning of February 6, 2024, a male student came forward to notify Principal Turenne that he had concrete evidence of the sexual relationship between Conti and Jane Doe. *Ex. B*, ¶45. Plaintiffs allege Principal Turenne suspended Conti until further notice. *Ex. B*, ¶46. Plaintiffs allege Jane Doe refused to speak to police officers investigating her relationship with Conti; and after taking a test, Jane Doe was instructed by South Tech administrators to sign herself out and go home. *Ex. B*, ¶¶49-52. Plaintiffs allege Jane Doe signed herself out and left campus. *Ex. B*, ¶¶50-52. Plaintiffs allege South Tech was willfully oblivious to Jane Doe's emotional state and failed to make a therapist available to her before she left. *Ex. B*, ¶53.

Plaintiffs allege that after leaving school, Jane Doe met Conti at Home Depot, where Jane Doe quickly purchased rope and chain before they went their separate ways, having made a suicide pact. *Ex. B*, ¶54. Plaintiffs allege Jane Doe's parents arrived on campus thereafter, and when Jane Doe's mother finally connected with Jane Doe, Principal Turenne tore the phone from G.M.'s hand to demand Jane Doe return to campus immediately, but to no avail. *Ex. B*, ¶¶55, 58. Plaintiffs allege that after Conti reached out to the police about Jane Doe's suicidal ideation, Conti explained his relationship with Jane Doe and was arrested. *Ex. B*, ¶¶59-60. Plaintiffs allege that after a thirty-minute search, police officers discovered Jane Doe hanging from a tree behind a nearby church and were able to intervene, saving Jane Doe's life. *Ex. B*, ¶61.

Plaintiffs bring this action against South Tech only, asserting claims of negligent supervision, negligent retention, negligent training, deprivation of civil rights under §1983, violation of the education amendments to Title IX, and for loss of filial consortium. As will be demonstrated in further detail below, Conti and Jane Doe actively hid their relationship and are seeking to hold South Tech responsible for Jane Doe's injuries based on South Tech's failure to

prevent Jane Doe's injuries. Importantly, however, the allegations illustrating Conti's predatory behaviors are based on instances and situations that were not known and could not have been known to South Tech administrators, faculty or staff by simply observing Conti and Jane Doe's time together on campus. Separately, it should also be noted that Plaintiffs conclusions certain administrators failed to take action or investigate issues of concern are contradicted by Plaintiffs clear assertions that South Tech administrators *did* take action. *See, e.g., Ex. B*, ¶¶15, 20-21, 26, 28, 31, 34-36, 37-42, 45-46. Moreover, Plaintiffs improperly identify, allege and argue the existence of actual notice to South Tech administrators in their claim for violation of Title IX. *See Ex. B*, ¶¶104-105, 107, 110-112. Finally, Plaintiff G.M. has failed to demonstrate that she properly complied with the mandatory pre-suit notice requirements under section 768.28(6), Fla. Stat.

## ARGUMENT & MEMORANDUM OF LAW

### I.    Standard of Review

The Florida Rules of Civil Procedure and the Federal Rule of Civil Procedure Rule 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and while the rule does not require "detailed factual allegations[,]" the factual allegations set forth are required to "raise a right to belief above the speculative level[.]" *Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 679.

When considering a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Rule 12(b)(6), Fed. R. Civ. P.; *Jackson v. Okaloosa*

*Cnty.,* 21 F.3d 1531, 1534 (11th Cir. 1994). Although factual allegations must be accepted as true, for the purposes of the motion, a court is not required to accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle,* 833 F.Supp. 906, 910 (S.D. Fla. 1993). Moreover, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged or that a defendant has violated laws in ways that have not been alleged. *See Beck v. Interstate Brands Corp.,* 953 F.2d 1275, 1276 (11th Cir. 1992). Likewise, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *See B.H. Papasan v. Allain,* 478 U.S. 265, 286 (1986). Although the federal rules ascribe to liberality in pleadings, bald assertions and conclusions of law will not defeat a properly supported motion to dismiss. *See Leeds v. Meltz,* 85 F. 3d 51, 53 (2d Cir. 1996).

"As an initial matter, [A] court 'is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss.'" *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.,* 522 F.Supp.3d 1202, 1207 (S.D. Fla. 2021) (quoting *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)). However, where "the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami,* 811 F.3d 1271, 1277 (11th Cir. 2016); *see also Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern"). In other words, "[w]here the allegations of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and the allegations are nullified." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP,* 693 F.Supp.2d 1325, 1341 (S.D. Fla. 2010).

