**** CASE NUMBER: 502025CA002189XXXAMB Div: AO ****
Filing # 218226108 E-Filed 03/06/2025 12:34:56 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

CASE NO.

▆▆▆ individually, and as parent and legal
guardian of JANE DOE, a minor,

     Plaintiff,

vs.

▆▆▆▆▆▆▆▆ and
DAMIAN CONTI,

     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ▆▆▆ individually and as the parent and legal guardian of JANE DOE[1],

a minor, (hereinafter referred to as "Plaintiff" or "JANE DOE") by and through the undersigned

counsel and files her Complaint against Defendants, ▆▆▆▆▆▆▆▆▆▆

(hereinafter referred to as "▆▆▆▆▆▆"), pursuant to the Florida Rules of Civil Procedure and

in support thereof states as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages that exceed $75,000.00 and for other relief within the

jurisdiction of this Court.

2.    At all times material hereto, Plaintiff, JANE DOE was a resident of Palm Beach County,

Florida.

3.    At all times material hereto, the Plaintiff, JANE DOE was a minor child who attended

---

[1] Plaintiff is being identified by JANE DOE only, because, as the victim of a sexual battery, her identity is
protected from public disclosure under Florida law. Defendants are both aware of JANE DOE's full name.



████individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████Academy, Inc. etal.

Complaint

████████████ in Palm Beach County, Florida.

4.      At all times material hereto, Defendant ████████is a Not-For-Profit Corporation organized pursuant to the laws of the State of Florida, and has its principal place of business in Boynton Beach, County of Palm Beach, Florida.

5.      At all times material hereto, DAMIAN CONTI was a resident of Palm Beach County, Florida, and was a teacher at ████████until February 2024.

6.      Venue is proper in Palm Beach County, Florida, because the conduct from which the claim arises occurred in Palm Beach County. Additionally, all natural parties were residents of Palm Beach County, Florida and ████████has its principal place of business in same.

## CONDITIONS PRECEDENT

7.      On or about March 7, 2024, JANE DOE provided written notice of her claim, via certified mail, and pursuant to section §768.28 of the Florida Statutes, to ████████████, Florida Department of Education, and State of Florida Department of Financial Services. Copies of the letters and green cards are attached as "Composite Exhibit A." The Department of Financial Services or the appropriate agency failed to make final disposition of the claim within six (6) months, which is deemed a final denial of the claim. Upon information and belief, all conditions precedent have been complied with or waived.

## GENERAL ALLEGATIONS

8.      Defendant ████████is a public, tuition-free charter school in The School Board of Palm Beach County, Florida's school system serving students in grades 9 through 12. ████

2



████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████ etal.

Complaint

████ is directed and operated by an eight-member Governing Board of Directors who exercise control over ████████ who are in charge of setting the policies and guidelines for the school, and who delegate to staff day-to-day responsibilities for operational matters.

9.      Defendant ████████ s Governing Board exercises control over ████████ s Executive Director and Principal, who are in charge of its operations, staffing, hiring, discipline, creating and enforcing policies, school safety, screening new employees, and ensuring that its staff is not sexually abusing its students. Defendant ████████ responsibilities include, but are not limited to, hiring, firing, supervising, transferring, suspending, disciplining, and directing the work of all school personnel (including CONTI), and collaborating with the School's officials, administrators, employees, agents, and representatives regarding same. Defendant ████████ is also responsible for creating and enforcing policies and procedures to keep children, like JANE DOE, safe and protected from all forms of abuse by teachers, like CONTI.

10.     In addition, Defendant ████████ has adopted rules and regulations for the school, and has also created policies, procedures and bylaws by which ████████ is governed and is required to follow, including all applicable Florida Statutes and State Board Rules. Defendant ████████ is thus responsible for enforcing and ensuring compliance with federal and Florida law and its own rules, regulations, policies, and procedures, including those related to sexual and psychological abuse of students by teachers. Further, ████████ s officers, administrators, teachers and other staff are all subject to mandatory governmental reporting requirements requiring

3

███ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ███████████████ etal.

Complaint

that they report, investigate, and take action when they know or should have known that a child was being sexually abused.

11. ███████████ Executive Director, Principal and Board of Directors, are the administrative and supervisory heads of the school. Among other things, the Executive Director and Principal (as well as the school's teachers) are responsible for enforcing and ensuring compliance with federal and Florida law and the School Board's rules, regulations, policies, and procedures, including those related to sexual and psychological abuse of students by teachers. The Executive Director, Principal, and Board of Directors are also involved in the hiring, firing, transferring, and disciplining of staff, teachers, and other employees at their school. At all times material hereto, the Executive Director of ███████████ was Carla Lovett.

12. At all relevant times, each agent, employee, representative, official, administrator, and teacher of Defendant █████████ including its governing board members, the Principal, the Assistant Principals, the teachers, and the School Police, was the authorized agent of the other and of Defendant ██████████ and each was acting within the course, scope, and authority of such agency. This includes Defendant CONTI. Additionally, each of the foregoing individuals and entities, authorized, ratified, or affirmed each act or omission of each of the other foregoing individuals or entities.

13. DAMIAN CONTI was employed by █████████ since 2022 and continued in that position at all times material hereto. CONTI was a teacher at ██████████ and, in that role, he had access to and control over JANE DOE. Additionally, he was responsible for teaching,

4

███ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ██████████████ etal.
Complaint

supervising and taking appropriate actions to protect JANE DOE.

<u>**FACTS GIVING RISE TO THE CLAIMS**</u>

14.     At all times material, Plaintiff, JANE DOE, whose date of birth is ████████ was a

minor enrolled student at ██████████

15.     ██████████ employed CONTI as a Language Arts Teacher then as an AP English

Teacher from approximately July 27, 2022, until his arrest on February 6, 2024.

16.     At all times material, CONTI was acting under the color of state law and acting with

authority possessed by virtue of his employment as a teacher at ██████████ and pursuant to

the power that he possessed by and through his employment at ██████████. Through his

official duties as an employee of ██████████ CONTI met, groomed, sexually assaulted,

harassed and victimized JANE DOE—a minor under his supervision and control. CONTI used his

authority to harass, control and manipulate JANE DOE at ██████████ and beyond. Many of

the acts of improper unlawful and abusive conduct occurred at ██████████ during normal

business hours when neither CONTI nor JANE DOE was being properly supervised, and the

conduct occurred with such frequency and under such open and obvious circumstances that even

minimal supervision would have detected its occurrence. Indeed, the conduct complained of herein

was known to students, staff members and administrators but was ignored and tolerated by ██████████

██████

17.     While employed at ██████████ CONTI was directed by the school to supervise and

teach minor children. Consequently, CONTI met student, JANE DOE, when she was only sixteen

NOT A CERTIFIED COPY

██████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████ etal.

Complaint

(16) years old. CONTI was Jane Doe's AP English Teacher during the 2023-24 school year. JANE

DOE was under his direct supervision and control. CONTI was enabled in accomplishing his

psychological and sexual abuse/assault of JANE DOE by the existence of his employee/employer

relationship with ████████████

18.     Beginning in JANE DOE's junior school year, CONTI began the process of "grooming"

JANE DOE, first, by showing sympathy and encouragement to JANE DOE, offering to serve as

her academic college mentor, and creating after-school "meetups" with JANE DOE near her

student locker to greet her every day.

19.     Despite being fully aware that ████████ employee policies prohibited fraternizing with

students in many ways, CONTI initiated *prohibited* communications via email, social media

platforms and phone text with JANE DOE to discuss non-school related topics, and did so both

during school hours and evenings.

20.     Further, he also recruited JANE DOE to join ████████████ after school Volleyball

Club, for which he served as coach, thereby extending and maintaining direct supervision over

JANE DOE, and separately offering one-on-one volleyball lessons to her. This relationship

allowed him to target JANE DOE and isolate her from her classmates and school staff.