**II.     Plaintiffs fail to state actionable negligence claims against South Tech in Count I of the Amended Complaint**

*A.     Plaintiffs fail to state a claim for negligent supervision of students*

"As a general principle, a party does not have a duty to take affirmative action to protect or aid another unless a special relationship exists which creates such a duty." *Limones v. Sch. Dist. of Lee Cnty.*, 161 So.3d 384, 390 (Fla. 2015) (citing Restatement (Second) of Torts §314 . a (1965)). "When such a relationship exists, the law requires the party to act with reasonable care toward the person in need of protection or aid." *Limones*, 161 So.3d at 390 (citing Restatement (Second) of Torts § 314a cmt. e).

"We begin our analysis with a recognition of the general principle in Florida jurisprudence that school officials and/or teachers are neither insurers of their students' safety, nor are they strictly liable for any injuries which may be sustained by the students." *Concepcion By & Through Concepcion v. Archdiocese of Miami By & Through McCarthy*, 693 So.2d 1103, 1104 (Fla. 3d DCA 1997). "In determining the existence of a legal duty, which is a question of law, a court allocates risk by 'balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed.'" *Kazanjian v. Sch. Bd. of Palm Beach Cnty.*, 967 So. 2d 259, 265 (Fla. 4th DCA 2007) (citing *Levy v. Fla. Power & Light Co.*, 798 So.2d 778, 780 (Fla. 4th DCA 2001)).

"A public school, at least through the high school level, undoubtedly owes a general duty of supervision to the **students** placed within its care. Case law is replete with instances of schools, principals and teachers being required to reasonably fulfill their duty to supervise **students**." *Rupp v. Bryant*, 417 So.2d 658, 666 (Fla. 1982) (emphases added). Considering the mandatory nature of child education, Florida courts have recognized a special relationship between schools and their students based upon the fact that a school functions at least partially in the place of parents during the school day and school-sponsored activities. *See Limones*, 161 So.3d at 390 (Fla. 2015) (citations omitted).

To prevail on a theory of negligent supervision by a teacher, a plaintiff must

establish (1) the existence of a teacher-student relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty by the teacher; and (3) the proximate causation of the student's injury by the teacher's negligence.

*Broward Cnty. Sch. Bd. v. Ruiz*, 493 So.2d 474, 476–77 (Fla. 4th DCA 1986) (emphasis added) (citing *Collins v. Sch. Bd. of Broward Cnty.*, 471 So.2d 560 (Fla. 4th DCA 1985)).

"[A] duty of supervision has been found for **student injuries** occurring on-school premises as well as off-school premises for school-related activities." *Concepcion*, 693 So.2d at 1104 (emphasis added) (citing *Rupp*, 417 So.2d at 667-68). Conversely, a school has no duty to supervise **students** participating in non-school related activities occurring off-campus after school hours. *See Oglesby v. Seminole Cnty. Bd. of Pub. Instruction*, 328 So.2d 515, 516-17 (Fla. 4th DCA 1976) (emphasis added). "While Florida recognizes a general duty of supervision, a school has no duty to supervise 'all movements of all **pupils** all the time.'" *Kazanjian*, 967 So.2d at 264 (emphasis added) (quoting *Rupp*, 417 So.2d at 668 n.26). A school's duty to supervise its **students** is analogous to the duty of care owed by a landowner to invitees for events occurring solely off the landowner's premises and wholly unconnected to any activity on the landowners' premises. *See Concepcion*, 693 So.2d at 1104 (emphasis added) (citing *Rupp*, 417 So.2d at 667-68). For example, a school's duty to supervise **students** does not extend to prevent the occurrence of potential harms occurring off campus; as schools have no duty to prevent teenage students licensed to drive automobiles from leaving a school's premises in order to protect students from potential injuries occurring off campus. *Id.* (emphasis added).

Accordingly, as the duty to supervise the students left within a school's care is limited to student injuries that occur on campus and other that occur off-campus at school-related events, it follows that there is no liability for the activities between Conti and Jane Doe which occurred off-campus and outside of school-related events. *See Concepcion*, 693 So.2d at 1104, *see also Ex. B*,

¶¶18, 20, 22-28, 32, 38, 40, 44.