21.     By the end of the 2023-24 school's first quarter, CONTI's interest in JANE DOE became

apparent to other students, faculty and staff. CONTI would often provide pretextual reasons to

meet up with JANE DOE by removing JANE DOE from volleyball club practice and taking her

into his classroom, using these manipulative behaviors to gain private access to JANE DOE. First,

██ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ██████████ etal.
Complaint

he started to confide in JANE DOE about his work life, sharing internal information involving the school administration and faculty, and giving her personal details about his lifestyle at home. As he developed trust with JANE DOE, he would let her vent about her own problems and challenges in her daily life, acknowledging her feelings of frustration and dissatisfaction. Then, he transitioned into sharing intimate "secrets" about his marriage, including details about his sexual life with his wife.

22.      To lure her into his classroom and separate her from her friends, CONTI encouraged JANE DOE to hang out in his classroom before, during and after school hours, which JANE DOE did multiple days a week, including eating lunch alone with CONTI in his classroom. CONTI's "alone" time with JANE DOE was quickly known to multiple individuals, including Ms. Eileen Turenne ██████ Principal) and Ms. Erin Kurtz ██████ Assistant Principal) who frequently saw them together in and around CONTI's classroom, school hallways, and during and after school hours, and observed their friendly and playful interactions, including acts of physical contact between CONTI and JANE DOE. Instead of questioning the overly close personal relationship between CONTI and JANE DOE that was publicly known to students, teachers and administration ██████ decided to stick their heads in the sand, ignoring the fact there was no legitimate reason for JANE DOE to be in Conti's classroom with such frequency, particularly during volleyball practice time. This type of student-teacher relationship should have been highly alarming to every teacher and/or administrator who observed the nature and frequency of the contact between them.

7

███ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████ etal.

Complaint

23.     Further, as CONTI encouraged JANE DOE to share intimate details about her life at home, he was critical of what he perceived as JANE DOE's parents' lack of involvement and convinced her to take him as her mentor and life guide. To gain her trust further, he began to give JANE DOE driving lessons after school to assist her in obtaining her unrestricted driver's license..

24.     By early October 2023, CONTI was emailing, texting and calling JANE DOE every day, during and after school hours and had managed to desensitize JANE DOE into allowing physical contact. On or about October 12, 2023, after their regular driving lesson, CONTI physically hugged JANE DOE, which she quickly rejected, and he acknowledged to JANE DOE that the hug was intrusive and apologized. Hours later, CONTI "confessed" to JANE DOE that his feelings towards her had evolved and he now found himself romantically connected to her. Not surprisingly, this so-called "confession" by CONTI sent JANE DOE into a spiral of emotions and state of confusion that her young mind could not comprehend with clarity.

25.     By October 16, 2023, CONTI had successfully gained JANE DOE's complete trust, and lured her into a nearby shopping plaza where he began to sexually assault the child in her vehicle after school. He had also effectively taken full control of tracking her movements, convincing her to allow him to track her location indefinitely via a phone tracking application.

26.     By late October 2023, JANE DOE  often found herself alone with CONTI and being sexually assaulted in his classroom, school storage closet and in both of their vehicles, among other locations. He would summon her to his classroom when no other students were around, and into his or her vehicle outside school. He would convince JANE DOE to take joy rides with him

NOT A CERTIFIED COPY

███ ndividually, and as parent and legal guardian of JANE DOE, a minor,

v ██████████████████ etal.

Complaint

throughout Palm Beach County after volleyball lessons and began performing oral sex on her.  He would often leave school early after student dismissal time, under the pretext of family emergencies so he could bait JANE DOE to meet him after school at different locations where he could sexually assault her before she would go to work or home.

27.     As the sexual abuse escalated, CONTI continued to employ every manipulative tactic to exert control over JANE DOE such as dictating all her movements, constantly inquiring about her whereabouts and with whom she was communicating. To keep tight control over JANE DOE, he would often create situations to be alone with her, such as granting JANE DOE access to the school building through side doors, granting her school passes so she could come meet with him in his classroom alone, preparing school lunch meals for her and inviting her to eat lunch with him alone during school hours. Several teachers and faculty members personally witnessed these lunch meetings, but no one ever questioned, nor reported to the administration anything about this unusual teacher-student relationship between CONTI and JANE DOE.

28.     By early to mid December 2023, rumors widely circulated among ███████ students regarding CONTI's inappropriate behavior towards certain female students, including JANE DOE. CONTI quickly became aware of what was being said in the school hallways and started pressuring certain students to tell him who had initiated the rumors so he "could put a stop to it."

29.     As the pressure mounted on CONTI, he began to notice that JANE DOE was feeling severely stressed out and hesitant about their inappropriate relationship; in response, he quickly began to give unexplained gifts to JANE DOE and *her* friends to keep her happy and dissipate her

███████ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ███████████████ etal.
Complaint

concerns. CONTI paid for special items for JANE DOE, including buying jewelry, Apple air pods,
clothing, paying her annual subscription to Spotify, food and drinks.  Despite the rumors being
quite public among the students, no one in ███████████ s administration or faculty seemed to
be paying attention to CONTI's over friendly behaviors with female students. In fact, CONTI told
JANE DOE he had been praised by Assistant Principal Kurtz for the manner in which he
effectively gained the trust and respect of his students due to his youthful, friendly character and
personality.

30.     Throughout this time, ███████████ condoned and ratified CONTI's actions, including
his violation of school rules and policies, standing by silently and failing to take any meaningful
action to investigate and/or protect JANE DOE.

31.     The sexual misconduct of CONTI with JANE DOE originated because of the teacher-
student relationship between them while CONTI was a teacher at ███████████ and while he
was employed by ███████████ CONTI took advantage of his position, authority and control
over JANE DOE.

32.     ███████████ its administrators and employees had multiple opportunities to investigate,
prevent and report this abuse and, pursuant to Florida Law, all were mandatory reporters. Despite
other teachers and administrators frequently seeing CONTI alone with the child during
inappropriate times, it wasn't until student rumors began to circulate at school and in social media,
that the school made initial inquiries, and even then, they did not take any serious action.

33.     Further, CONTI knew that JANE DOE was particularly vulnerable and susceptible to being

10

████ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ████████████ etal.
Complaint

sexually abused since she had confessed to him, she had been previously victimized by an adult male as a young child.  CONTI used all this information to convince JANE DOE that their romantic relationship was real and had persuaded her to have vaginal sex with him, at times leaving bruises on her body.

34.    In early January 2024, CONTI continued to emotionally manipulate JANE DOE, realizing her anxiety and vulnerability and controlling her movements. During an prior to this same time, ████████ Administration received at least one complaint from parents reporting CONTI's unprofessional and inappropriate actions in the classroom with students and the rumors about inappropriate behavior with female students continued to spread.

35.    In early 2024, CONTI was evidently volatile in the classroom with students and ████ ████ administrators should have been aware of his unstable behavior. Around this time, CONTI confessed to JANE DOE that the prior year, he had been questioned by ████████ Assistant Principal Kurtz about inappropriate conduct with another female student and bragged to JANE DOE about how quickly he had convinced ████████ that the so-called accusations were unfounded. Consequently, ████████ took **no action** against CONTI at that time and he was only cautioned without any consequences or increased supervision:

Erin Kurtz <erin.kurtz@pbcharterschools.org>                    Tue, Jan 24, 2023 at 10:50 AM
To: Damian Conti <damian.conti@pbcharterschools.org>

Good Morning Mr. Conti,
Thank you for taking the time to speak to me today.  My goal is to make sure that ████ students continue to benefit from your dynamic teaching and caring presence.  Please remember that giving gifts and spending time with student groups outside of school activities is outside of the professional boundaries of a teacher/student relationship.  I am confident that you will avoid these situations and still be able to maintain a rapport with your students.
Thank you,

36.    Just a year after that 2023 communication, ████████ Assistant Principal Erin Kurtz

███ individually, and as parent and legal guardian of JANE DOE, a minor,
v ████████████████ etal.
Complaint

had undoubtedly become aware again of some of CONTI's inappropriate behaviors toward

students, but imposed a discipline and took no steps to protect students, including JANE DOE:

Erin Kurtz <erin.kurtz@pbcharterschools.org>                              Fri, Jan 12, 2024 at 12:21 PM
To: Damian Conti <damian.conti@pbcharterschools.org>

Good Afternoon,
I want to remind you that you should not be transporting students in your car.  If you are transporting them for a field trip,
the appropriate paperwork should be on file and there should always be a minimum of 3 people.  Let me know if you have
any questions.