>  **B.**    ***Plaintiffs fail to state a claim for negligent supervision under a theory of vicarious liability or respondeat superior***

"Stated differently, negligent supervision occurs when the defendant negligently places the plaintiff under the supervision of an employee whom the defendant either knew or should have known had the propensity to commit the alleged torts." *Trocano v. Vivaldi*, 720 F.Supp.3d 1231, 1240–41 (M.D. Fla. 2024) (quoting *K Co. Realty LLC v. Pierre*, 376 So.3d 730, 735 (Fla. 4th DCA 2023)). The above-referenced theory of negligent supervision is predicated on a theory of vicarious liability, wherein a principal is held responsible for the wrongful acts of its agent if the agent was acting within the scope of his authority or during the course of the agency to further the purpose or interest of the principal. *See Pierre*, 376 So.3d at 735 (citing *Trevarthen v. Wilson*, 219 So.3d 69, 72 (Fla. 4th DCA 2017)). "It is where the employee's acts are committed within the scope or course of his employment that an employer may be liable under the doctrine of respondeat superior." *Garcia v. Duffy*, 492 So.2d 435, 441 (Fla. 2d DCA 1986) (citations omitted).

> An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master.

*Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So.2d 353, 357 (Fla. 3d DCA 2001) (citing *Sussman v. Florida E. Coast Props., Inc.*, 557 So.2d 74, 75–76 (Fla. 3d DCA 1990)). "Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment, and therefore, insufficient to impose vicarious liability on the employer." *L.M.*, 783 So.2d at 357 (quoting *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So.2d 1076, 1078 (Fla. 5th DCA 1985)). Indeed, §768.28(9(a) *Fla. Stat* holds that the governmental employer is "not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside

the course and scope of her or his employment or committed in the bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property." *Id.*

Accordingly, Plaintiffs potential claim against South Tech for the sexual assault of Jane Doe by Conti, which was clearly outside the scope of his employment as a teacher employed by South Tech, and therefore, South Tech cannot be liable for the same under a theory of vicarious liability and is statutorily immune from any liability. *See Garcia*, 492 So.2d at 441.

### C.     *Plaintiffs fail to state a claim for negligent retention*

"Florida recognizes a cause of action for negligent retention." *Tercier v. Univ. of Miami, Inc.*, 383 So.3d 847, 853 (Fla. 3d DCA 2023), *reh'g denied* (Oct. 6, 2023) (citing *N. Miami Med. Ctr., Ltd. v. Miller*, 896 So.2d 886, 889 (Fla. 3d DCA 2005)). "Negligent retention, …, occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Garcia v. Duffy*, 492 So.2d 435, 438–39 (Fla. 2d DCA 1986) (citations omitted). "To prove such cause of action, the plaintiff must show: (1) the employer became aware or should have become aware that the subject employee was 'unfit,' and (2) the employer failed to take further action, e.g., investigation, discharge, reassignment." *Tercier*, 383 So.3d at 853 (citing *Bennett v. Godfather's Pizza, Inc.*, 570 So.2d 1351, 1353 (Fla. 3d DCA 1990)).

"'It is necessary that the underlying wrong—the actions of the employee or servant—be a tort,' and that the employee's actions 'be performed *outside* the scope of employment.'" *Id.* at 853 (quoting *Acts Ret.-Life Comtys. Inc. v. Est. of Zimmer*, 206 So.3d 112, 115 (Fla. 4th DCA 2016)). "However, these theories of liability do not render an employer strictly liable for criminal acts

committed by a 'dangerous employee' against a third person." *Magill v. Bartlett Towing, Inc.*, 35 So.3d 1017, 1020 (Fla. 5th DCA 2010) (citing *Garcia*, 492 So.2d at 441).

However, as noted above, South Tech, as a governmental agency, is not liable and has immunity from such a claim because it is conduct which is outside the scope of employment of the employee.  See 768.28(9)(a) *Fla. Stat*

### D.    *Plaintiffs fail to state a claim for negligent training*

"Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Watts v. City of Hollywood, Fla.*, 146 F.Supp.3d 1254, 1269 (S.D. Fla. 2015) (quoting *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir.2001)). "Negligent training occurs when an employer was negligent in the implementation or operation of the training program." *Cruz v. Advance Stores Co.*, 842 F.Supp.2d 1356, 1359 (S.D. Fla. 2012) (quoting *Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F.Supp.2d 1327, 1332 (S.D.Fla.2010).