37.     Upon information and belief, ████████ Administrators had received other

complaints from parents as early as the 2022-23 school year, indicating CONTI's recurring

inappropriate behavior with other female students, and ███████ took no precautionary

actions at the time.

38.     On or about mid-January 2024, a social media video was circulating among students,

showing JANE DOE getting into CONTI's vehicle at the school's teacher parking lot, which had

prompted the Jan. 12, 2024 email from Assistant Principal Kurtz to CONTI.

39.     As CONTI felt the pressure that was intensifying around him for his predatory behavior,

he continued to control JANE DOE and convinced her that the best plan at the time was to

proactively approach ███████ Administrators and deny any impropriety by CONTI despite

the fact that he was sexually assaulting her almost every day. Thereafter, on January 23, 2024,

JANE DOE approached ███████ Principal Turenne and Assistant Principal Kurtz and

alerted them to the rumors that were circulating and denied they were true. CONTI also separately

consulted with Principal Turenne and Assistant Principal Kurtz seeking their advice as to how to

handle the so-called "unfounded rumors."

███ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ██████████████ etal.
Complaint

40.     Despite these evident signs of impropriety by CONTI with female students, ████████ administrators chose to ignore the signs of CONTI's predatory behavior and accepted both CONTI's and JANE DOE's narrative as truthful without further investigation. Despite the explicit alerts, ██████ administrators told JANE DOE to "stop worrying so much" and took no action towards CONTI.

41.     By February 1, 2024, the school rumors were still circulating and JANE DOE was feeling anxious, paranoid and frightened that the truth was about to come out while CONTI increased the pressure on JANE DOE to deny their inappropriate relationship at all costs. To dissuade a further investigation, JANE DOE herself reached out *again* to Principal Turenne and Assistant Principal Kurtz to ask for help and provided the school with the names of students that that she believed were responsible for spreading the rumors about CONTI and JANE DOE.

42.     Upon information and belief, Principal Turenne and Assistant Principal Kurtz made minimal attempts to communicate with any of the students that had been identified by JANE DOE as her harassers, failing once again to properly report, document and investigate the alleged rumors and take action to protect JANE DOE from a sexual predator. Despite personally hearing from students about their observations involving CONTI's close relationship with JANE DOE, Principal Turenne failed to respond to CONTI's predatory behaviors and did not take any precautionary action at that time to remove CONTI from school and conduct a full and proper investigation into the students' observations and allegations.

43.     On Monday, February 5th, 2024, ████████ Principal Turenne summoned both

13

████████ ndividually, and as parent and legal guardian of JANE DOE, a minor,

v. █████████████████ etal.

Complaint

CONTI and JANE DOE separately during school hours. Disregarding the clear warnings that something inappropriate had been happening between CONTI and JANE DOE, Principal Turenne took no action to investigate the "unfounded rumors" against CONTI and told both CONTI and JANE DOE to simply refrain from speaking to each other to dispel the rumors. No other precautionary measures were taken by Principal Turenne at that time- CONTI was permitted to continue teaching students, without any concerns for the wellbeing of any children under ████ ████ care, and JANE DOE was told she should continue to follow her usual schedule, including attending her AP English class with CONTI the next day.

44.     Throughout this entire time, JANE DOE's parents were kept in the dark, completely unaware of the accusations and rumors involving their minor child JANE DOE of ████████ had clear knowledge for several weeks by then.

45.     On February 5, 2024, Conti summoned JANE DOE after school to a nearby plaza and sexually assaulted JANE DOE one last time.

46.     On the morning of February 6, 2024, a male student came forward and notified Principal Turenne and other school administrators that he had concrete evidence that CONTI and JANE DOE were having an ongoing inappropriate romantic relationship. The evidence reviewed by the school police indicated that CONTI was undoubtedly romantically and sexually involved with JANE DOE.

*02/06/24 Police Report*

14

ndividually, and as parent and legal guardian of JANE DOE, a minor,
v. ███████████████ etal.
Complaint



47.     Later that same day, as JANE DOE was ending her second school period, JANE DOE was alerted by a female friend that CONTI had sent an Instagram group message to her and several of her friends alerting them to permanently delete all digital conversations and pictures with CONTI. He also wrote that he just had been called into Principal Turenne's office for questioning by school police and then suspended from work until further notice. CONTI also told JANE DOE to prepare herself because she was about to be interrogated by school officials.

48.     A few minutes after the Instagram messages were received, Assistant Principal Kurtz walked into JANE DOE's classroom and asked JANE DOE to follow her into the main office. As she followed Kurtz, JANE DOE panicked and was severely distressed. Once in the main office, JANE DOE requested permission to go to the bathroom where she rushed to attempt to delete text messages between her and CONTI. JANE DOE was visibly unstable and in a state of despair trying to compose herself before she could come out of the bathroom. She remained in the bathroom for several minutes, which Assistant Principal Kurtz noticed, leading her to knock on the bathroom door inquiring why JANE DOE was taking so long to come out.

49.     JANE DOE finally came out of the bathroom and proceeded to the conference room. As she walked into the room, JANE DOE observed two police officers and Principal Turenne reviewing what appeared to be pictures or screenshots of JANE DOE's Instagram account on a

██████ individually, and as parent and legal guardian of JANE DOE, a minor,
v ███████████████ etal.
Complaint

cell phone. When they became aware that JANE DOE had entered the room, they hid the phone and told JANE DOE to take a seat.

50.     At said meeting, JANE DOE was initially told by officers of their investigation into allegations of an improper relationship between CONTI and JANE DOE. Officers further stated that their conversation with JANE DOE was going to be recorded.  When the recording started, the officers read JANE DOE her Miranda Rights and told her she had the right to remain silent and not talk to them if she did not wish to. Additionally, JANE DOE was told by school police officers that they had evidence already confirming her romantic relationship with CONTI. Although the delivery of Miranda warnings communicated exactly the opposite message, she was told that she has was not in any trouble.

51.     In response, JANE DOE refused to answer any questions and requested to have both her parents and an attorney present before she would speak to the officers. At that point, Principal Turenne scolded JANE DOE for not answering the officers' questions, further aggravating JANE DOE's emotional state at the time, and telling JANE DOE to leave school which JANE DOE refused to do. JANE DOE was permitted to call her stepfather, whom she quickly told that she was in trouble and told him she was being accused of having an improper relationship with a teacher. The school did not make any attempts to communicate directly with JANE DOE's parents and inform them of their recent findings, including the sexual assault JANE DOE had been subjected to and the obvious emotional turmoil she was experiencing. Wanting to escape her oppressors, JANE DOE requested to be permitted to return to class, so she could take a test. Principal Turenne

16

██████individually, and as parent and legal guardian of JANE DOE, a minor,
v.██████████████etal.
Complaint

sent her back to class and told her to return to the main office conference room afterwards to speak further.

52.    After taking her test, JANE DOE returned to the main office as told and met with Assistant Principal Kurtz. Kurtz asked her to follow her to the school's reception and told her to sign out and to go home. When JANE DOE began to sign herself out of school **as mandated** by Kurtz, the school receptionist in turn inquired as to why JANE DOE was leaving so early without a parent or guardian signing her out as was required by school policy.