"Claims for negligent training are typically barred by sovereign immunity because a 'decision regarding how to train ... [employees] and **what subject matter** to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning.'" *C.H. by Hilligoss v. Sch. Bd. of Okaloosa Cnty., Fla.*, 606 F.Supp.3d 1186, 1198 (N.D. Fla. 2022) (emphasis added) (quoting *Lewis*, 260 F.3d at 1266). "The State of Florida has waived sovereign immunity in tort actions for any act for which a private person under similar circumstances would be held liable." *Gualtieri v. Bogle*, 343 So.3d 1267, 1274 (Fla. 2d DCA 2022) (quoting *Henderson v. Bowden*, 737 So.2d 532, 534-35 (Fla. 1999)). "Under the discretionary function exception, 'basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity.'" *Gualtieri*, 343

So.3d at 1275 (quoting *Pollock v. Florida Dept. of Highway Patrol*, 882 So.2d 928, 933 (Fla. 2004). "In short, an act is 'discretionary' if it involves an 'exercise of executive or legislative power such that, for the court to intervene by way of tort law would inappropriately entangle it in fundamental questions of policy and planning.'" *Lewis*, 260 F.3d at 1264–65 (quoting *Dep't of Health and Rehab. Servs. v. Yamuni,* 529 So.2d 258, 260 (Fla.1988)). "Conversely, an 'operational' act is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Lewis,* 260 F.3d at 1265 (citing *Kaisner v. Kolb,* 543 So.2d 732, 737 (Fla. 1989)).

Here, Plaintiffs allege South Tech failed to provide training to its employees which is a discretionary function and is therefore barred from suit based on principles of sovereign immunity. *See C.H. by Hilligoss,* 606 F.Supp.3d at 1198. Accordingly, to the extent Plaintiffs are alleging South Tech was negligent for failing to train its staff, teachers and students in the area of predatory child grooming and mental health assistance, those claims are barred by sovereign immunity and must be dismissed. *Id.*

To the extent such training was an operational function, Plaintiffs allegations fail to establish that South Tech had actual or constructive notice of a need for training predicated on either Mr. Conti's purported misconduct or based on any indication that Jane Doe was in need of mental health services before February 6, 2024. Plaintiffs do not allege that Jane Doe was sexually victimized by Mr. Conti as a result of South Tech's failure to train employees in the area of mental health. Additionally, to the extent that this claim seeks to hold South Tech liable for its failure to anticipate or predict Jane Doe would harm herself, Jane Doe's actions were undertaken off campus, after school and were not school-related. *See Oglesby v. Seminole Cnty. Bd. of Pub. Instruction,* 328 So.2d 515, 516-17 (Fla. 4th DCA 1976). Accordingly, Plaintiffs' claim for negligent training

against South Tech should be dismissed.

### III.    Plaintiffs fail to state a viable claim for deprivation of civil rights under 42 U.S.C. §1983, Count II

Title 42 U.S.C. § 1983 imposes liability on a person who, acting under the color of state law, deprives a person of any rights, privileges or immunities secured by the Constitution and laws. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Under section 1983, a municipality cannot be held liable on a theory of *respondeat superior*, but it may be held liable for its own, independent violations of federal law." *Watts v. City of Hollywood, Fla.*, 146 F.Supp.3d 1254, 1270 (S.D. Fla. 2015) (citing *Monell*, 436 U.S. at 691, 694). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

> A causal connection can be established in one of two ways: "(1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so or (2) when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights."

*Williams v. Fulton Cnty. Sch. Dist.*, 181 F.Supp.3d 1089, 1127-28 (N.D. Ga. 2016) (quoting *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010)).

"In cases alleging municipal 'inaction,' a custom arises where a municipality fails to correct 'the constitutionally offensive actions of its employees' and instead 'tacitly authorizes' or

'displays deliberate indifference towards the misconduct.'" *C.H. by Hilligoss*, 606 F.Supp.3d at 1196 (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001)). "In other words, liability may only attach where the municipality's custom or policy caused municipal employees to violate the plaintiff's constitutional rights." *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F.Supp.3d 957, 990 (N.D. Fla. 2019) (emphasis added) (citing *Gold*, 151 F.3d at 1350).

A pre-requisite of asserting a claim of governmental agency liability is that there has been a constitutional violation by an employee or agent of the agency. Here, however, there are no specific constitutional rights violations alleged. Mention is made of a Fourth and Fourteenth Amendment violations, but the is no specification of a particular violation that is applicable under the facts alleged in the complaint.