53.    At this time, ████████████s receptionist contacted Principal Turenne via the school's radio walkie/talkie system to confirm that JANE DOE was being released from school without her parents' signature. Principal Turenne confirmed and responded **"Yes. Get her out of here"** to which the receptionist followed up by asking her if she had written or verbal consent from JANE DOE's parent or guardian. Turenne replied, **"I will deal with it later, just tell [JANE DOE] to sign on behalf of her parent."** Abiding with what Principal Turenne had just directed, JANE DOE signed out but signed her name instead, and left campus walking to her vehicle which was parked outside school grounds.

| ████████████ | 9cin | 2·0·24 | 11:38 | home |
|---|---|---|---|---|

54.    On that February 6, 2024 morning, willfully oblivious to the emotional turmoil inflicted on JANE DOE, ████████ administrators failed to check on JANE DOE's mental state despite the serious allegations that had come to light and the irrefutable evidence that the child had been sexually assaulted by CONTI. No counselor or therapist or anyone with the proper training to

17

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc. etal.
Complaint

provide mental care was made available to check on JANE DOE or speak to the child before she

was ordered by Turenne to leave school.

55.     After leaving school, JANE DOE immediately made contact with CONTI via phone and

met him at a nearby Home Depot a few minutes later. Upon information and belief, the pair made

a pact to commit suicide together. Once they met, the two walked inside the Home Depot store

together, bought a piece of rope and a chain, and left the store minutes later. Once in the parking

lot, the pair went separate ways, and JANE DOE drove away in her own vehicle alone.

56.     Meanwhile, as JANE DOE proceeded with her plan to commit suicide, JANE DOE's

parents arrived unannounced at ███████████ to ask questions about what was occurring.  To

their surprise, they were told that their child had been ordered to leave school without their consent.

At that point, the parents were told (via a Spanish interpreter) to sit in the conference room and

wait for information but no other information was provided to them.

57.     Despite their inquiries as to the whereabouts of their daughter, JANE DOE, and the reasons

for the meeting, JANE DOE's parents were given vague details and only told by school

administrators that police officers were trying to locate JANE DOE who had left the school

premises. However, at no time did ███████████ administrators inform JANE DOE's parents

that the child had been ordered to leave school premises earlier.

58.     While at school and waiting for news from the police officers, JANE DOE's parents were

able to track JANE DOE's location via their cellphone and immediately shared this information

with the school police officers.

███████dividually, and as parent and legal guardian of JANE DOE, a minor,

v.█████████████etal.

Complaint

59.     After multiple call attempts from police and JANE DOE's mother to JANE DOE, the child

finally answered her mother's call. As her mother pled with JANE DOE to return to school,

Principal Turenne snatched the mother's phone from her hands and instead of calmly speaking to

JANE DOE, she chastised the child for "getting [her] in trouble" and demanding her to return to

school. Principal Turenne shouted at JANE DOE over the phone and told her that she had "ten

minutes to return to school" or "[JANE DOE] will be in trouble." Then the child hung up, and no

one heard from JANE DOE again that day.

60.     At around 2:10 pm, the Palm Beach County 911 Emergency system received a call from

CONTI reporting that he was trying to "help someone who [was] threatening with suicide."

CONTI then indicated that "[JANE DOE was] trying to find a park to hang herself" and proceeded

to identify JANE DOE as a minor who was driving, "already ha[d] rope" and that he was driving

trying to find her. CONTI was asked to pull over by the 911 operator, and to stop driving in order

to meet with a police officer.

61.     A few minutes later, CONTI met with police at a nearby Burger King. CONTI provided

JANE DOE's contact information and volunteered other details, including his earlier suspension

from school, and confirming his involvement with JANE DOE:

**Police Report 2/6/2024**

```
      CPL ████  ADVISED THAT AS HE GATHERED INFORMATION TO ASSIST ████    IT
WAS DEVELOPED THAT         █████IS A CURRENT           ████STUDENT
                           █ AND DAMIAN IS ONE OF HER SCHOOL TEACHERS.
DAMIAN DISCLOSED TO CPL ████ THAT HE WAS RECENTLY SUSPENDED FROM THE SCHOOL
PENDING AN INVESTIGATION FOR "INAPPROPRIATE RELATIONS" WITH ████  WHO IS 16
YEARS OLD. DAMIAN, 35 YEARS OLD, WENT ON TO TELL HIM THAT HE WAS ASKED TO
LEAVE THE SCHOOL TODAY, 02/06/24.
```



████ individually, and as parent and legal guardian of JANE DOE, a minor,

v ████████████████████ etal.

Complaint



████ ████████ ███ ████████ TODAY, 2/06/24, SHE TOLD HIM SHE HAD A ROPE AND A CHAIN AND WANTED TO HANG HERSELF AT A PARK. DAMIAN FEELS THAT BECAUSE ████████ WAS LOOKING INTO HER HEAVILY, THIS MAY HAVE CONTRIBUTED TO HER WANTING TO DO THIS. ████████ ADMINISTRATION WAS PRIVY TO THE ACCUSATIONS BEING SPREAD ON CAMPUS; DAMIAN AND ████ WERE TOO CLOSE AND THAT THEY LIKELY WERE ENGAGING IN INAPPROPRIATE BEHAVIORS. ADMINISTRATION CONFRONTED HIM ABOUT THE ACCUSATIONS AND THAT WAS HOW HE FOUND OUT. DAMIAN FEELS "THINGS GOT OUT OF CONTROL, BUT THEY HAD A GOOD BOND." HE WOULD AT TIMES MEET UP AT THE ████ WHERE SHE WORKED AND ALSO MET UP WITH HER ONE ON ONE AT A NEARBY PARK. DAMIAN DESCRIBED THE RELATIONSHIP TO BE "ROMANTIC IN NATURE" AND THAT THERE WERE "FEELINGS THAT SHOULDN'T HAVE BEEN THERE." DAMIAN ADMITS THAT HE "SHOULD HAVE STOPPED IT." THIS CONVERSATION WAS CAPTURED WITH MY BODY WORN CAMERA.
    I MADE CONTACT WITH PALM BEACH COUNTY SCHOOL BOARD POLICE DEPARTMENT AND SPOKE TO SCHOOL POLICE OFFICER ████ WHO CONFIRMED THAT THERE WAS AN ACTIVE INVESTIGATION ON DAMIAN CONTI FOR ALLEGED LEWD AND LASCIVIOUS CONDUCT WITH ████ AND WITH AN ADDITIONAL STUDENT, ████████████ REFER TO PALM BEACH COUNTY SCHOOL BOARD POLICE DEPARTMENT CASE ████████████

62.    After approximately a 30-minute search by PBSO patrol officers and a PBSO helicopter, JANE DOE was found hanging by rope around her neck from a tree behind a nearby church. PBSO were the first responders on the scene and were able to provide cardiopulmonary resuscitation, miraculously saving JANE DOE's life.

63.    Meanwhile, for about two hours upon their arrival at ████████ JANE DOE's parents were kept uninformed and remained completely ignorant of the fact that their daughter had been sexually assaulted multiple times by ████████ teacher CONTI. At about 3:00 pm, JANE DOE's parents were told by school police that they needed to go to St. Mary's Hospital to meet with their daughter. No other information was provided to them at that time.

64.    Upon their arrival at St. Mary's Hospital, JANE DOE's parents heard for the first time ever from PBSO of the sexual abuse their child JANE DOE had endured for the past four months that led her to attempt to take her own life.

65.    On February 6, 2024, at approximately 2:30pm, CONTI was arrested. After his arrest, CONTI made additional admissions to police officers, including his earlier suspension from work

 individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████████ etal.

Complaint

at ████████ that morning pursuant to a school investigation into his relationship with JANE DOE.

66.    In reviewing the data of both CONTI's and JANE DOE's email, phone, and social media accounts, law enforcement extracted thousands of messages between CONTI and JANE DOE throughout the course of the last four months before CONTI's arrest, many of which contained highly inappropriate and/or explicit sexual content. Several of these communications clearly show that CONTI inappropriately communicated with JANE DOE while teaching class or while being on school grounds.