"The Fourth Amendment to the United States Constitution guarantees citizens the right to be secure against unreasonable seizures." *Johnson v. Cannon*, 947 F.Supp. 1567, 1572 (M.D. Fla. 1996) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989)). However, there is no seizure under color of law without probable cause alleged in the complaint. Thus, there is no claim under the Fourth Amendment.

Next, "[t]he Equal Protection Clause of the Fourteenth Amendment provides that 'no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.'" *Weeks v. Colquitt Cnty., Georgia*, No. 7:23-CV-77, 2025 WL 897531, at *8 (M.D. Ga. Mar. 24, 2025) (citing *Martinez v. Warden*, 848 F. App'x 864, 867 (11th Cir. 2021)). It has been held that a government official may be held liable under §1983 upon a showing of deliberate indifference to known sexual harassment. *Williams v Bd. of Regents of Univ. Sys. Of Ga.*, 477 F3d 1282, 1300-02 (11the Cir. 2007).

However, a plaintiff must prove that the individual defendant "actually knew of an acquiesced in" the discriminatory conduct. *Murrell v. Sch. Dist. No. 1, Denver Colo.* 186 F.3d 1238, 1250 (1999). Here, Plaintiffs fail to allege a violation by a South Tech administrator, much less a custom or policy of deliberate indifference that caused such a violation.

## IV.    Plaintiffs fail to state a viable claim for violation of Title IX of the educational amendments of 1972, 20 U.S.C. §1681, Count III

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "A teacher's sexual harassment of a student constitutes actionable discrimination for the purposes of Title XI." *Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1283 (11th Cir. 2005) (discussing *Franklin v. Gwinett Cnty. Pub. Schs.*, 503 U.S. 60, 65 (1992)). "Title IX liability arises only where 'an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has **actual notice** of, and is deliberately indifferent to, the teacher's misconduct.'" *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010) (emphasis added) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)).

> As the Eleventh Circuit has explained, a plaintiff seeking recovery for a Title IX violation based on student-on-student harassment must prove five elements: (1) the defendant must be a Title IX funding recipient; (2) an "appropriate person" must have **actual knowledge** of the alleged discrimination or harassment; (3) the discrimination or harassment—of which the funding recipient had actual knowledge under element two—must be "severe, pervasive, and objectively offensive"; (4) the funding recipient acted with "deliberate indifference to known acts of harassment in its programs or activities"; and (5) the discrimination "effectively barred the victim's access to an educational opportunity or benefit."

*Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F.Supp.3d 1241, 1257–58 (S.D. Fla. 2019) (emphasis added) (quoting *Hill v. Cundiff*, 797 F.3d 948, 970 (11th Cir. 2015)).

"Title IX prohibits sex discrimination by recipients of federal education funding." *Janie*

*Doe 1 ex rel. Miranda v. Sinrod*, 117 So.3d 786, 788 n. 2 (Fla. 4th DCA 2013), *approved sub nom. Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So.3d 41 (Fla. 2017) (citation omitted). "Liability under 'Title IX is predicated upon **notice** to an "appropriate person" and an opportunity to rectify any violation.'" *Saphir by & through Saphir v. Broward Cnty. Pub. Sch.*, 744 F.App'x 634, 638 (11th Cir. 2018) (quoting *Gebser*, 524 U.S. at 290). "[W]e conclude that it would 'frustrate the purposes' of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment of a student based on principles of *respondeat superior* or constructive notice, *i.e.,* without actual notice to a school district official." *Gebser*, 524 U.S. at 285.  Further, it is required that there be actual knowledge of incidents that are so severe, pervasive and objectively offensive that they can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educt.*, 526 U.S. 629, 650 (1999).

First, nowhere in the Amended Complaint do Plaintiffs allege South Tech is a Title IX funding recipient or that South Tech receives federal financial assistance. Accordingly, Plaintiffs have failed to properly allege the first element of this claim. *See Sinrod*, 117 So.3d at 788 n. 2.