67.    Law enforcement arrested CONTI for three counts of unlawful sexual activity with a minor under F.S.794.05(1) and four counts for offense against a student by authority figure under F.S. 800.101(2)(a). To this day, CONTI remains in jail and awaits trial.

68.    ████████████ knew or should have known that CONTI was not fit for service as a high school teacher and that he never should have been permitted to be around children. CONTI had a clear and undeniable history of abusing his position of power to victimize his students and to engage in highly inappropriate relationships with them. Despite knowing that and/or having that information easily available to it, ████████████ continued to employ CONTI and permitted him to be unsupervised around children, including JANE DOE.

69.    As a result of the Defendants' actions, JANE DOE was sexually assaulted multiple times and suffered serious and permanent injuries. Additionally, her constitutional rights were violated including those afforded to her under the Fourth and Fourteenth Amendment.

21

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc. etal.
Complaint

### COUNT I – NEGLIGENT TRAINING, SUPERVISION AND RETENTION

70.     Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 69 above, as if fully stated herein, and further alleges:

71.     Defendant, ████████ owed a legal duty to select as employees only those fit for service, to supervise employees, and to provide necessary and appropriate discipline, training, and retraining.

72.     It was unreasonable for ████████ to select CONTI and continue to employ him, in light of what it knew or should have known and/or learned through a proper investigation.

73.     In addition, it was unreasonable for ████████ to fail to provide mental health care to the Plaintiff JANE DOE upon learning that she had been victimized by CONTI and was experiencing severe emotional distress and turmoil, and to instead subject her to abandonment by expelling her from the school premises without the knowledge or consent of JANE DOE's parents.

74.     During the course of CONTI's employment, ████████ became aware or should have become aware of problems with CONTI that indicated his unfitness for service and/or the need for discipline and training. ████████ had both actual and constructive notice of CONTI's previous and current conduct, including inappropriate relationships with students. Additionally, CONTI used ████████ campus to victimize children, including JANE DOE, and committed sex acts on children.

75.     ████████ breached its duty by failing to take the necessary action to prevent CONTI from victimizing and injuring the Plaintiff. Despite its knowledge of CONTI's actions, ████████



▮▮▮▮ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ▮▮▮▮▮▮▮▮▮▮▮ etal.

Complaint

▮▮▮▮ continued to employ CONTI as a teacher, which put him in a position of authority over Plaintiff JANE DOE and permitted CONTI to have unsupervised, one-on-one contact with female students, including, but not limited to, the Plaintiff JANE DOE.

76.    ▮▮▮▮▮ also breached its duty by failing to identify, address and provide mental health support to the Plaintiff JANE DOE, at the time of discovering that the minor plaintiff had been sexually victimized by CONTI.

77.    At all times material, ▮▮▮▮▮▮ is responsible for maintaining and ensuring the safety of the premises at the school and ensuring that its students are not victimized by teachers that it employs, nor left unsupervised at a time of emotional distress or turmoil.

78.    ▮▮▮▮▮ has a duty to supervise its employees and students and to protect its students from abuse by employees.

79.    ▮▮▮▮▮ also had a duty to provide appropriate training to CONTI, other teachers, administrators, and students (including JANE DOE), regarding the signs of grooming/predatory behavior, signs of sexual abuse, mandatory reporting requirements, how/when to report, and other appropriate actions to keep students like JANE DOE safe. ▮▮▮▮▮▮ failed to provide this training and, as a direct result, JANE DOE was severely and permanently injured, including both psychological and physical injuries.

80.    ▮▮▮▮▮ also had a duty to provide appropriate training to teachers, administrators, and students (including JANE DOE), regarding the signs of erratic behavior, suicidal ideation, emotional distress and turmoil, how/when to provide appropriate mental health support, and other

NOT A CERTIFIED COPY

███ individually, and as parent and legal guardian of JANE DOE, a minor,
v ████████████ etal.
Complaint

appropriate actions to keep students like JANE DOE safe. ████████ failed to provide this

training and, as a direct result, JANE DOE was severely and permanently injured, including both

psychological and physical injuries.

81.      ███████ knew or should have known of CONTI's history of inappropriate behavior

towards students (including JANE DOE), history of victimizing students, and his unfitness for the

job.

82.      █████████ breached its duty to supervise its teachers and protect JANE DOE from

abuse by failing to properly investigate and supervise its employees to prevent abuse from

occurring.

83.      The type of harm inflicted on JANE DOE was reasonably foreseeable to occur, based on

the abundance of unsupervised time that CONTI was allowed to spend in an isolated environment

with individual students, his past actions and his inappropriate contact with minor students.

Further, the teachers and administration were aware that he was taking measures to ensure that his

time with JANE DOE was private—including pulling JANE DOE out of Volleyball practice and

taking her to his classroom, and giving her rides and driving lessons outside school. It was during

these times that that the Defendant sexually assaulted JANE DOE.

84.      The conduct described above constitutes negligence by ███████ for its failure to

supervise Defendant CONTI, its failure to protect Plaintiff JANE DOE from abuse by CONTI in

his official capacity as a teacher; and its failure to train staff to identify the signs of sexual

grooming and a sexual predator, and to promptly provide mental health support to students,



24

████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ etal.

Complaint

including JANE DOE at time of crisis.

85.     Because of ████████ negligent supervision, retention, and training, the Plaintiff has sustained permanent damages for which compensation is required.

86.     Plaintiff, JANE DOE fell within the zone of foreseeable risk created by CONTI's continued employment at Defendant ████████ school.

87.     As a direct result of ████████ negligence, JANE DOE was subjected to serious and permanent injuries. JANE DOE has suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, embarrassment, humiliation, loss of capacity of the enjoyment of life, aggravation of pre-existing conditions, medical care and treatment, loss of earnings, and loss of ability to earn money. The losses are permanent and/or continuing and Plaintiff will continue to suffer losses in the future.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against the Defendant ████████ ████████ for damages exceeding $75,000.00, exclusive of interest and costs, demands taxable costs, and further demands trial by jury on all issues so triable.

### COUNT II: 42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS
### (████████)

88.     JANE DOE re-alleges paragraphs 1 through 69, as if fully restated herein.

89.     At all times material hereto, Defendant ████████ was responsible for the charter school known as ████████ its agents and employees, including hiring, supervising, enforcing policies, overseeing, training and establishing policies, customs, and procedures to conform the conduct of its agents and employees to law.

25



████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ etal.

Complaint

90.     At all times material, ████████ and CONTI were acting under the color of state law and CONTI was acting with authority possessed by virtue of his employment as a teacher at ████████ and pursuant to the power that he possessed by and through his employment at ████████. Through his official duties as an employee of ████████ CONTI met, groomed, sexually assaulted, harassed and victimized JANE DOE—a minor under his supervision and control. CONTI used his authority to harass, control and manipulate JANE DOE at ████ ████ and beyond.

91.     ████████ policies, procedures, customs, and practices of condoning unlawful and/or improper acts and ignoring repeated and blatant violations of school policies by their employees (including CONTI) meant to protect students, like JANE DOE, were direct causes and/or moving force leading to the violations of JANE DOE's civil rights, including but not limited to allowing JANE DOE to be taken off campus in teachers' (including CONTI's) personal vehicles, allowing students to be alone with teachers (i.e. in the classroom, after school, in a vehicle), allowing teachers to communicate with students via text message/cell phone/email and permitting teachers to blatantly violate school policies without corrective action/discipline.

92.     Further, ████████ failure to identify, train, discipline, or otherwise properly supervise employees (including CONTI) who have engaged in inappropriate acts, misconduct, and/or the above-mentioned violations directly caused and/or contributed to the violations of JANE DOE's civil rights, including ████████ condoning of and failure to appropriately respond to violations of policies, practices, customs through appropriate discipline, training, and

26

██████ individually, and as parent and legal guardian of JANE DOE, a minor,

v.  ████████████ etal.