Second, Plaintiffs do not accurately or coherently identify sufficient facts to support of Plaintiffs claim against South Tech based on the actual notice under Title IX. *See Ex. B*, ¶¶101-113. Liability under Title IX requires actual notice to the appropriate individual and an opportunity to correct the violation. *See Saphir by & through Saphir*, 744 F. App'x at 638. Here, however, Plaintiffs clearly alleges South Tech did receive actual notice—but refer to the prior allegations concerning Mr. Conti's covert behaviors, which are not actual notice. *See Ex. B,* ¶104. Although Plaintiffs allegations regurgitate the essential elements of a Title IX claim, these allegations do not correspond with, relate back to or logically follow Plaintiffs' general allegations of fact. *Compare Ex. B,* ¶¶107-111; *with* ¶¶17-46. Accordingly, absent clear allegations of actual notice, Plaintiffs

have failed to state a claim. *See Gebser*, 524 U.S. at 289.

More specifically, Plaintiffs have failed to allege that South Tech administrators received notice of an event, occurring prior to February 6, 2024, that constituted actual notice of Mr. Conti's dangerous sexual propensities. and how, acted with deliberate indifference to such an event. Moreover, there are no allegations that an administrator was deliberately indifferent to sexual harassment that was severe, pervasive and objectively offensive.

### V.     Plaintiffs fail to state a viable claim for loss of filial consortium, Count IV

To properly plead a tort claim against a sovereign defendant, a plaintiff is required to allege the specific methods by which the sovereign waived its sovereign immunity. The waiver of sovereign immunity must be clear and unequivocal. *Manatee County v. Town of Longboat Key*, 365 So.2d 143, 147 (Fla.1978); *Rabideau v. State*, 409 So.2d 1045, 1046 (Fla.1982). Any waiver of sovereign immunity is strictly construed, *Manatee Cnty.*, 365 So.2d at 147, and will not be found as a product of inference or implication. *Spangler v. Fla. State Tpk. Auth.*, 106 So.2d 421, 424 (Fla. 1958). The pleading must also include clear and unequivocal language that the sovereign in fact waived its sovereign immunity. *Arnold v. Shumpert*, 217 So.2d 116, 120 (Fla. 1968) (holding that in "suing a county a plaintiff must allege in his complaint the specific methods by which the county waives its sovereign immunity"); *Levine v. Dade Cnty. Sch. Bd.*, 442 So.2d 210, 213 (Fla. 1983) (the facts on which a waiver of sovereign immunity depends must be specifically pleaded in the complaint).

Case law makes clear that strict compliance with the notice requirements of this statute is necessary to maintain an action against the state, its agencies, or subdivisions. *Menendez v. N. Broward Hosp. Dist.*, 537 So. 2d 89 (Fla. 1988); *Levine v. Dade County Sch Bd.*, 442 So. 2d 210 (Fla. 1983); *Osten v. City of Homestead*, 757 So. 2d 1243 (Fla. 3d DCA 2000). As § 768.28(6) is

part of a statutory waiver of sovereign immunity, there must be strict compliance with its requirements. *See Levine,* 442 So.2d at 213.

Here, Plaintiff G.M., individually and as the parent of Jane Doe, has failed to allege compliance with all conditions precedent necessary to maintain her claim pursuant to Florida's statutory waiver of sovereign immunity established in §768.28(6) Fla. Stat. Specifically, the complaint is devoid of any allegation, exhibit or attachment which evidences that Plaintiff G.M., individually, provided South Tech and the Department of Financial Services with notice of the claim.

## VI.    CONCLUSION

For all the reasons set forth above, Plaintiff's complaint should be dismissed.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by CM/ECF to all parties on the attached Counsel List this this _16th_ day of April 2025

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendant South Tech Academy

**LYMAN H. REYNOLDS, JR.**
FBN: 380687

17

STYLE:             **G.M. v. SOUTH TECH ACADEMY, INC.**
CASE NO.:          **9:25-cv-80457-RLR**
OUR FILE NO.:      **24-195**

# COUNSEL LIST

**JACK SCAROLA, ESQ.**
**VICTORIA MESA-ESTRADA ESQ.**
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409-6601
*Counsel for Plaintiff*
PHONE: 561-686-6300
E-SERVICE: jsx@searcylaw.com
           _scarolateam@searcylaw.com
           vmestrada@searcylaw.com
           mesateam@searcylaw.com
EMAIL: jsx@searcylaw.com
           _scarolateam@searcylaw.com
           vmestrada@searcylaw.com
           mesateam@searcylaw.com
FBN: 169440 / 76569

**LYMAN H. REYNOLDS, JR., ESQ.**
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, FL 33409
*Counsel for Defendant*
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: lreynolds@rrbpa.com
           bsmith@rrbpa.com
           kherald@rrbpa.com
FBN: 380687