Complaint

supervision. JANE DOE's constitutional rights were violated, including but not limited to her rights under the Fourth and Fourteenth Amendment, right to body integrity, and right to personal safety.

93.  ████████ knew of a need to train and supervise its employees in certain areas and made a deliberate and conscious choice not to take action, including but not limited to taking students off campus in personal vehicles, allowing students to be alone with teachers, inappropriate conduct and/or relationships between teachers and students, blatant violations of school policy, communicating with students by cell phone and text message, identifying sexual predatory behavior by a teacher, mandatory reporting requirements, providing mental health support to students, etc. Despite knowing of these training deficits, ████████ acted in a deliberately indifferent manner by failing to take appropriate action and/or protect its students, like JANE DOE.

94.  ████████ displayed deliberate indifference to the rights of JANE DOE, as secured by the Fourth and Fourteenth Amendments, by allowing CONTI to continue to possess his authority despite his known prior history of engaging in inappropriate relationships with students, violating school policies, frequently spending time alone with female students (including JANE DOE), grooming JANE DOE (i.e. daily text messages, special treatment, frequent time alone), exercise custody over JANE DOE, etc.



███ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ████████████ etal.
Complaint

95.    ████████ displayed deliberate indifference to the rights of JANE DOE, as secured by the Fourth and Fourteenth Amendments, by allowing CONTI to possess his authority after his propensity to abuse that authority became evident.

96.    ████████ s actions and/or inactions directly and proximately led to violations of JANE DOE's civil rights as secured by the Fourth and Fourteenth Amendments. Pursuant to the Equal Protection Clause, U.S. Const. amend. XIV, § 1, Plaintiff had a constitutional right to bodily integrity and to be free from sex discrimination, including sexual abuse, molestation, exploitation, and harassment. Defendant had a duty to provide a safe and nondiscriminatory environment for its students, free from psychological and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately. Defendant ████████ also had an affirmative constitutional duty to protect Plaintiff's rights, including protecting Plaintiff from sexual abuse by its agents and employees.

97.    ████████ and its Executive Director, Carla Lovett, and Principal Eilene Turenne had final policy making authority and were charged with enforcing existing policies. ████████ and its administrators acted with deliberate indifference to the rights of JANE DOE and/or permitted, condoned and engaged in practices that were so persistent and widespread as to constitute a custom.

98.    ████████ and CONTI had custody of JANE DOE which created a special relationship, including while JANE DOE was on campus, while voluntarily undertaking the responsibility to supervise the child afterschool and by permitting CONTI and other employees

28

███ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ███████████ etal.

Complaint

to take custody of the child. As a result of this special relationship and while in the Defendants' custody, JANE DOE was groomed, harassed, victimized and sexually assaulted.

99.    Further, through these actions and inactions, ███████████ created and/or increased the danger for JANE DOE and its failure to protect JANE DOE directly resulted in her injuries, including being sexually assaulted and attempting to commit suicide. ███████████ actions were egregious and would shock the conscience of any reasonable person.

100.   As a direct and proximate result of the violation of JANE DOE's civil rights, JANE DOE has suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation, embarrassment, loss of capacity for the enjoyment of life, expense of medical care and treatment, loss of earning, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and/or continuing and JANE DOE will continue to suffer losses in the future. Plaintiff's constitutional rights were violated, and she was sexually assaulted.

101.   Plaintiff JANE DOE has retained the undersigned attorneys to prosecute this action on her behalf and has agreed to pay them a reasonable fee and to reimburse the costs of this action.

WHEREFORE, JANE DOE demands judgment against ███████████████ for compensatory damages, costs, interest, reasonable attorneys' fees pursuant to 42 U.S.C. §1983, § 1988 and such other and further relief as the court deems appropriate. Plaintiff further demands trial by jury.



███ individually, and as parent and legal guardian of JANE DOE, a minor,
v.███████████ etal.
Complaint

## COUNT III: VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972, 20 U.S.C. § 1681

102.    JANE DOE re-alleges paragraphs 1 through 69, and 101, as if fully restated herein.

103.    As a student at ████████ Plaintiff had the right not to be subjected to sex discrimination, including sexual abuse, molestation, exploitation, and harassment. Plaintiff also had a substantive due process right to, and liberty interest in, her bodily integrity.

104.    At all relevant times, Defendant ████████ had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately.

105.    By as early as October 2023, Defendant ████████ had actual notice that CONTI was preying upon JANE DOE and maintaining an inappropriate relationship with JANE DOE ████ ████ its teachers and administrators knew or should have known that CONTI was frequently alone with this child, spent far more time with the child than is customary for a student-teacher relationship, and otherwise acted in a manner that made it obvious that the relationship was inappropriate.

106.    This notice alerted and informed ████████ that CONTI had the propensity to sexually abuse, victimize and/or harass female students and, therefore, posed a serious danger to female students of ████████ including JANE DOE.

107.    ████████ its administrators and employees had a duty to promptly and adequately report/investigate CONTI's conduct and safeguard its students from the risk of sexual harassment,

30



███ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████, etal.

Complaint

sexual abuse, and exploitation by CONTI, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures. See, e.g., Florida K-20 Education Code, Fla. Stat. § 1000.01 et seq.; Florida Educational Equity Act, Fla. Stat. § 1000.05 et seq.; the Florida Administrative Code; the State Board of Education Rules; the Rules of ████████ and ███████████'s Bylaws & Policies.

108.    Each of Defendant ██████████ officials, administrators, agents, and employees who received notice of CONTI's dangerous sexual propensities, including ███████████ Executive Director Carla Lovett, the Principal Eileen Turenne and Assistant Principals of ███████████ fellow teachers, and various Schools Police officers had the authority, collectively or individually, to initiate corrective action to remove CONTI and/or to supervise CONTI so as to prevent the risk he posed to female students in general and the plaintiff in particular.

109.    Defendant ████████████ failed to take appropriate action to either remove or appropriately supervise CONTI. At all relevant times, Defendant ████████████ failed to conduct a prompt, impartial, reasonable, reliable, and thorough investigation of the complaints against CONTI by employees trained and experienced in handling sexual discrimination complaints, as well as the applicable federal and Florida laws and Defendant's rules, regulations, policies, and procedures.

110.    At all relevant times, Defendant ████████████ also failed to establish and institute sufficient corrective measures to safeguard its students from the risk of sexual abuse, molestation, and exploitation by CONTI. This includes, but is not limited to: (i) ███████████ failure to

31



████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ██████████████ etal.

Complaint

sufficiently limit, restrict, supervise, and monitor CONTI's behavior, communications, interactions, and relations with female students (including JANE DOE); (ii) ████████████ failure to take precautions that were sufficient to prevent sexual predation upon JANE DOE by CONTI; (iii) ████████████ willingness to allow CONTI to frequently be alone with JANE DOE, engage in an abnormally close personal relationship with JANE DOE and overlook JANE DOE's lack of engagement with other students to spend time with CONTI; and (iv) ████████ ████ failure to otherwise abide by Federal and Florida law and to establish, implement, and abide by sufficient rules, regulations, policies, and procedures with regard to reporting, investigating, documenting, and redressing psychological and sexual misconduct and abuse.

111.    At all relevant times, Defendant ████████████ was deliberately indifferent to the known dangerous sexual and predatory propensities posed to JANE DOE by CONTI. Defendant ██████ ████ failed to promptly and adequately report, investigate, redress, and otherwise respond to its notice that CONTI posed a serious danger of sexual abuse and exploitation to female students, including JANE DOE. Defendant ████████████ knowingly and deliberately exposed its female students, including Plaintiff, to a substantially increased risk of unwarranted and unlawful sexual abuse, exploitation, and harassment by CONTI. At the same time, Defendant ████████████ knowingly and deliberately created and exacerbated an intimidating, hostile, offensive, and abusive educational environment.

112.    Despite its actual notice of CONTI's propensities and inappropriate relationship with JANE DOE, Defendant ████████████ continued to allow him unfettered access to JANE DOE and, in

32

 individually, and as parent and legal guardian of JANE DOE, a minor,

v. ▮▮▮▮▮▮▮▮▮▮▮▮ etal.

Complaint

doing so, made an official decision to ignore the known danger of sexual abuse of female students, like JANE DOE, under Defendant's care.

113.     As a result of Defendant ▮▮▮▮▮▮▮▮ gross failures to adequately respond to its actual notice of CONTI's sexual misconduct and against abuse of female students, Plaintiff JANE DOE was sexually abused and harassed by CONTI.

114.     As a further result, Plaintiff JANE DOE has suffered, and continues to suffer, substantial injuries, harm, and damages. This includes, but is not limited to, severe and permanent emotional, psychological, and physical injuries, pain and suffering, aggravation of injuries, depression, fear, anxieties, inability to function normally in social situations, shame, humiliation, and the inability to enjoy a normal life. Such harms and injuries are continuing and permanent. Plaintiff JANE DOE has also undergone medical and psychological treatment and incurred medical and other expenses.

        WHEREFORE, Plaintiff JANE DOE demands compensatory damages, injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as this Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT IV – CLAIM FOR LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

115.     Plaintiffs re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 69, as if fully stated herein, and further alleges:

116.     Plaintiff ▮▮▮▮ was at all times hereto, and now, the parent and sole guardian of Plaintiff JANE DOE.

33

█████ ndividually, and as parent and legal guardian of JANE DOE, a minor,
v. ████████████ etal.
Complaint

117.   Plaintiff ████ has been caused presently and in the future, to suffer the loss of her child's

company, cooperation, and aid of the other; including the parent/child relationship, affection,

solace, comfort, companionship, fellowship, society, and assistance necessary to a successful

parent/child relation and the familial association has been permanently altered and impaired.

118.   As a direct and proximate result of Defendants' negligence and resulting injuries, Plaintiff

████ has suffered the damages outlined above.

   WHEREFORE, Plaintiff ████ demands judgment for damages against Defendant ████

████ plus costs, interest and such other and further relief as the Court deems appropriate and

further demands trial by jury.

   DATED this 6th day of March 2025.


   /s/ Jack Scarola
   Jack Scarola
   Florida Bar No. 169440
   Attorney E-Mail: jsx@searcylaw.com and
   _scarolateam@searcylaw.com
   /s/ Victoria Mesa-Estrada
   Victoria Mesa-Estrada
   Florida Bar No.: 76569
   Attorney E-Mail: vmestrada@searcylaw.com and
   mesateam@searcylaw.com
   Searcy Denney Scarola Barnhart & Shipley, PA
   2139 Palm Beach Lakes Boulevard
   West Palm Beach, FL 33409
   Phone: 561-686-6300
   Fax: 561-383-9402
   Attorneys for Plaintiff

34

# SEARCY DENNEY SCAROLA BARNHART & SHIPLEY P.A.
*Attorneys at Law*

**■ WEST PALM BEACH OFFICE:**

2139 PALM BEACH LAKES BLVD.
WEST PALM BEACH, FLORIDA 33409

P.O. BOX 3626
WEST PALM BEACH, FLORIDA 33402

(561) 686-6300
1-800-780-8607
1-800-220-7006 Spanish

**□ TALLAHASSEE OFFICE:**

THE TOWLE HOUSE
517 NORTH CALHOUN STREET
TALLAHASSEE, FL 32301-1231

(850) 224-7600
1-888-549-7011

**ATTORNEYS AT LAW:**

ELISE SHERR ALLISON
*THEODORE "TED" BABBIT
*ROSALYN SIA BAKER-BARNES
*T. GREGORY BARNHART
T. HARDEE BASS, III
LAURIE J. BRIGGS
*BRIAN R. DENNEY
JORDAN A. DULCIE
JUAN C. DIAZ AVILA
BRENDA S. FULMER
*MARIANO GARCIA
*JAMES W. GUSTAFSON, JR.
MARA R. P. HATFIELD
ADAM S. HECHT
*JACK P. HILL
*JOSEPH R. JOHNSON
CAMERON M. KENNEDY
KATHERINE A. KIZAH
MICHAEL K. KUGLER
ANDREA A. LEWIS
WARREN A. LEWIS
GAETANO V. MURPHY
LINDSAY M. REINHART
*EDWARD Y. RICCI
*JOHN SCAROLA
*MATTHEW H. SCHWENCKE
CARTER W. SCOTT
*CHRISTIAN D. SEARCY
CHRISTOPHER K. SPEED
BRIAN P. SULLIVAN
*KAREN E. TERRY
DAVID P. TITLE, JR.
DONALD J. WARD III
*C. CALVIN WARRINER III
CLELL C. WARRINER IV
BORIS L. ZHAGANOVSKIY

**OF COUNSEL:**
*EARL L. DENNEY, JR.
*JOHN A. SHIPLEY III (retired)
WILLIAM S. KING

**RESEARCH ASSOCIATES:**
SHANNON M. BAER
SOPHIA K. LETTS
MARY ALICE TUCKER

**SHAREHOLDERS**
*BOARD CERTIFIED IN
CIVIL TRIAL
*BOARD CERTIFIED IN
HEALTHCARE
*BOARD CERTIFIED IN
COMMERCIAL & BUSINESS
LITIGATION

**ALSO ADMITTED:**
¹ GEORGIA
² MISSISSIPPI
³ NEW JERSEY
⁴ VIRGINIA
⁵ WASHINGTON DC

**PARALEGALS:**
KIMBERLEY AGUILERA
LAZARO BECERRA
NICHOLAS F. DeBELLIS
MICHAEL GAUGER
JOHN C. HOPKINS
VINCENT L. LEONARD, JR.
LESLIE A. McCOWN
HELEM ORTIZ
ROBERT W. PITCHER
ELISABETH A. PITTALUGA
CHRIS R. RODGERS
NYDIA SERRANO
BONNIE E. STARK

March 1, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
9414 7266 9904 2210 9373 31

Florida Department of Education
Turlington Building, Suite 1514
325 West Gaines Street
Tallahassee, FL 32399

9414 7266 9904 2210 9373 48

The School District of Palm Beach County
3300 Forest Hill Boulevard
West Palm Beach, FL 33406

9414 7266 9904 2210 9373 55

█████████████████████████

9414 7266 9904 2210 9373 62

As Registered Agent:

█████████████████████████

9414 7266 9904 2210 9373 79

Department of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

In Re:  Our Client:          ████████████ as Mother and Natural
                    Guardian of ████████████ a minor
        Client's Date of Birth:  ████████████
        Date of Incident:        2/6/2024
        Our File Number:         20240175





EXHIBIT
Composite
A

WWW.SEARCYLAW.COM

Page 2

Dear Sir/Madam:

This law firm represents the interests of ▉▉▉▉▉ as Mother and Natural Guardian of ▉▉▉▉▉ a minor, relative to injuries sustained on or about August 2023-February 2024, while a student at ▉▉▉▉▉▉▉ when her teacher, Damian Conti, engaged in sexual activity/intercourse with the child on and off campus on numerous occasions. ▉▉▉, a minor of the subject incidents and a student at the above-mentioned school.

Pursuant to Florida Statute 768.28, this letter will serve to notify you or otherwise place you on notice that Claimant, ▉▉▉ has placed you on notice of intent to initiate litigation against ▉▉▉▉▉▉▉▉▉▉▉ | ▉▉▉▉▉▉ Holdings, LLC, and other potential Defendants.

PLEASE ACCEPT THIS CLAIM AS OUR FORMAL NOTICE OF INTENT TO PURSUE FILL CLAIMS (STATE AND FEDERAL) ARISING FROM THE SEXUAL ASSAULT ON ▉▉▉ (A MINOR)" THESE CLAIMS INCLUDE BUT ARE NOT LIMITED TO: NEGLIGENCE; SEXUAL BATTERY; CHILD ABUSE; CIVIL RIGHTS VIOLATIONS; FAILING TO SUPERVISE; FAILING TO REPORT CHILD ABUSE; AND, FAILING TO PROTECT A STUDENT IN THE DISTRICT'S CUSTODY AND CONTROL.

We will bring a formal claim for damages, pursuant to Florida Statute §768.28 for all damages recoverable as a result of the above-mentioned actions and associated negligence that led to ▉▉▉'s injuries.

To the extent that any potential defendant in this matter may claim sovereign immunity protection under the provisions of Chapter 768, Florida Statutes, this Notice of Claim is sent in fulfillment of Section 768.28, Florida Statutes, on behalf of: *

Claimant:        ▉▉▉▉▉▉▉▉▉

Address:         ▉▉▉▉▉▉▉▉▉▉▉▉

S.S.N.:          ▉▉▉▉▉▉▉

D.O.B.:          ▉▉▉▉▉▉▉

Place of Birth:  ▉▉▉▉▉▉▉

Case Style:      ▉▉▉ (a minor) vs. ▉▉▉▉▉▉ et al.



Page 3

Court:              Palm Beach County

**\*Please be advised that this child was the victim of a sexually motivated crime and, as such, we are requested that her name and all of her identifying information be kept confidential.**

There are no adjudicated penalties, fines, fees, victim restitution fund, and other judgments in excess of $200.00, whether imposed by civil, criminal, or administrative tribunal, owed by claimant to the State, its agency, office or subdivision.

This claim arises out of injuries sustained by ▇▇▇ (a minor). The perpetrator, Damian Conti was a teacher at ▇▇▇▇▇▇▇▇▇▇▇ located within the jurisdiction of the Palm Beach County.

*Damages:*     The full extent of damage sustained by ▇▇ (a minor) is not yet known. However, they include but are not limited to past and future mental anguish, past and future medical treatment, and emotional distress.

*Demand:*       Undetermined at this time.

If you have any questions, please do not hesitate to call. If you feel that this notice does not comply with the statutory requirements.  Please contact my office immediately so that we can discuss and correct the defect, if necessary.

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the above-named addressees, this 28th day of March, 2024.

Sincerely,

*Victoria Mesa-Estrada*

VICTORIA MESA-ESTRADA, EQUIRE
VME/pmb



WALZ
CERTIFIED
MAILER®

FROM **WALZ**

FORM #45663 VERSION: E0822

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 79

Label #1
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

| | |
|---|---|
| Certified Mail Fee | $ |
| Return Receipt (Hardcopy) | $ |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ |
| Total Postage and Fees | $ |

Postmark
Here

Label #2
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Sent to:

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Reference Information

Label #3
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409

(a minor) vs. et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

A   FOLD AND TEAR THIS WAY ⟶ OPTIONAL

Label #5 (OPTIONAL)

Certified Article Number

SENDER'S RECORD

9414 7266 9904 2210 9373 79

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Label #6 - Return Receipt Barcode (Sender's Record)

9590 9266 9904 2210 9373 72

Label #7 - Certified Mail Article Number

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**

9414 7266 9904 2210 9373 79

FOLD AND TEAR THIS WAY

FOLD AND TEAR THIS WAY

Return Receipt (Form 3811) Barcode

9590 9266 9904 2210 9373 72

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION

Thank you for using Return Receipt Service

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

3. Service Type:
☒ Certified Mail

Reference Information
(a minor) vs. et al.
20240175 VME

2. Certified Mail (Form 3800) Article Number

9414 7266 9904 2210 9373 79

Thank you for using Return Receipt Service

NOT A CERTIFIED.COM

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9373 62**

| | | |
|---|---|---|
| Certified Mail Fee | $ 440 | |
| Return Receipt (Hardcopy) | $ 365 | |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | **Postmark Here** |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ | |

**Sent to:**

██████████ Holdings, LLC, as a Registered Agent of ██████████

██████████████

## Reference Information

██ (a minor) vs. ████████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

CERTIFIED COPY

NOT A CERTIFIED COPY

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9372 63**

| | | | |
|---|---|---|---|
| Certified Mail Fee | $ 4.40 | | |
| Return Receipt (Hardcopy) | $ 3.05 | | |
| Return Receipt (Electronic) | $ | | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | | |
| Postage | $ 1.87 | | |
| Total Postage and Fees | $ | | |

Sent to:

██████████ LLC, as a

Registered Agent of ██████████

██████████████

## Reference Information

██ (a minor) vs. ███████████, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
## Domestic Mail Only

### USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 17

| | | |
|---|---|---|
| Certified Mail Fee | $4.40 | |
| Return Receipt (Hardcopy) | $3.05 | |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | **Postmark Here** |
| Postage | $1.87 | MAR 01 2024 |
| Total Postage and Fees | $9.12 | |

NOT A CERTIFIED COPY

Sent to:

Florida Department of Education
Office of Professional Practices
325 West Gaines Street, Suite 224-E
Tallahassee, FL  32399

### Reference Information

■ (a minor) vs. ███████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9372 94**

| | | |
|---|---|---|
| Certified Mail Fee | $ 440 | |
| Return Receipt (Hardcopy) | $ 305 | |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | **Postmark Here** |
| Postage | $ 187 | |
| Total Postage and Fees | $ | |

**Sent to:**

▮▮▮▮▮▮▮

## Reference Information

▮ (a minor) vs. ▮▮▮▮▮▮ et al.
20240175 VME

NOT A CERTIFIED COPY

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

### USPS® ARTICLE NUMBER

## 9414 7266 9904 2210 9373 24

| | | |
|---|---|---|
| Certified Mail Fee | $4.40 | |
| Return Receipt (Hardcopy) | $3.65 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | |
| Postage | $1.87 | |
| Total Postage and Fees | $9.92 | |

**Sent to:**

███████████████ MAR 0   2024

███████████████

### Reference Information

██ (a minor) vs. ████████████ et al.
20240175 VME

NOT A CERTIFIED COPY

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9372 56**

| | | |
|---|---|---|
| Certified Mail Fee | $ 4.70 | |
| Return Receipt (Hardcopy) | $ 3.65 | **Postmark Here** |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ 9.90 | |

**Sent to:**

█████████████████

NOT A CERTIFIED COPY

MAR 0 1 2024

## Reference Information

█ (a minor) vs. █████████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service
# CERTIFIED MAIL RECEIPT
*Domestic Mail Only*

## USPS ARTICLE NUMBER

9414 7266 9904 2210 9373 55

| | |
|---|---|
| Certified Mail Fee | $ 440 |
| Return Receipt (Hardcopy) | $ 365 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 1.87 |
| Total Postage and Fees | $ 968 |

**Postmark Here**

NOT A CERTIFIED COPY

**Sent to:**

████████████████

### Reference Information

███ (a minor) vs. █████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9372 32**

| | | |
|---|---|---|
| Certified Mail Fee | $ 4.40 | |
| Return Receipt (Hardcopy) | $ 3.65 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ 9.92 | APR 1 1 2024 |

**Sent to:**

████████████████████

## Reference Information

███ (a minor) vs. ███████████ et al.

20240175 VME

PS Form 3800, Facsimile, July 2015

*NOT A CERTIFIED COPY*

# U.S. Postal Service
# CERTIFIED MAIL RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9373 79**

| | | |
|---|---|---|
| Certified Mail Fee | $ 4.40 | |
| Return Receipt (Hardcopy) | $ 3.65 | |
| Return Receipt (Electronic) | $ | MAR 01 2024 |
| Certified Mail Restricted Delivery | $ | **Postmark Here** |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ 9.92 | |

*NOT A CERTIFIED COPY*

**Sent to:**

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL  32399-0300

## Reference Information

■ (a minor) vs. ████████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015