Filing # 220634084 E-Filed 04/09/2025 11:34:14 AM

24-195/keh

**IN THE CIRCUIT COURT OF THE**
**FIFTEENTH JUDICIAL CIRCUIT**
**IN AND FOR PALM BEACH COUNTY, FLORIDA**

**CASE NO.: 50 2025 CA 002189 XXXA MB AO**

G.M., individually, and as parent and legal
guardian of JANE DOE, a minor,

       Plaintiff,

vs.

SOUTH TECH ACADEMY, INC,

       Defendant.

_____/

<u>**DEFENDANT SOUTH TECH ACADEMY, INC.'S**</u>
<u>**MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**</u>

COMES NOW, Defendant, SOUTH TECH ACADEMY, INC. ("South Tech"), by and

through the undersigned counsel, and pursuant to Rule 1.140(b) of the Florda Rules of Civil

Procedure and/or Rule 12(b)(6), Federal Rules of Civil Procedure, hereby files this Motion to

Dismiss Plaintiffs', G.M., individually, and as parent and legal guardian of JANE DOE, a minor

(collectively, "Plaintiffs") Amended Complaint, and, in support thereof, states as follows:

<u>**INTRODUCTION AND BACKGROUND**</u>

Plaintiffs Jane Doe and her mother, G.M., initiated this action against Defendant South

Tech Academy, Inc. and former Co-Defendant Damian Conti ("Mr. Conti"), former South Tech

teacher, on March 6, 2025. *See Initial Complaint, attached as Exhibit A.* On March 11, 2025,

Plaintiffs filed their First Amended Complaint, removing Mr. Conti as a defendant and bringing

claims for negligent supervision, negligent retention, negligent training, deprivation of civil rights

under 42 U.S.C. §1983, violation of Title IX of the educational amendments of 1972, and a claim

1



for loss of filial consortium on behalf of G.M. *See First Amended Complaint, attached as Exhibit B*. Plaintiffs allege that at all times relevant, Jane Doe was a student at South Tech Academy and identify Mr. Conti as a South Tech teacher from July 27, 2022 through his arrest on February 6, 2024. *Ex. B*, ¶¶13-14.

Plaintiffs allege Conti, by virtue of his job as a teacher for South Tech, "met, groomed, sexually assaulted, harassed and victimized" Jane Doe; which began when Conti offered to be her mentor, recruited her to the volleyball team and started freely communicating with her despite knowing South Tech's prohibition against it *Ex. B*, ¶¶12, 15-19, 30. Plaintiffs allege Conti sexually assaulted Jane Doe for the first time in a shopping plaza parking lot on October 16, 2024, and by the end of October 2024, Conti was sexually assaulting Jane Doe in his classroom and storage closets on South Tech's campus, as well as after school when they would take joy rides. *Id.* ¶¶24-26. There are no allegations any South Tech administrator was aware of the driving lessons, joy rides, the gifts or sexual contact.

Plaintiffs allege that in December 2023, rumors about Mr. Conti's inappropriate behavior towards his female students were circulating among South Tech students, and South Tech staff disregarded them. *Ex. B*, ¶¶27-28. Plaintiffs allege Conti and Jane Doe both approached South Tech administrators, and they denied the rumors. *Ex. B*, ¶38. Plaintiffs allege that on February 1, 2024, Jane Doe again denied the rumors, named the alleged rumor spreaders *Ex. B*, ¶¶40-41. Plaintiffs allege that on Monday, February 5, 2024, Principal Turenne separately summoned Conti and Jane Doe to her office and advised them to refrain from speaking to dispel the rumors. *Ex. B*, ¶42. Plaintiffs allege that after school that same day, Conti met Jane Doe in a parking lot where he sexually assaulted Jane Doe one last time. *Ex. B*, ¶44. Plaintiffs do not allege any South Tech administrators were aware or should have been aware this meet-up occurred.

Plaintiffs allege that on the morning of February 6, 2024, a male student came forward to notify Principal Turenne that he had concrete evidence of the sexual relationship between Conti and Jane Doe. *Ex. B*, ¶45. Plaintiffs allege Principal Turenne suspended Conti until further notice. *Ex. B*, ¶46. Plaintiffs allege Jane Doe refused to speak to police officers investigating her relationship with Conti; and after taking a test, Jane Doe was instructed by South Tech administrators to sign herself out and go home. *Ex. B*, ¶¶49-52. Plaintiffs allege Jane Doe signed herself out and left campus. *Ex. B*, ¶¶50-52. Plaintiffs allege South Tech was willfully oblivious to Jane Doe's emotional state and failed to make a therapist available to her before she left. *Ex. B*, ¶53.

Plaintiffs allege that after leaving school, Jane Doe met Conti at Home Depot, where Jane Doe quickly purchased rope and chain before they went their separate ways, having made a suicide pact. *Ex. B*, ¶54. Plaintiffs allege Jane Doe's parents arrived on campus thereafter, and when Jane Doe's mother finally connected with Jane Doe, Principal Turenne tore the phone from G.M.'s hand to demand Jane Doe return to campus immediately, but to no avail. *Ex. B*, ¶¶55, 58. Plaintiffs allege that after Conti reached out to the police about Jane Doe's suicidal ideation, Conti explained his relationship with Jane Doe and was arrested. *Ex. B*, ¶¶59-60. Plaintiffs allege that after a thirty-minute search, police officers discovered Jane Doe hanging from a tree behind a nearby church and were able to intervene, saving Jane Doe's life. *Ex. B*, ¶61.

Plaintiffs bring this action against South Tech only, asserting claims of negligent supervision, negligent retention, negligent training, deprivation of civil rights under §1983, violation of the education amendments to Title IX, and for loss of filial consortium. As will be demonstrated in further detail below, Conti and Jane Doe actively hid their relationship and are seeking to hold South Tech responsible for Jane Doe's injuries based on South Tech's failure to

prevent Jane Doe's injuries. Importantly, however, the allegations illustrating Conti's predatory behaviors are based on instances and situations that were not known and could not have been known to South Tech administrators, faculty or staff by simply observing Conti and Jane Doe's time together on campus. Separately, it should also be noted that Plaintiffs conclusions certain administrators failed to take action or investigate issues of concern are contradicted by Plaintiffs clear assertions that South Tech administrators *did* take action. *See, e.g., Ex. B*, ¶¶15, 20-21, 26, 28, 31, 34-36, 37-42, 45-46. Moreover, Plaintiffs improperly identify, allege and argue the existence of actual notice to South Tech administrators in their claim for violation of Title IX. *See Ex. B*, ¶¶104-105, 107, 110-112. Finally, Plaintiff G.M. has failed to demonstrate that she properly complied with the mandatory presuit notice requirements under section 768.28(6), Fla. Stat.

## ARGUMENT & MEMORANDUM OF LAW

### I.    Standard of Review

The Florida Rules of Civil Procedure and the Federal Rule of Civil Procedure Rule 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" and while the rule does not require "detailed factual allegations[,]" the factual allegations set forth are required to "raise a right to belief above the speculative level[.]" *Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662 (2009) (quoting *Twombly*, 550 U.S. at 570). Rule 8(a) "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 679.

When considering a motion to dismiss, a court must view the allegations of the complaint in the light most favorable to the plaintiff. Rule 12(b)(6), Fed. R. Civ. P.; *Jackson v. Okaloosa*

4

*Cnty.,* 21 F.3d 1531, 1534 (11th Cir. 1994). Although factual allegations must be accepted as true, for the purposes of the motion, a court is not required to accept conclusory allegations and unwarranted factual deductions as true. *Gersten v. Rundle,* 833 F.Supp. 906, 910 (S.D. Fla. 1993). Moreover, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged or that a defendant has violated laws in ways that have not been alleged. *See Beck v. Interstate Brands Corp.,* 953 F.2d 1275, 1276 (11th Cir. 1992). Likewise, the Court is not bound to accept as true a legal conclusion couched as a factual allegation. *See B.H. Papasan v. Allain,* 478 U.S. 265, 286 (1986). Although the federal rules ascribe to liberality in pleadings, bald assertions and conclusions of law will not defeat a properly supported motion to dismiss. *See Leeds v. Meltz,* 85 F. 3d 51, 53 (2d Cir. 1996).

"As an initial matter, [A] court 'is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss.'" *Magnum Constr. Mgmt., LLC v. WSP USA Sols., Inc.,* 522 F.Supp.3d 1202, 1207 (S.D. Fla. 2021) (quoting *Bickley v. Caremark RX, Inc.,* 461 F.3d 1325, 1329 n.7 (11th Cir. 2006)). However, where "the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami,* 811 F.3d 1271, 1277 (11th Cir. 2016); *see also Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern"). In other words, "[w]here the allegations of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and the allegations are nullified." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP,* 693 F.Supp.2d 1325, 1341 (S.D. Fla. 2010).

## II.     Plaintiffs fail to state actionable negligence claims against South Tech in Count I of the Amended Complaint

### A.  *Plaintiffs fail to state a claim for negligent supervision of students*

"As a general principle, a party does not have a duty to take affirmative action to protect or aid another unless a special relationship exists which creates such a duty." *Limones v. Sch. Dist. of Lee Cnty.*, 161 So.3d 384, 390 (Fla. 2015) (citing Restatement (Second) of Torts §314 . a (1965)). "When such a relationship exists, the law requires the party to act with reasonable care toward the person in need of protection or aid." *Limones*, 161 So.3d at 390 (citing Restatement (Second) of Torts § 314a cmt. e).

"We begin our analysis with a recognition of the general principle in Florida jurisprudence that school officials and/or teachers are neither insurers of their students' safety, nor are they strictly liable for any injuries which may be sustained by the students." *Concepcion By & Through Concepcion v. Archdiocese of Miami By & Through McCarthy*, 693 So.2d 1103, 1104 (Fla. 3d DCA 1997). "In determining the existence of a legal duty, which is a question of law, a court allocates risk by 'balancing the foreseeability of harm, in light of all the circumstances, against the burden to be imposed.'" *Kazanjian v. Sch. Bd. of Palm Beach Cnty.*, 967 So. 2d 259, 265 (Fla. 4th DCA 2007) (citing *Levy v. Fla. Power & Light Co.*, 798 So.2d 778, 780 (Fla. 4th DCA 2001)).

"A public school, at least through the high school level, undoubtedly owes a general duty of supervision to the **students** placed within its care. Case law is replete with instances of schools, principals and teachers being required to reasonably fulfill their duty to supervise **students**." *Rupp v. Bryant*, 417 So.2d 658, 666 (Fla. 1982) (emphases added). Considering the mandatory nature of child education, Florida courts have recognized a special relationship between schools and their students based upon the fact that a school functions at least partially in the place of parents during the school day and school-sponsored activities. *See Limones*, 161 So.3d at 390 (Fla. 2015) (citations omitted).

To prevail on a theory of negligent supervision by a teacher, a plaintiff must

establish (1) the existence of a teacher-student relationship giving rise to a legal
duty to supervise; (2) the negligent breach of that duty by the teacher; and (3) the
proximate causation of the student's injury by the teacher's negligence.

*Broward Cnty. Sch. Bd. v. Ruiz*, 493 So.2d 474, 476–77 (Fla. 4th DCA 1986) (emphasis added)

(citing *Collins v. Sch. Bd. of Broward Cnty.,* 471 So.2d 560 (Fla. 4th DCA 1985)).

"[A] duty of supervision has been found for **student injuries** occurring on-school premises
as well as off-school premises for school-related activities." *Concepcion*, 693 So.2d at 1104
(emphasis added) (citing *Rupp*, 417 So.2d at 667-68). Conversely, a school has no duty to
supervise **students** participating in non-school related activities occurring off-campus after school
hours. *See Oglesby v. Seminole Cnty. Bd. of Pub. Instruction*, 328 So.2d 515, 516-17 (Fla. 4th
DCA 1976) (emphasis added). "While Florida recognizes a general duty of supervision, a school
has no duty to supervise 'all movements of all **pupils** all the time.'" *Kazanjian*, 967 So.2d at 264
(emphasis added) (quoting *Rupp*, 417 So.2d at 668 n.26). A school's duty to supervise its **students**
is analogous to the duty of care owed by a landowner to invitees for events occurring solely off
the landowner's premises and wholly unconnected to any activity on the landowners' premises.
*See Concepcion*, 693 So.2d at 1104 (emphasis added) (citing *Rupp*, 417 So.2d at 667-68). For
example, a school's duty to supervise **students** does not extend to prevent the occurrence of
potential harms occurring off campus; as schools have no duty to prevent teenage students licensed
to drive automobiles from leaving a school's premises in order to protect students from potential
injuries occurring off campus. *Id.* (emphasis added).

Accordingly, as the duty to supervise the students left within a school's care is limited to
student injuries that occur on campus and other that occur off-campus at school-related events, it
follows that there is no liability for the activities between Conti and Jane Doe which occurred off-
campus and outside of school-related events. *See Concepcion*, 693 So.2d at 1104, *see also Ex. B*,

¶¶18, 20, 22-28, 32, 38, 40, 44.

> **B. Plaintiffs fail to state a claim for negligent supervision under a theory of vicarious liability or respondeat superior**

"Stated differently, negligent supervision occurs when the defendant negligently places the plaintiff under the supervision of an employee whom the defendant either knew or should have known had the propensity to commit the alleged torts." *Trocano v. Vivaldi*, 720 F.Supp.3d 1231, 1240–41 (M.D. Fla. 2024) (quoting *K Co. Realty LLC v. Pierre*, 376 So.3d 730, 735 (Fla. 4th DCA 2023)). The above-referenced theory of negligent supervision is predicated on a theory of vicarious liability, wherein a principal is held responsible for the wrongful acts of its agent if the agent was acting within the scope of his authority or during the course of the agency to further the purpose or interest of the principal. *See Pierre*, 376 So.3d at 735 (citing *Trevarthen v. Wilson*, 219 So.3d 69, 72 (Fla. 4th DCA 2017)). "It is where the employee's acts are committed within the scope or course of his employment that an employer may be liable under the doctrine of respondeat superior." *Garcia v. Duffy*, 492 So.2d 435, 441 (Fla. 2d DCA 1986) (citations omitted).

> An employee's conduct is within the scope of his employment, where (1) the conduct is of the kind he was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master.

*Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So.2d 353, 357 (Fla. 3d DCA 2001) (citing *Sussman v. Florida E. Coast Props., Inc.*, 557 So.2d 74, 75–76 (Fla. 3d DCA 1990)). "Generally, sexual assaults and batteries by employees are held to be outside the scope of an employee's employment, and therefore, insufficient to impose vicarious liability on the employer." *L.M.*, 783 So.2d at 357 (quoting *Nazareth v. Herndon Ambulance Serv., Inc.*, 467 So.2d 1076, 1078 (Fla. 5th DCA 1985)). Indeed, §768.28(9(a) *Fla. Stat* holds that the governmental employer is "not liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside

the course and scope of her or his employment or committed in the bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property." *Id.*

Accordingly, Plaintiffs potential claim against South Tech for the sexual assault of Jane Doe by Conti, which was clearly outside the scope of his employment as a teacher employed by South Tech, and therefore, South Tech cannot be liable for the same under a theory of vicarious liability and is statutorily immune from any liability. *See Garcia*, 492 So.2d at 441.

### C.  *Plaintiffs fail to state a claim for negligent retention*

"Florida recognizes a cause of action for negligent retention." *Tercier v. Univ. of Miami, Inc.*, 383 So.3d 847, 853 (Fla. 3d DCA 2023), *reh'g denied* (Oct. 6, 2023) (citing *N. Miami Med. Ctr., Ltd. v. Miller*, 896 So.2d 886, 889 (Fla. 3d DCA 2005)). "Negligent retention, …, occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Garcia v. Duffy*, 492 So.2d 435, 438–39 (Fla. 2d DCA 1986) (citations omitted). "To prove such cause of action, the plaintiff must show: (1) the employer became aware or should have become aware that the subject employee was 'unfit,' and (2) the employer failed to take further action, e.g., investigation, discharge, reassignment." *Tercier*, 383 So.3d at 853 (citing *Bennett v. Godfather's Pizza, Inc.*, 570 So.2d 1351, 1353 (Fla. 3d DCA 1990)).

"'It is necessary that the underlying wrong—the actions of the employee or servant—be a tort,' and that the employee's actions 'be performed *outside* the scope of employment.'" *Id.* at 853 (quoting *Acts Ret.-Life Comtys. Inc. v. Est. of Zimmer*, 206 So.3d 112, 115 (Fla. 4th DCA 2016)). "However, these theories of liability do not render an employer strictly liable for criminal acts

committed by a 'dangerous employee' against a third person." *Magill v. Bartlett Towing, Inc.*, 35 So.3d 1017, 1020 (Fla. 5th DCA 2010) (citing *Garcia*, 492 So.2d at 441).

However, as noted above, South Tech, as a governmental agency, is not liable and has immunity from such a claim because it is conduct which is outside the scope of employment of the employee. See 768.28(9(a) *Fla. Stat*

### D. Plaintiffs fail to state a claim for negligent training

"Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Watts v. City of Hollywood, Fla.*, 146 F.Supp.3d 1254, 1269 (S.D. Fla. 2015) (quoting *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir.2001)). "Negligent training occurs when an employer was negligent in the implementation or operation of the training program." *Cruz v. Advance Stores Co.*, 842 F.Supp.2d 1356, 1359 (S.D. Fla. 2012) (quoting *Gutman v. Quest Diagnostics Clinical Labs., Inc.*, 707 F.Supp.2d 1327, 1332 (S.D.Fla.2010).

"Claims for negligent training are typically barred by sovereign immunity because a 'decision regarding how to train ... [employees] and **what subject matter** to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning.'" *C.H. by Hilligoss v. Sch. Bd. of Okaloosa Cnty., Fla.*, 606 F.Supp.3d 1186, 1198 (N.D. Fla. 2022) (emphasis added) (quoting *Lewis*, 260 F.3d at 1266). "The State of Florida has waived sovereign immunity in tort actions for any act for which a private person under similar circumstances would be held liable." *Gualtieri v. Bogle*, 343 So.3d 1267, 1274 (Fla. 2d DCA 2022) (quoting *Henderson v. Bowden*, 737 So.2d 532, 534-35 (Fla. 1999)). "Under the discretionary function exception, 'basic judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity.'" *Gualtieri*, 343

So.3d at 1275 (quoting *Pollock v. Florida Dept. of Highway Patrol*, 882 So.2d 928, 933 (Fla. 2004). "In short, an act is 'discretionary' if it involves an 'exercise of executive or legislative power such that, for the court to intervene by way of tort law would inappropriately entangle it in fundamental questions of policy and planning.'" *Lewis*, 260 F.3d at 1264–65 (quoting *Dep't of Health and Rehab. Servs. v. Yamuni*, 529 So.2d 258, 260 (Fla.1988)). "Conversely, an 'operational' act is one not necessary to or inherent in policy or planning, that merely reflects a secondary decision as to how those policies or plans will be implemented." *Lewis*, 260 F.3d at 1265 (citing *Kaisner v. Kolb*, 543 So.2d 732, 737 (Fla. 1989)).

Here, Plaintiffs allege South Tech failed to provide training to its employees which is a discretionary function and is therefore barred from suit based on principles of sovereign immunity. *See C.H. by Hilligoss*, 606 F.Supp.3d at 1198. Accordingly, to the extent Plaintiffs are alleging South Tech was negligent for failing to train its staff, teachers and students in the area of predatory child grooming and mental health assistance, those claims are barred by sovereign immunity and must be dismissed. *Id.*

To the extent such training was an operational function, Plaintiffs allegations fail to establish that South Tech had actual or constructive notice of a need for training predicated on either Mr. Conti's purported misconduct or based on any indication that Jane Doe was in need of mental health services before February 6, 2024. Plaintiffs do not allege that Jane Doe was sexually victimized by Mr. Conti as a result of South Tech's failure to train employees in the area of mental health. Additionally, to the extent that this claim seeks to hold South Tech liable for its failure to anticipate or predict Jane Doe would harm herself, Jane Doe's actions were undertaken off campus, after school and were not school-related. *See Oglesby v. Seminole Cnty. Bd. of Pub. Instruction*, 328 So.2d 515, 516-17 (Fla. 4th DCA 1976). Accordingly, Plaintiffs' claim for negligent training

against South Tech should be dismissed.

**III.     Plaintiffs fail to state a viable claim for deprivation of civil rights under 42 U.S.C. §1983, Count II**

Title 42 U.S.C. § 1983 imposes liability on a person who, acting under the color of state law, deprives a person of any rights, privileges or immunities secured by the Constitution and laws. "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Under section 1983, a municipality cannot be held liable on a theory of *respondeat superior,* but it may be held liable for its own, independent violations of federal law." *Watts v. City of Hollywood, Fla.*, 146 F.Supp.3d 1254, 1270 (S.D. Fla. 2015) (citing *Monell,* 436 U.S. at 691, 694). "It is only when the 'execution of the government's policy or custom ... inflicts the injury' that the municipality may be held liable under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

> A causal connection can be established in one of two ways: "(1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so or (2) when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights."

*Williams v. Fulton Cnty. Sch. Dist.*, 181 F.Supp.3d 1089, 1127-28 (N.D. Ga. 2016) (quoting *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010)).

"In cases alleging municipal 'inaction,' a custom arises where a municipality fails to correct 'the constitutionally offensive actions of its employees' and instead 'tacitly authorizes' or

'displays deliberate indifference towards the misconduct.'" *C.H. by Hilligoss*, 606 F.Supp.3d at 1196 (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001)). "In other words, liability may only attach where the municipality's custom or policy caused municipal employees to violate the plaintiff's constitutional rights." *N.R. by Ragan v. Sch. Bd. of Okaloosa Cnty., Fla.*, 418 F.Supp.3d 957, 990 (N.D. Fla. 2019) (emphasis added) (citing *Gold*, 151 F.3d at 1350).

A pre-requisite of asserting a claim of governmental agency liability is that there has been a constitutional violation by an employee or agent of the agency. Here, however, there are no specific constitutional rights violations alleged. Mention is made of a Fourth and Fourteenth Amendment violations, but the is no specification of a particular violation that is applicable under the facts alleged in the complaint.

"The Fourth Amendment to the United States Constitution guarantees citizens the right to be secure against unreasonable seizures." *Johnson v. Cannon*, 947 F.Supp. 1567, 1572 (M.D. Fla. 1996) (citing *Graham v. Connor,* 490 U.S. 386, 394 (1989)). However, there is no seizure under color of law without probable cause alleged in the complaint. Thus, there is no claim under the Fourth Amendment.

Next, "[t]he Equal Protection Clause of the Fourteenth Amendment provides that 'no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.'" *Weeks v. Colquitt Cnty., Georgia*, No. 7:23-CV-77, 2025 WL 897531, at *8 (M.D. Ga. Mar. 24, 2025) (citing *Martinez v. Warden*, 848 F. App'x 864, 867 (11th Cir. 2021)). It has been held that a government official may be held liable under §1983 upon a showing of deliberate indifference to known sexual harassment. *Williams v Bd. of Regents of Univ. Sys. Of Ga.*, 477 F3d 1282, 1300-02 (11the Cir. 2007).

However, a plaintiff must prove that the individual defendant "actually knew of an acquiesced in" the discriminatory conduct. *Murrell v. Sch. Dist. No. 1, Denver Colo*. 186 F.3d 1238, 1250 (1999). Here, Plaintiffs fail to allege a violation by a South Tech administrator, much less a custom or policy of deliberate indifference that caused such a violation.

## IV.   Plaintiffs fail to state a viable claim for violation of Title IX of the educational amendments of 1972, 20 U.S.C. §1681, Count III

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "A teacher's sexual harassment of a student constitutes actionable discrimination for the purposes of Title XI." *Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1283 (11th Cir. 2005) (discussing *Franklin v. Gwinett Cnty. Pub. Schs.*, 503 U.S. 60, 65 (1992)). "Title IX liability arises only where 'an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has **actual notice** of, and is deliberately indifferent to, the teacher's misconduct.'" *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010) (emphasis added) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)).

> As the Eleventh Circuit has explained, a plaintiff seeking recovery for a Title IX violation based on student-on-student harassment must prove five elements: (1) the defendant must be a Title IX funding recipient; (2) an "appropriate person" must have **actual knowledge** of the alleged discrimination or harassment; (3) the discrimination or harassment—of which the funding recipient had actual knowledge under element two—must be "severe, pervasive, and objectively offensive"; (4) the funding recipient acted with "deliberate indifference to known acts of harassment in its programs or activities"; and (5) the discrimination "effectively barred the victim's access to an educational opportunity or benefit."

*Doe v. Sch. Bd. of Miami-Dade Cnty.*, 403 F.Supp.3d 1241, 1257–58 (S.D. Fla. 2019) (emphasis added) (quoting *Hill v. Cundiff*, 797 F.3d 948, 970 (11th Cir. 2015)).

"Title IX prohibits sex discrimination by recipients of federal education funding." *Janie*

*Doe 1 ex rel. Miranda v. Sinrod*, 117 So.3d 786, 788 n. 2 (Fla. 4th DCA 2013), *approved sub nom.*
*Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So.3d 41 (Fla. 2017) (citation omitted). "Liability under
'Title IX is predicated upon **notice** to an "appropriate person" and an opportunity to rectify any
violation.'" *Saphir by & through Saphir v. Broward Cnty. Pub. Sch.*, 744 F.App'x 634, 638 (11th
Cir. 2018) (quoting *Gebser*, 524 U.S. at 290). "[W]e conclude that it would 'frustrate the purposes'
of Title IX to permit a damages recovery against a school district for a teacher's sexual harassment
of a student based on principles of *respondeat superior* or constructive notice, *i.e.,* without actual
notice to a school district official." *Gebser*, 524 U.S. at 285.  Further, it is required that there be
actual knowledge of incidents that are so severe, pervasive and objectively offensive that they can
be said to deprive the victims of access to the educational opportunities or benefits provided by
the school. *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educt.*, 526 U.S. 629, 650 (1999).

First, nowhere in the Amended Complaint do Plaintiffs allege South Tech is a Title IX
funding recipient or that South Tech receives federal financial assistance. Accordingly, Plaintiffs
have failed to properly allege the first element of this claim. *See Sinrod*, 117 So.3d at 788 n. 2.

Second, Plaintiffs do not accurately or coherently identify sufficient facts to support of
Plaintiffs claim against South Tech based on the actual notice under Title IX. *See Ex. B,* ¶¶101-
113. Liability under Title IX requires actual notice to the appropriate individual and an opportunity
to correct the violation. *See Saphir by & through Saphir*, 744 F. App'x at 638. Here, however,
Plaintiffs clearly alleges South Tech did receive actual notice—but refer to the prior allegations
concerning Mr. Conti's covert behaviors, which are not actual notice. *See Ex. B,* ¶104. Although
Plaintiffs allegations regurgitate the essential elements of a Title IX claim, these allegations do not
correspond with, relate back to or logically follow Plaintiffs' general allegations of fact. *Compare*
*Ex. B,* ¶¶107-111; *with* ¶¶17-46. Accordingly, absent clear allegations of actual notice, Plaintiffs

have failed to state a claim. *See Gebser*, 524 U.S. at 289.

More specifically, Plaintiffs have failed to allege that South Tech administrators received notice of an event, occurring prior to February 6, 2024, that constituted actual notice of Mr. Conti's dangerous sexual propensities. and how, acted with deliberate indifference to such an event. Moreover, there are no allegations that an administrator was deliberately indifferent to sexual harassment that was severe, pervasive and objectively offensive.

**V.      Plaintiffs fail to state a viable claim for loss of filial consortium, Count IV**

To properly plead a tort claim against a sovereign defendant, a plaintiff is required to allege the specific methods by which the sovereign waived its sovereign immunity. The waiver of sovereign immunity must be clear and unequivocal. *Manatee County v. Town of Longboat Key,* 365 So.2d 143, 147 (Fla.1978); *Rabideau v. State,* 409 So.2d 1045, 1046 (Fla.1982). Any waiver of sovereign immunity is strictly construed, *Manatee Cnty.,* 365 So.2d at 147, and will not be found as a product of inference or implication. *Spangler v. Fla. State Tpk. Auth.,* 106 So.2d 421, 424 (Fla. 1958). The pleading must also include clear and unequivocal language that the sovereign in fact waived its sovereign immunity. *Arnold v. Shumpert,* 217 So.2d 116, 120 (Fla. 1968) (holding that in "suing a county a plaintiff must allege in his complaint the specific methods by which the county waives its sovereign immunity"); *Levine v. Dade Cnty. Sch. Bd.,* 442 So.2d 210, 213 (Fla. 1983) (the facts on which a waiver of sovereign immunity depends must be specifically pleaded in the complaint).

Case law makes clear that strict compliance with the notice requirements of this statute is necessary to maintain an action against the state, its agencies, or subdivisions. *Menendez v. N. Broward Hosp. Dist.,* 537 So. 2d 89 (Fla. 1988); *Levine v. Dade County Sch Bd.,* 442 So. 2d 210 (Fla. 1983); *Osten v. City of Homestead,* 757 So. 2d 1243 (Fla. 3d DCA 2000). As § 768.28(6) is

part of a statutory waiver of sovereign immunity, there must be strict compliance with its requirements. *See Levine,* 442 So.2d at 213.

Here, Plaintiff G.M., individually and as the parent of Jane Doe, has failed to allege compliance with all conditions precedent necessary to maintain her claim pursuant to Florida's statutory waiver of sovereign immunity established in §768.28(6) Fla. Stat. Specifically, the complaint is devoid of any allegation, exhibit or attachment which evidences that Plaintiff G.M., individually, provided South Tech and the Department of Financial Services with notice of the claim.

## VI.   CONCLUSION

For all the reasons set forth above, Plaintiff's complaint should be dismissed.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy hereof has been furnished by e-service to all parties on the attached Counsel List this 9ᵗʰ day of April, 2025.

**ROBERTS, REYNOLDS, BEDARD & TUZZIO, PLLC**
470 Columbia Drive, Bldg. C101
West Palm Beach, FL  33409
Phone: 561-688-6560/Fax: 561-688-2343
E-Service: service_LHR@rrbpa.com
Email: lreynolds@rrbpa.com
Attorneys for Defendant South Tech Academy

LYMAN H. REYNOLDS, JR.
FBN: 380687

STYLE:              G.M. v. SOUTH TECH ACADEMY, INC.
CASE NO.:           50 2025 CA 002189 XXXA MB AO
OUR FILE NO.:       24-195

## COUNSEL LIST

JACK SCAROLA, ESQ.
VICTORIA MESA-ESTRADA ESQ.
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409-6601
Counsel for Plaintiff
PHONE: 561-686-6300
E-SERVICE: jsx@searcylaw.com
           scarolateam@searcylaw.com
           vmestrada@searcylaw.com
           mesateam@searcylaw.com
EMAIL: jsx@searcylaw.com
       scarolateam@searcylaw.com
       vmestrada@searcylaw.com
       mesateam@searcylaw.com
FBN: 169440 / 76569

LYMAN H. REYNOLDS, JR., ESQ.
Roberts, Reynolds, Bedard & Tuzzio, PLLC
470 Columbia Dr., Bldg. C101
West Palm Beach, FL 33409
Counsel for Defendant
PHONE: 561-688-6560
FAX: 561-688-2343
E-SERVICE: service_LHR@rrbpa.com
EMAIL: lreynolds@rrbpa.com
       bsmith@rrbpa.com
       kherald@rrbpa.com
FBN: 380687

18

**** CASE NUMBER: 502025CA002189XXXAMB Div: AO ****
Filing # 218226108 E-Filed 03/06/2025 12:34:56 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

CASE NO.

██████ individually, and as parent and legal
guardian of JANE DOE, a minor,

    Plaintiff,

vs.

██████████████████ and
DAMIAN CONTI,

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiff, ██████ individually and as the parent and legal guardian of JANE DOE[1], a minor, (hereinafter referred to as "Plaintiff" or "JANE DOE") by and through the undersigned counsel and files her Complaint against Defendants, ██████████████████████ (hereinafter referred to as '██████████'), pursuant to the Florida Rules of Civil Procedure and in support thereof states as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages that exceed $75,000.00 and for other relief within the jurisdiction of this Court.

2.    At all times material hereto, Plaintiff, JANE DOE was a resident of Palm Beach County, Florida.

3.    At all times material hereto, the Plaintiff, JANE DOE was a minor child who attended

_____

[1] Plaintiff is being identified by JANE DOE only, because, as the victim of a sexual battery, her identity is protected from public disclosure under Florida law. Defendants are both aware of JANE DOE's full name.

EXHIBIT

A

FILED: PALM BEACH COUNTY, FL, JOSEPH A███████████ 06/2025 12:34:56 PM

███████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████ Academy, Inc. etal.

Complaint

████████████████ in Palm Beach County, Florida.

4.     At all times material hereto, Defendant ███████████ is a Not-For-Profit Corporation organized pursuant to the laws of the State of Florida, and has its principal place of business in Boynton Beach, County of Palm Beach, Florida.

5.     At all times material hereto, DAMIAN CONTI was a resident of Palm Beach County, Florida, and was a teacher at ████████ until February 2024.

6.     Venue is proper in Palm Beach County, Florida, because the conduct from which the claim arises occurred in Palm Beach County. Additionally, all natural parties were residents of Palm Beach County, Florida and ██████████ has its principal place of business in same.

## CONDITIONS PRECEDENT

7.     On or about March 7, 2024, JANE DOE provided written notice of her claim, via certified mail, and pursuant to section §768.28 of the Florida Statutes, to ████████████ , Florida Department of Education, and State of Florida Department of Financial Services. Copies of the letters and green cards are attached as "Composite Exhibit A." The Department of Financial Services or the appropriate agency failed to make final disposition of the claim within six (6) months, which is deemed a final denial of the claim. Upon information and belief, all conditions precedent have been complied with or waived.

## GENERAL ALLEGATIONS

8.     Defendant ███████████ is a public, tuition-free charter school in The School Board of Palm Beach County, Florida's school system serving students in grades 9 through 12. ████████

NOT A CERTIFIED COPY

██████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ et al.

Complaint

██████ is directed and operated by an eight-member Governing Board of Directors who exercise

control over ████████, who are in charge of setting the policies and guidelines for the school,

and who delegate to staff day-to-day responsibilities for operational matters.

9.      Defendant ███████'s Governing Board exercises control over ██████████'s

Executive Director and Principal, who are in charge of its operations, staffing, hiring, discipline,

creating and enforcing policies, school safety, screening new employees, and ensuring that its

staff is not sexually abusing its students. Defendant ███████'s responsibilities include,

but are not limited to, hiring, firing, supervising, transferring, suspending, disciplining, and

directing the work of all school personnel (including CONTI), and collaborating with the

School's officials, administrators, employees, agents, and representatives regarding same.

Defendant ███████ is also responsible for creating and enforcing policies and procedures

to keep children, like JANE DOE, safe and protected from all forms of abuse by teachers, like

CONTI.

10.      In addition, Defendant ████████ has adopted rules and regulations for the school,

and has also created policies, procedures and bylaws by which ████████ is governed and is

required to follow, including all applicable Florida Statutes and State Board Rules. Defendant

████████ is thus responsible for enforcing and ensuring compliance with federal and Florida

law and its own rules, regulations, policies, and procedures, including those related to sexual and

psychological abuse of students by teachers. Further, ████████'s officers, administrators,

teachers and other staff are all subject to mandatory governmental reporting requirements requiring

3

█████  individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████  etal.

Complaint

that they report, investigate, and take action when they know or should have known that a child was being sexually abused.

11.      ████████████  Executive Director, Principal and Board of Directors, are the administrative and supervisory heads of the school. Among other things, the Executive Director and Principal (as well as the school's teachers) are responsible for enforcing and ensuring compliance with federal and Florida law and the School Board's rules, regulations, policies, and procedures, including those related to sexual and psychological abuse of students by teachers. The Executive Director, Principal, and Board of Directors are also involved in the hiring, firing, transferring, and disciplining of staff, teachers, and other employees at their school. At all times material hereto, the Executive Director of █████████  was Carla Lovett.

12.     At all relevant times, each agent, employee, representative, official, administrator, and teacher of Defendant ██████████  including its governing board members, the Principal, the Assistant Principals, the teachers, and the School Police, was the authorized agent of the other and of Defendant ████████  and each was acting within the course, scope, and authority of such agency. This includes Defendant CONTI. Additionally, each of the foregoing individuals and entities, authorized, ratified, or affirmed each act or omission of each of the other foregoing individuals or entities.

13.     DAMIAN CONTI was employed by █████████  since 2022 and continued in that position at all times material hereto. CONTI was a teacher at ████████  and, in that role, he had access to and control over JANE DOE.  Additionally, he was responsible for teaching,

4

individually, and as parent and legal guardian of JANE DOE, a minor,

v. ███████████ etal.

Complaint

supervising and taking appropriate actions to protect JANE DOE.

<u>FACTS GIVING RISE TO THE CLAIMS</u>

14.    At all times material, Plaintiff, JANE DOE, whose date of birth is ███████ was a minor enrolled student at ███████

15.    ███████ employed CONTI as a Language Arts Teacher then as an AP English Teacher from approximately July 27, 2022, until his arrest on February 6, 2024.

16.    At all times material, CONTI was acting under the color of state law and acting with authority possessed by virtue of his employment as a teacher at ███████ and pursuant to the power that he possessed by and through his employment at ███████. Through his official duties as an employee of ███████ CONTI met, groomed, sexually assaulted, harassed and victimized JANE DOE—a minor under his supervision and control. CONTI used his authority to harass, control and manipulate JANE DOE at ███████ and beyond. Many of the acts of improper unlawful and abusive conduct occurred at ███████ during normal business hours when neither CONTI nor JANE DOE was being properly supervised, and the conduct occurred with such frequency and under such open and obvious circumstances that even minimal supervision would have detected its occurrence. Indeed, the conduct complained of herein was known to students, staff members and administrators but was ignored and tolerated by ███████ ███████

17.    While employed at ███████ CONTI was directed by the school to supervise and teach minor children. Consequently, CONTI met student, JANE DOE, when she was only sixteen



5

███ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ███████████ etal.

Complaint

(16) years old. CONTI was Jane Doe's AP English Teacher during the 2023-24 school year. JANE DOE was under his direct supervision and control. CONTI was enabled in accomplishing his psychological and sexual abuse/assault of JANE DOE by the existence of his employee/employer relationship with ████████.

18.     Beginning in JANE DOE's junior school year, CONTI began the process of "grooming" JANE DOE, first, by showing sympathy and encouragement to JANE DOE, offering to serve as her academic college mentor, and creating after-school "meetups" with JANE DOE near her student locker to greet her every day.

19.     Despite being fully aware that ███████ employee policies prohibited fraternizing with students in many ways, CONTI initiated prohibited communications via email, social media platforms and phone text with JANE DOE to discuss non-school related topics, and did so both during school hours and evenings.

20.     Further, he also recruited JANE DOE to join ███████ after school Volleyball Club, for which he served as coach, thereby extending and maintaining direct supervision over JANE DOE, and separately offering one-on-one volleyball lessons to her. This relationship allowed him to target JANE DOE and isolate her from her classmates and school staff.

21.     By the end of the 2023-24 school's first quarter, CONTI's interest in JANE DOE became apparent to other students, faculty and staff. CONTI would often provide pretextual reasons to meet up with JANE DOE by removing JANE DOE from volleyball club practice and taking her into his classroom, using these manipulative behaviors to gain private access to JANE DOE. First,

6

██████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████ etal.

Complaint

he started to confide in JANE DOE about his work life, sharing internal information involving the school administration and faculty, and giving her personal details about his lifestyle at home. As he developed trust with JANE DOE, he would let her vent about her own problems and challenges in her daily life, acknowledging her feelings of frustration and dissatisfaction. Then, he transitioned into sharing intimate "secrets" about his marriage, including details about his sexual life with his wife.

22.     To lure her into his classroom and separate her from her friends, CONTI encouraged JANE DOE to hang out in his classroom before, during and after school hours, which JANE DOE did multiple days a week, including eating lunch alone with CONTI in his classroom. CONTI's "alone" time with JANE DOE was quickly known to multiple individuals, including Ms. Eileen Turenne ████████ Principal) and Ms. Erin Kurtz ████████ Assistant Principal) who frequently saw them together in and around CONTI's classroom, school hallways, and during and after school hours, and observed their friendly and playful interactions, including acts of physical contact between CONTI and JANE DOE. Instead of questioning the overly close personal relationship between CONTI and JANE DOE that was publicly known to students, teachers and administration ████████ decided to stick their heads in the sand, ignoring the fact there was no legitimate reason for JANE DOE to be in Conti's classroom with such frequency, particularly during volleyball practice time. This type of student-teacher relationship should have been highly alarming to every teacher and/or administrator who observed the nature and frequency of the contact between them.

7

████ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ████████████████ etal.
Complaint

23.     Further, as CONTI encouraged JANE DOE to share intimate details about her life at home, he was critical of what he perceived as JANE DOE's parents' lack of involvement and convinced her to take him as her mentor and life guide. To gain her trust further, he began to give JANE DOE driving lessons after school to assist her in obtaining her unrestricted driver's license..

24.     By early October 2023, CONTI was emailing, texting and calling JANE DOE every day, during and after school hours and had managed to desensitize JANE DOE into allowing physical contact. On or about October 12, 2023, after their regular driving lesson, CONTI physically hugged JANE DOE, which she quickly rejected, and he acknowledged to JANE DOE that the hug was intrusive and apologized. Hours later, CONTI "confessed" to JANE DOE that his feelings towards her had evolved and he now found himself romantically connected to her. Not surprisingly, this so-called "confession" by CONTI sent JANE DOE into a spiral of emotions and state of confusion that her young mind could not comprehend with clarity.

25.     By October 16, 2023, CONTI had successfully gained JANE DOE's complete trust, and lured her into a nearby shopping plaza where he began to sexually assault the child in her vehicle after school. He had also effectively taken full control of tracking her movements, convincing her to allow him to track her location indefinitely via a phone tracking application.

26.     By late October 2023, JANE DOE often found herself alone with CONTI and being sexually assaulted in his classroom, school storage closet and in both of their vehicles, among other locations. He would summon her to his classroom when no other students were around, and into his or her vehicle outside school. He would convince JANE DOE to take joy rides with him

8

█████ ndividually, and as parent and legal guardian of JANE DOE, a minor,

v █████████████████, et al.

Complaint

throughout Palm Beach County after volleyball lessons and began performing oral sex on her. He would often leave school early after student dismissal time, under the pretext of family emergencies so he could bait JANE DOE to meet him after school at different locations where he could sexually assault her before she would go to work or home.

27.     As the sexual abuse escalated, CONTI continued to employ every manipulative tactic to exert control over JANE DOE such as dictating all her movements, constantly inquiring about her whereabouts and with whom she was communicating. To keep tight control over JANE DOE, he would often create situations to be alone with her, such as granting JANE DOE access to the school building through side doors, granting her school passes so she could come meet with him in his classroom alone, preparing school lunch meals for her and inviting her to eat lunch with him alone during school hours. Several teachers and faculty members personally witnessed these lunch meetings, but no one ever questioned, nor reported to the administration anything about this unusual teacher-student relationship between CONTI and JANE DOE.

28.     By early to mid December 2023, rumors widely circulated among █████████ students regarding CONTI's inappropriate behavior towards certain female students, including JANE DOE. CONTI quickly became aware of what was being said in the school hallways and started pressuring certain students to tell him who had initiated the rumors so he "could put a stop to it."

29.     As the pressure mounted on CONTI, he began to notice that JANE DOE was feeling severely stressed out and hesitant about their inappropriate relationship; in response, he quickly began to give unexplained gifts to JANE DOE and *her* friends to keep her happy and dissipate her

9

███████ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ███████████████████ etal.
Complaint

concerns. CONTI paid for special items for JANE DOE, including buying jewelry, Apple air pods, clothing, paying her annual subscription to Spotify, food and drinks. Despite the rumors being quite public among the students, no one in ███████'s administration or faculty seemed to be paying attention to CONTI's over friendly behaviors with female students. In fact, CONTI told JANE DOE he had been praised by Assistant Principal Kurtz for the manner in which he effectively gained the trust and respect of his students due to his youthful, friendly character and personality.

30.     Throughout this time, ███████ condoned and ratified CONTI's actions, including his violation of school rules and policies, standing by silently and failing to take any meaningful action to investigate and/or protect JANE DOE.

31.     The sexual misconduct of CONTI with JANE DOE originated because of the teacher-student relationship between them while CONTI was a teacher at ███████ and while he was employed by ███████ CONTI took advantage of his position, authority and control over JANE DOE.

32.     ███████ its administrators and employees had multiple opportunities to investigate, prevent and report this abuse and, pursuant to Florida Law, all were mandatory reporters. Despite other teachers and administrators frequently seeing CONTI alone with the child during inappropriate times, it wasn't until student rumors began to circulate at school and in social media, that the school made initial inquiries, and even then, they did not take any serious action.

33.     Further, CONTI knew that JANE DOE was particularly vulnerable and susceptible to being

10

███████ ndividually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ etal.

Complaint

sexually abused since she had confessed to him, she had been previously victimized by an adult male as a young child. CONTI used all this information to convince JANE DOE that their romantic relationship was real and had persuaded her to have vaginal sex with him, at times leaving bruises on her body.

34.  In early January 2024, CONTI continued to emotionally manipulate JANE DOE, realizing her anxiety and vulnerability and controlling her movements. During an prior to this same time, ████████ Administration received at least one complaint from parents reporting CONTI's unprofessional and inappropriate actions in the classroom with students and the rumors about inappropriate behavior with female students continued to spread.

35.  In early 2024, CONTI was evidently volatile in the classroom with students and ████ ████ administrators should have been aware of his unstable behavior. Around this time, CONTI confessed to JANE DOE that the prior year, he had been questioned by ████████ Assistant Principal Kurtz about inappropriate conduct with another female student and bragged to JANE DOE about how quickly he had convinced ████████ that the so-called accusations were unfounded. Consequently, ████████ took **no action** against CONTI at that time and he was only cautioned without any consequences or increased supervision:

Erin Kurtz <erin.kurtz@pbcharterschools.org>
To: Damian Conti <damian.conti@pbcharterschools.org>

Tue, Jan 24, 2023 at 10:50 AM

Good Morning Mr. Conti,
Thank you for taking the time to speak to me today. My goal is to make sure that ████ students continue to benefit from your dynamic teaching and caring presence. Please remember that giving gifts and spending time with student groups outside of school activities is outside of the professional boundaries of a teacher/student relationship. I am confident that you will avoid these situations and still be able to maintain a rapport with your students.
Thank you,

36.  Just a year after that 2023 communication, ████████ Assistant Principal Erin Kurtz

11

████ individually, and as parent and legal guardian of JANE DOE, a minor,

v ████████████ et al.

Complaint

had undoubtedly become aware again of some of CONTI's inappropriate behaviors toward

students, but imposed a discipline and took no steps to protect students, including JANE DOE:

**Erin Kurtz** <erin.kurtz@pbcharterschools.org>                     Fri, Jan 12, 2024 at 12:21 PM
To: Damian Conti <damian.conti@pbcharterschools.org>

Good Afternoon,
I want to remind you that you should not be transporting students in your car. If you are transporting them for a field trip,
the appropriate paperwork should be on file and there should always be a minimum of 3 people. Let me know if you have
any questions.

37.     Upon information and belief, ████████ Administrators had received other

complaints from parents as early as the 2022-23 school year, indicating CONTI's recurring

inappropriate behavior with other female students, and ████████ took no precautionary

actions at the time.

38.     On or about mid-January 2024, a social media video was circulating among students,

showing JANE DOE getting into CONTI's vehicle at the school's teacher parking lot, which had

prompted the Jan. 12, 2024 email from Assistant Principal Kurtz to CONTI.

39.     As CONTI felt the pressure that was intensifying around him for his predatory behavior,

he continued to control JANE DOE and convinced her that the best plan at the time was to

proactively approach ████████ Administrators and deny any impropriety by CONTI despite

the fact that he was sexually assaulting her almost every day. Thereafter, on January 23, 2024,

JANE DOE approached ████████ Principal Turenne and Assistant Principal Kurtz and

alerted them to the rumors that were circulating and denied they were true. CONTI also separately

consulted with Principal Turenne and Assistant Principal Kurtz seeking their advice as to how to

handle the so-called "unfounded rumors."

████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ etal.

Complaint

40.    Despite these evident signs of impropriety by CONTI with female students, ████████ administrators chose to ignore the signs of CONTI's predatory behavior and accepted both CONTI's and JANE DOE's narrative as truthful without further investigation. Despite the explicit alerts, ████████ administrators told JANE DOE to "stop worrying so much" and took no action towards CONTI.

41.    By February 1, 2024, the school rumors were still circulating and JANE DOE was feeling anxious, paranoid and frightened that the truth was about to come out while CONTI increased the pressure on JANE DOE to deny their inappropriate relationship at all costs. To dissuade a further investigation, JANE DOE herself reached out *again* to Principal Turenne and Assistant Principal Kurtz to ask for help and provided the school with the names of students that that she believed were responsible for spreading the rumors about CONTI and JANE DOE.

42.    Upon information and belief, Principal Turenne and Assistant Principal Kurtz made minimal attempts to communicate with any of the students that had been identified by JANE DOE as her harassers, failing once again to properly report, document and investigate the alleged rumors and take action to protect JANE DOE from a sexual predator. Despite personally hearing from students about their observations involving CONTI's close relationship with JANE DOE, Principal Turenne failed to respond to CONTI's predatory behaviors and did not take any precautionary action at that time to remove CONTI from school and conduct a full and proper investigation into the students' observations and allegations.

43.    On Monday, February 5th, 2024, ████████ Principal Turenne summoned both

13

████ ndividually, and as parent and legal guardian of JANE DOE, a minor,
v. ████████████ etal.
Complaint

CONTI and JANE DOE separately during school hours. Disregarding the clear warnings that

something inappropriate had been happening between CONTI and JANE DOE, Principal Turenne

took no action to investigate the "unfounded rumors" against CONTI and told both CONTI and

JANE DOE to simply refrain from speaking to each other to dispel the rumors. No other

precautionary measures were taken by Principal Turenne at that time- CONTI was permitted to

continue teaching students, without any concerns for the wellbeing of any children under ████

████ care, and JANE DOE was told she should continue to follow her usual schedule, including

attending her AP English class with CONTI the next day.

44.    Throughout this entire time, JANE DOE's parents were kept in the dark, completely

unaware of the accusations and rumors involving their minor child JANE DOE of ███████████

had clear knowledge for several weeks by then.

45.    On February 5, 2024, Conti summoned JANE DOE after school to a nearby plaza and

sexually assaulted JANE DOE one last time.

46.    On the morning of February 6, 2024, a male student came forward and notified Principal

Turenne and other school administrators that he had concrete evidence that CONTI and JANE

DOE were having an ongoing inappropriate romantic relationship. The evidence reviewed by the

school police indicated that CONTI was undoubtedly romantically and sexually involved with

JANE DOE.

*02/06/24 Police Report*

14



████ individually, and as parent and legal guardian of JANE DOE, a minor,
v ████████████ etal.
Complaint

████ accounts. ████ stated that he had heard rumors of ████████ and her teacher ████████ of possibly having a relationship together. ████ stated that on 02-06-24 at approximately 0615 hours he checked Instagram and confirmed that they were having a relationship together.

████ stated that ████████ had two separate Instagram pages the ████████████ . ████ stated that he seen conversations with Conti back and forth from one another using the Instagram page of Conti's named (damejc) He also stated that he seen several pictures of the two kissing.

47.    Later that same day, as JANE DOE was ending her second school period, JANE DOE was alerted by a female friend that CONTI had sent an Instagram group message to her and several of her friends alerting them to permanently delete all digital conversations and pictures with CONTI. He also wrote that he just had been called into Principal Turenne's office for questioning by school police and then suspended from work until further notice. CONTI also told JANE DOE to prepare herself because she was about to be interrogated by school officials.

48.    A few minutes after the Instagram messages were received, Assistant Principal Kurtz walked into JANE DOE's classroom and asked JANE DOE to follow her into the main office. As she followed Kurtz, JANE DOE panicked and was severely distressed. Once in the main office, JANE DOE requested permission to go to the bathroom where she rushed to attempt to delete text messages between her and CONTI. JANE DOE was visibly unstable and in a state of despair trying to compose herself before she could come out of the bathroom. She remained in the bathroom for several minutes, which Assistant Principal Kurtz noticed, leading her to knock on the bathroom door inquiring why JANE DOE was taking so long to come out.

49.    JANE DOE finally came out of the bathroom and proceeded to the conference room. As she walked into the room, JANE DOE observed two police officers and Principal Turenne reviewing what appeared to be pictures or screenshots of JANE DOE's Instagram account on a

██████ individually, and as parent and legal guardian of JANE DOE, a minor,
v ███████████████████ etal.
Complaint

cell phone. When they became aware that JANE DOE had entered the room, they hid the phone and told JANE DOE to take a seat.

50.     At said meeting, JANE DOE was initially told by officers of their investigation into allegations of an improper relationship between CONTI and JANE DOE. Officers further stated that their conversation with JANE DOE was going to be recorded.  When the recording started, the officers read JANE DOE her Miranda Rights and told her she had the right to remain silent and not talk to them if she did not wish to. Additionally, JANE DOE was told by school police officers that they had evidence already confirming her romantic relationship with CONTI. Although the delivery of Miranda warnings communicated exactly the opposite message,  she was told that she has was not in any trouble.

51.     In response, JANE DOE refused to answer any questions and requested to have both her parents and an attorney present before she would speak to the officers. At that point, Principal Turenne scolded JANE DOE for not answering the officers' questions, further aggravating JANE DOE's emotional state at the time, and telling JANE DOE to leave school which JANE DOE refused to do. JANE DOE was permitted to call her stepfather, whom she quickly told that she was in trouble and told him she was being accused of having an improper relationship with a teacher. The school did not make any attempts to communicate directly with JANE DOE's parents and inform them of their recent findings, including the sexual assault JANE DOE had been subjected to and the obvious emotional turmoil she was experiencing. Wanting to escape her oppressors, JANE DOE requested to be permitted to return to class, so she could take a test. Principal Turenne

16

████████individually, and as parent and legal guardian of JANE DOE, a minor,
v ████████████████ etal.
Complaint

sent her back to class and told her to return to the main office conference room afterwards to speak

further.

52.    After taking her test, JANE DOE returned to the main office as told and met with Assistant

Principal Kurtz. Kurtz asked her to follow her to the school's reception and told her to sign out

and to go home. When JANE DOE began to sign herself out of school **as mandated** by Kurtz, the

school receptionist in turn inquired as to why JANE DOE was leaving so early without a parent or

guardian signing her out as was required by school policy.

53.    At this time, ████████████'s receptionist contacted Principal Turenne via the school's

radio walkie/talkie system to confirm that JANE DOE was being released from school without her

parents' signature. Principal Turenne confirmed and responded **"Yes. Get her out of here"** to

which the receptionist followed up by asking her if she had written or verbal consent from JANE

DOE's parent or guardian. Turenne replied, **"I will deal with it later, just tell [JANE DOE] to

sign on behalf of her parent."** Abiding with what Principal Turenne had just directed, JANE DOE

signed out but signed her name instead, and left campus walking to her vehicle which was parked

outside school grounds.

| ████████████ | Pcin | 2.16.24 | 11.38 | home |
|---|---|---|---|---|

54.    On that February 6, 2024 morning, willfully oblivious to the emotional turmoil inflicted on

JANE DOE, ████████████ administrators failed to check on JANE DOE's mental state despite

the serious allegations that had come to light and the irrefutable evidence that the child had been

sexually assaulted by CONTI. No counselor or therapist or anyone with the proper training to

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc. etal.
Complaint

provide mental care was made available to check on JANE DOE or speak to the child before she
was ordered by Turenne to leave school.

55.     After leaving school, JANE DOE immediately made contact with CONTI via phone and
met him at a nearby Home Depot a few minutes later. Upon information and belief, the pair made
a pact to commit suicide together. Once they met, the two walked inside the Home Depot store
together, bought a piece of rope and a chain, and left the store minutes later. Once in the parking
lot, the pair went separate ways, and JANE DOE drove away in her own vehicle alone.

56.     Meanwhile, as JANE DOE proceeded with her plan to commit suicide, JANE DOE's
parents arrived unannounced at ███████████ to ask questions about what was occurring.  To
their surprise, they were told that their child had been ordered to leave school without their consent.
At that point, the parents were told (via a Spanish interpreter) to sit in the conference room and
wait for information but no other information was provided to them.

57.     Despite their inquiries as to the whereabouts of their daughter, JANE DOE, and the reasons
for the meeting, JANE DOE's parents were given vague details and only told by school
administrators that police officers were trying to locate JANE DOE who had left the school
premises. However, at no time did ███████████ administrators inform JANE DOE's parents
that the child had been ordered to leave school premises earlier.

58.     While at school and waiting for news from the police officers, JANE DOE's parents were
able to track JANE DOE's location via their cellphone and immediately shared this information
with the school police officers.

███dividually, and as parent and legal guardian of JANE DOE, a minor,

v. ███████████████ etal.

Complaint

59.     After multiple call attempts from police and JANE DOE's mother to JANE DOE, the child finally answered her mother's call. As her mother pled with JANE DOE to return to school, Principal Turenne snatched the mother's phone from her hands and instead of calmly speaking to JANE DOE, she chastised the child for "getting [her] in trouble" and demanding her to return to school. Principal Turenne shouted at JANE DOE over the phone and told her that she had "ten minutes to return to school" or "[JANE DOE] will be in trouble." Then the child hung up, and no one heard from JANE DOE again that day.

60.     At around 2:10 pm, the Palm Beach County 911 Emergency system received a call from CONTI reporting that he was trying to "help someone who [was] threatening with suicide." CONTI then indicated that "[JANE DOE was] trying to find a park to hang herself" and proceeded to identify JANE DOE as a minor who was driving, "already ha[d] rope" and that he was driving trying to find her. CONTI was asked to pull over by the 911 operator, and to stop driving in order to meet with a police officer.

61.     A few minutes later, CONTI met with police at a nearby Burger King. CONTI provided JANE DOE's contact information and volunteered other details, including his earlier suspension from school, and confirming his involvement with JANE DOE:

**Police Report 2/6/2024**

CPL ███ ADVISED THAT AS HE GATHERED INFORMATION TO ASSIST ███ IT WAS DEVELOPED THAT ███████ IS A CURRENT ████████ STUDENT ███████████ AND DAMIAN IS ONE OF HER SCHOOL TEACHERS. DAMIAN DISCLOSED TO CPL ███ THAT HE WAS RECENTLY SUSPENDED FROM THE SCHOOL PENDING AN INVESTIGATION FOR "INAPPROPRIATE RELATIONS" WITH ███████ WHO IS 16 YEARS OLD. DAMIAN, 35 YEARS OLD, WENT ON TO TELL HIM THAT HE WAS ASKED TO LEAVE THE SCHOOL TODAY, 02/06/24.

19

 individually, and as parent and legal guardian of JANE DOE, a minor,

v ▮▮▮▮▮▮▮▮▮▮▮▮▮, etal.

Complaint



▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮▮ TODAY, 2/06/24, SHE TOLD HIM SHE HAD A ROPE AND A CHAIN AND WANTED TO HANG HERSELF AT A PARK. DAMIAN FEELS THAT BECAUSE ▮▮▮▮▮▮▮ WAS LOOKING INTO HER HEAVILY, THIS MAY HAVE CONTRIBUTED TO HER WANTING TO DO THIS. ▮▮▮▮▮▮ ADMINISTRATION WAS PRIVY TO THE ACCUSATIONS BEING SPREAD ON CAMPUS; DAMIAN AND ▮▮▮▮▮ WERE TOO CLOSE AND THAT THEY LIKELY WERE ENGAGING IN INAPPROPRIATE BEHAVIORS. ADMINISTRATION CONFRONTED HIM ABOUT THE ACCUSATIONS AND THAT WAS HOW HE FOUND OUT. DAMIAN FEELS "THINGS GOT OUT OF CONTROL, BUT THEY HAD A GOOD BOND." HE WOULD AT TIMES MEET UP AT THE ▮▮▮▮ WHERE SHE WORKED AND ALSO MET UP WITH HER ONE ON ONE AT A NEARBY PARK. DAMIAN DESCRIBED THE RELATIONSHIP TO BE "ROMANTIC IN NATURE" AND THAT THERE WERE "FEELINGS THAT SHOULDN'T HAVE BEEN THERE." DAMIAN ADMITS THAT HE "SHOULD HAVE STOPPED IT." THIS CONVERSATION WAS CAPTURED WITH MY BODY WORN CAMERA.
      I MADE CONTACT WITH PALM BEACH COUNTY SCHOOL BOARD POLICE DEPARTMENT AND SPOKE TO SCHOOL POLICE OFFICER ▮▮▮▮▮ WHO CONFIRMED THAT THERE WAS AN ACTIVE INVESTIGATION ON DAMIAN CONTI FOR ALLEGED LEWD AND LASCIVIOUS CONDUCT WITH ▮▮▮▮▮▮ AND WITH AN ADDITIONAL STUDENT, ▮▮▮▮▮▮▮. REFER TO PALM BEACH COUNTY SCHOOL BOARD POLICE DEPARTMENT CASE ▮▮▮▮▮▮▮▮▮

62.    After approximately a 30-minute search by PBSO patrol officers and a PBSO helicopter,

JANE DOE was found hanging by rope around her neck from a tree behind a nearby church. PBSO

were the first responders on the scene and were able to provide cardiopulmonary resuscitation,

miraculously saving JANE DOE's life.

63.    Meanwhile, for about two hours upon their arrival at ▮▮▮▮▮▮ JANE DOE's parents

were kept uninformed and remained completely ignorant of the fact that their daughter had been

sexually assaulted multiple times by ▮▮▮▮▮▮ teacher CONTI. At about 3:00 pm, JANE

DOE's parents were told by school police that they needed to go to St. Mary's Hospital to meet

with their daughter. No other information was provided to them at that time.

64.    Upon their arrival at St. Mary's Hospital, JANE DOE's parents heard for the first time ever

from PBSO of the sexual abuse their child JANE DOE had endured for the past four months that

led her to attempt to take her own life.

65.    On February 6, 2024, at approximately 2:30pm, CONTI was arrested. After his arrest,

CONTI made additional admissions to police officers, including his earlier suspension from work

████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████████ etal.

Complaint

at ████████ that morning pursuant to a school investigation into his relationship with JANE DOE.

66.  In reviewing the data of both CONTI's and JANE DOE's email, phone, and social media accounts, law enforcement extracted thousands of messages between CONTI and JANE DOE throughout the course of the last four months before CONTI's arrest, many of which contained highly inappropriate and/or explicit sexual content. Several of these communications clearly show that CONTI inappropriately communicated with JANE DOE while teaching class or while being on school grounds.

67.  Law enforcement arrested CONTI for three counts of unlawful sexual activity with a minor under F.S.794.05(1) and four counts for offense against a student by authority figure under F.S. 800.101(2)(a). To this day, CONTI remains in jail and awaits trial.

68.  ████████ knew or should have known that CONTI was not fit for service as a high school teacher and that he never should have been permitted to be around children. CONTI had a clear and undeniable history of abusing his position of power to victimize his students and to engage in highly inappropriate relationships with them. Despite knowing that and/or having that information easily available to it, ████████ continued to employ CONTI and permitted him to be unsupervised around children, including JANE DOE.

69.  As a result of the Defendants' actions, JANE DOE was sexually assaulted multiple times and suffered serious and permanent injuries. Additionally, her constitutional rights were violated including those afforded to her under the Fourth and Fourteenth Amendment.

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc. etal.
Complaint

## COUNT I – NEGLIGENT TRAINING, SUPERVISION AND RETENTION ▓▓▓▓▓▓



70.    Plaintiff realleges and incorporates the allegations contained in paragraphs 1 through 69 above, as if fully stated herein, and further alleges:

71.    Defendant, ▓▓▓▓▓▓ owed a legal duty to select as employees only those fit for service, to supervise employees, and to provide necessary and appropriate discipline, training, and retraining.

72.    It was unreasonable for ▓▓▓▓▓▓ to select CONTI and continue to employ him, in light of what it knew or should have known and/or learned through a proper investigation.

73.    In addition, it was unreasonable for ▓▓▓▓▓▓ to fail to provide mental health care to the Plaintiff JANE DOE upon learning that she had been victimized by CONTI and was experiencing severe emotional distress and turmoil, and to instead subject her to abandonment by expelling her from the school premises without the knowledge or consent of JANE DOE's parents.

74.    During the course of CONTI's employment, ▓▓▓▓▓▓ became aware or should have become aware of problems with CONTI that indicated his unfitness for service and/or the need for discipline and training. ▓▓▓▓▓▓ had both actual and constructive notice of CONTI's previous and current conduct, including inappropriate relationships with students. Additionally, CONTI used ▓▓▓▓▓▓ campus to victimize children, including JANE DOE, and committed sex acts on children.

75.    ▓▓▓▓▓▓ breached its duty by failing to take the necessary action to prevent CONTI from victimizing and injuring the Plaintiff. Despite its knowledge of CONTI's actions, ▓▓▓▓▓▓



███ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ etal.

Complaint

███ continued to employ CONTI as a teacher, which put him in a position of authority over Plaintiff JANE DOE and permitted CONTI to have unsupervised, one-on-one contact with female students, including, but not limited to, the Plaintiff JANE DOE.

76.     ██████ also breached its duty by failing to identify, address and provide mental health support to the Plaintiff JANE DOE, at the time of discovering that the minor plaintiff had been sexually victimized by CONTI.

77.     At all times material, ████████ is responsible for maintaining and ensuring the safety of the premises at the school and ensuring that its students are not victimized by teachers that it employs, nor left unsupervised at a time of emotional distress or turmoil.

78.     ███████ has a duty to supervise its employees and students and to protect its students from abuse by employees.

79.     ██████ also had a duty to provide appropriate training to CONTI, other teachers, administrators, and students (including JANE DOE), regarding the signs of grooming/predatory behavior, signs of sexual abuse, mandatory reporting requirements, how/when to report, and other appropriate actions to keep students like JANE DOE safe. ████████ failed to provide this training and, as a direct result, JANE DOE was severely and permanently injured, including both psychological and physical injuries.

80.     ██████ also had a duty to provide appropriate training to teachers, administrators, and students (including JANE DOE), regarding the signs of erratic behavior, suicidal ideation, emotional distress and turmoil, how/when to provide appropriate mental health support, and other

23

███ individually, and as parent and legal guardian of JANE DOE, a minor,
v ████████████ etal.
Complaint

appropriate actions to keep students like JANE DOE safe. ████████ failed to provide this

training and, as a direct result, JANE DOE was severely and permanently injured, including both

psychological and physical injuries.

81.    ████████ knew or should have known of CONTI's history of inappropriate behavior

towards students (including JANE DOE), history of victimizing students, and his unfitness for the

job.

82.    ████████ breached its duty to supervise its teachers and protect JANE DOE from

abuse by failing to properly investigate and supervise its employees to prevent abuse from

occurring.

83.    The type of harm inflicted on JANE DOE was reasonably foreseeable to occur, based on

the abundance of unsupervised time that CONTI was allowed to spend in an isolated environment

with individual students, his past actions and his inappropriate contact with minor students.

Further, the teachers and administration were aware that he was taking measures to ensure that his

time with JANE DOE was private—including pulling JANE DOE out of Volleyball practice and

taking her to his classroom, and giving her rides and driving lessons outside school. It was during

these times that that the Defendant sexually assaulted JANE DOE.

84.    The conduct described above constitutes negligence by ████████ for its failure to

supervise Defendant CONTI, its failure to protect Plaintiff JANE DOE from abuse by CONTI in

his official capacity as a teacher; and its failure to train staff to identify the signs of sexual

grooming and a sexual predator, and to promptly provide mental health support to students,

24

███████ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ████████████████ etal.
Complaint

including JANE DOE at time of crisis.

85.     Because of ██████████ negligent supervision, retention, and training, the Plaintiff

has sustained permanent damages for which compensation is required.

86.     Plaintiff, JANE DOE fell within the zone of foreseeable risk created by CONTI's continued

employment at Defendant ██████████ school.

87.     As a direct result of ██████████ negligence, JANE DOE was subjected to serious and

permanent injuries. JANE DOE has suffered bodily injury and resulting pain and suffering,

disability, disfigurement, mental anguish, embarrassment, humiliation, loss of capacity of the

enjoyment of life, aggravation of pre-existing conditions, medical care and treatment, loss of

earnings, and loss of ability to earn money. The losses are permanent and/or continuing and

Plaintiff will continue to suffer losses in the future.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against the Defendant ██████████

██████ for damages exceeding $75,000.00, exclusive of interest and costs, demands taxable

costs, and further demands trial by jury on all issues so triable.

**COUNT II: 42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS**
(██████████████)

88.     JANE DOE re-alleges paragraphs 1 through 69, as if fully restated herein.

89.     At all times material hereto, Defendant ██████████ was responsible for the charter

school known as ██████████ its agents and employees, including hiring, supervising,

enforcing policies, overseeing, training and establishing policies, customs, and procedures to

conform the conduct of its agents and employees to law.

25

███████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ███████████████ etal.

Complaint

90.    At all times material, ███████████ and CONTI were acting under the color of state law and CONTI was acting with authority possessed by virtue of his employment as a teacher at ███████████ and pursuant to the power that he possessed by and through his employment at ███████████. Through his official duties as an employee of ███████████ CONTI met, groomed, sexually assaulted, harassed and victimized JANE DOE—a minor under his supervision and control. CONTI used his authority to harass, control and manipulate JANE DOE at ███████ ███████████ and beyond.

91.    ███████████ policies, procedures, customs, and practices of condoning unlawful and/or improper acts and ignoring repeated and blatant violations of school policies by their employees (including CONTI) meant to protect students, like JANE DOE, were direct causes and/or moving force leading to the violations of JANE DOE's civil rights, including but not limited to allowing JANE DOE to be taken off campus in teachers' (including CONTI's) personal vehicles, allowing students to be alone with teachers (i.e. in the classroom, after school, in a vehicle), allowing teachers to communicate with students via text message/cell phone/email and permitting teachers to blatantly violate school policies without corrective action/discipline.

92.    Further, ███████████ failure to identify, train, discipline, or otherwise properly supervise employees (including CONTI) who have engaged in inappropriate acts, misconduct, and/or the above-mentioned violations directly caused and/or contributed to the violations of JANE DOE's civil rights, including ███████████ condoning of and failure to appropriately respond to violations of policies, practices, customs through appropriate discipline, training, and

26

████ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ████████ etal.
Complaint

supervision. JANE DOE's constitutional rights were violated, including but not limited to her

rights under the Fourth and Fourteenth Amendment, right to body integrity, and right to personal

safety.

93.   ████████ knew of a need to train and supervise its employees in certain areas and

made a deliberate and conscious choice not to take action, including but not limited to taking

students off campus in personal vehicles, allowing students to be alone with teachers,

inappropriate conduct and/or relationships between teachers and students, blatant violations of

school policy, communicating with students by cell phone and text message, identifying sexual

predatory behavior by a teacher, mandatory reporting requirements, providing mental health

support to students, etc. Despite knowing of these training deficits, ████████ acted in a

deliberately indifferent manner by failing to take appropriate action and/or protect its students,

like JANE DOE.

94.   ████████ displayed deliberate indifference to the rights of JANE DOE, as secured

by the Fourth and Fourteenth Amendments, by allowing CONTI to continue to possess his

authority despite his known prior history of engaging in inappropriate relationships with students,

violating school policies, frequently spending time alone with female students (including JANE

DOE), grooming JANE DOE (i.e. daily text messages, special treatment, frequent time alone),

exercise custody over JANE DOE, etc.



███████individually, and as parent and legal guardian of JANE DOE, a minor,
v. ███████████████████etal.
Complaint

95.    ███████████displayed deliberate indifference to the rights of JANE DOE, as secured

by the Fourth and Fourteenth Amendments, by allowing CONTI to possess his authority after his

propensity to abuse that authority became evident.

96.    ███████████s actions and/or inactions directly and proximately led to violations of

JANE DOE's civil rights as secured by the Fourth and Fourteenth Amendments. Pursuant to the

Equal Protection Clause, U.S. Const. amend. XIV, § 1, Plaintiff had a constitutional right to bodily

integrity and to be free from sex discrimination, including sexual abuse, molestation, exploitation,

and harassment. Defendant had a duty to provide a safe and nondiscriminatory environment for

its students, free from psychological and sexual violence, and to resolve reports or complaints of

sexual misconduct promptly, equitably, and adequately. Defendant ███████████also had an

affirmative constitutional duty to protect Plaintiff's rights, including protecting Plaintiff from

sexual abuse by its agents and employees.

97.    ███████████and its Executive Director, Carla Lovett, and Principal Eilene Turenne had

final policy making authority and were charged with enforcing existing policies. ███████████

and its administrators acted with deliberate indifference to the rights of JANE DOE and/or

permitted, condoned and engaged in practices that were so persistent and widespread as to

constitute a custom.

98.    ███████████and CONTI had custody of JANE DOE which created a special

relationship, including while JANE DOE was on campus, while voluntarily undertaking the

responsibility to supervise the child afterschool and by permitting CONTI and other employees

28

███ individually, and as parent and legal guardian of JANE DOE, a minor,
v. ███████████████ etal.
Complaint

to take custody of the child. As a result of this special relationship and while in the Defendants'

custody, JANE DOE was groomed, harassed, victimized and sexually assaulted.

99.    Further, through these actions and inactions, ████████ created and/or increased the

danger for JANE DOE and its failure to protect JANE DOE directly resulted in her injuries,

including being sexually assaulted and attempting to commit suicide. ████████ actions

were egregious and would shock the conscience of any reasonable person.

100.   As a direct and proximate result of the violation of JANE DOE's civil rights, JANE DOE

has suffered damages, including mental anguish, bodily injury, pain and suffering, disability,

disfigurement, emotional distress, humiliation, embarrassment, loss of capacity for the enjoyment

of life, expense of medical care and treatment, loss of earning, loss of ability to earn money, and

aggravation of a previously existing condition.  The losses are permanent and/or continuing and

JANE DOE will continue to suffer losses in the future. Plaintiff's constitutional rights were

violated, and she was sexually assaulted.

101.   Plaintiff JANE DOE has retained the undersigned attorneys to prosecute this action on her

behalf and has agreed to pay them a reasonable fee and to reimburse the costs of this action.

WHEREFORE, JANE DOE demands judgment against ███████████████ for

compensatory damages, costs, interest, reasonable attorneys' fees pursuant to 42 U.S.C. §1983, §

1988 and such other and further relief as the court deems appropriate. Plaintiff further demands

trial by jury.

29



███████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ██████████████ etal.

Complaint

## COUNT III: VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972, 20 U.S.C. § 1681
███████████

102.    JANE DOE re-alleges paragraphs 1 through 69, and 101, as if fully restated herein.

103.    As a student at ██████████████, Plaintiff had the right not to be subjected to sex discrimination, including sexual abuse, molestation, exploitation, and harassment. Plaintiff also had a substantive due process right to, and liberty interest in, her bodily integrity.

104.    At all relevant times, Defendant ██████████ had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately.

105.    By as early as October 2023, Defendant ████████ had actual notice that CONTI was preying upon JANE DOE and maintaining an inappropriate relationship with JANE DOE. ████████ ████ its teachers and administrators knew or should have known that CONTI was frequently alone with this child, spent far more time with the child than is customary for a student-teacher relationship, and otherwise acted in a manner that made it obvious that the relationship was inappropriate.

106.    This notice alerted and informed ████████ that CONTI had the propensity to sexually abuse, victimize and/or harass female students and, therefore, posed a serious danger to female students of ████████████ including JANE DOE.

107.    ████████ its administrators and employees had a duty to promptly and adequately report/investigate CONTI's conduct and safeguard its students from the risk of sexual harassment,

30

█████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ etal.

Complaint

sexual abuse, and exploitation by CONTI, pursuant to federal and Florida law and its own rules, regulations, policies, and procedures. See, e.g., Florida K-20 Education Code, Fla. Stat. § 1000.01 et seq.; Florida Educational Equity Act, Fla. Stat. § 1000.05 et seq.; the Florida Administrative Code; the State Board of Education Rules; the Rules of █████████; and ███████████'s Bylaws & Policies.

108.   Each of Defendant ████████ officials, administrators, agents, and employees who received notice of CONTI's dangerous sexual propensities, including ████████ Executive Director Carla Lovett, the Principal Eileen Turenne and Assistant Principals of ████████ fellow teachers, and various Schools Police officers had the authority, collectively or individually, to initiate corrective action to remove CONTI and/or to supervise CONTI so as to prevent the risk he posed to female students in general and the plaintiff in particular.

109.   Defendant ████████ failed to take appropriate action to either remove or appropriately supervise CONTI. At all relevant times, Defendant ████████ failed to conduct a prompt, impartial, reasonable, reliable, and thorough investigation of the complaints against CONTI by employees trained and experienced in handling sexual discrimination complaints, as well as the applicable federal and Florida laws and Defendant's rules, regulations, policies, and procedures.

110.   At all relevant times, Defendant ████████ also failed to establish and institute sufficient corrective measures to safeguard its students from the risk of sexual abuse, molestation, and exploitation by CONTI. This includes, but is not limited to: (i) ████████ failure to

31



██████ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ████████████ etal.

Complaint

sufficiently limit, restrict, supervise, and monitor CONTI's behavior, communications, interactions, and relations with female students (including JANE DOE); (ii) ██████████ failure to take precautions that were sufficient to prevent sexual predation upon JANE DOE by CONTI; (iii) ████████████ willingness to allow CONTI to frequently be alone with JANE DOE, engage in an abnormally close personal relationship with JANE DOE and overlook JANE DOE's lack of engagement with other students to spend time with CONTI; and (iv) ████████ ████████ failure to otherwise abide by Federal and Florida law and to establish, implement, and abide by sufficient rules, regulations, policies, and procedures with regard to reporting, investigating, documenting, and redressing psychological and sexual misconduct and abuse.

111.    At all relevant times, Defendant ████████████ was deliberately indifferent to the known dangerous sexual and predatory propensities posed to JANE DOE by CONTI. Defendant ████████ ████████ failed to promptly and adequately report, investigate, redress, and otherwise respond to its notice that CONTI posed a serious danger of sexual abuse and exploitation to female students, including JANE DOE. Defendant ████████████ knowingly and deliberately exposed its female students, including Plaintiff, to a substantially increased risk of unwarranted and unlawful sexual abuse, exploitation, and harassment by CONTI. At the same time, Defendant ████████████ knowingly and deliberately created and exacerbated an intimidating, hostile, offensive, and abusive educational environment.

112.    Despite its actual notice of CONTI's propensities and inappropriate relationship with JANE DOE, Defendant ████████████ continued to allow him unfettered access to JANE DOE and, in

32



■ individually, and as parent and legal guardian of JANE DOE, a minor,

v. ■ etal.

Complaint

doing so, made an official decision to ignore the known danger of sexual abuse of female students, like JANE DOE, under Defendant's care.

113.    As a result of Defendant ■ gross failures to adequately respond to its actual notice of CONTI's sexual misconduct and against abuse of female students, Plaintiff JANE DOE was sexually abused and harassed by CONTI.

114.    As a further result, Plaintiff JANE DOE has suffered, and continues to suffer, substantial injuries, harm, and damages. This includes, but is not limited to, severe and permanent emotional, psychological, and physical injuries, pain and suffering, aggravation of injuries, depression, fear, anxieties, inability to function normally in social situations, shame, humiliation, and the inability to enjoy a normal life. Such harms and injuries are continuing and permanent. Plaintiff JANE DOE has also undergone medical and psychological treatment and incurred medical and other expenses.

WHEREFORE, Plaintiff JANE DOE demands compensatory damages, injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as this Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT IV – CLAIM FOR LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

115.    Plaintiffs re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 69, as if fully stated herein, and further alleges:

116.    Plaintiff ■ was at all times hereto, and now, the parent and sole guardian of Plaintiff JANE DOE.

33

█████ ndividually, and as parent and legal guardian of JANE DOE, a minor,

v. ███████████████ etal.

Complaint

117.    Plaintiff ████ has been caused presently and in the future, to suffer the loss of her child's

company, cooperation, and aid of the other; including the parent/child relationship, affection,

solace, comfort, companionship, fellowship, society, and assistance necessary to a successful

parent/child relation and the familial association has been permanently altered and impaired.

118.    As a direct and proximate result of Defendants' negligence and resulting injuries, Plaintiff

████ has suffered the damages outlined above.

        WHEREFORE, Plaintiff ████ demands judgment for damages against Defendant ████

████ plus costs, interest and such other and further relief as the Court deems appropriate and

further demands trial by jury.

        DATED this 6th day of March 2025.

                                        /s/ Jack Scarola
                                        Jack Scarola
                                        Florida Bar No. 169440
                                        Attorney E-Mail: jsx@searcylaw.com and
                                        _scarolateam@searcylaw.com
                                        /s/ Victoria Mesa-Estrada
                                        Victoria Mesa-Estrada
                                        Florida Bar No.: 76569
                                        Attorney E-Mail: vmestrada@searcylaw.com and
                                        mesateam@searcylaw.com
                                        Searcy Denney Scarola Barnhart & Shipley, PA
                                        2139 Palm Beach Lakes Boulevard
                                        West Palm Beach, FL 33409
                                        Phone: 561-686-6300
                                        Fax: 561-383-9402
                                        Attorneys for Plaintiff

34



SEARCY
DENNEY
SCAROLA
BARNHART
& SHIPLEY, P.A.
*Attorneys at Law*

■ **WEST PALM BEACH OFFICE:**
2139 PALM BEACH LAKES BLVD.
WEST PALM BEACH, FLORIDA 33409

P.O. BOX 3626
WEST PALM BEACH, FLORIDA 33402

(561) 686-6300
1-800-780-8607
1-800-226-7006 Spanish

□ **TALLAHASSEE OFFICE:**
THE TOWLE HOUSE
517 NORTH CALHOUN STREET
TALLAHASSEE, FL 32301-1231

(850) 224-7600
1-888-549-7011

**ATTORNEYS AT LAW:**
ELISE SHERR ALLISON
*THEODORE "TED" BABBITT
*ROSALYN SIA BAKER-BARNES
*F. GREGORY BARNHART
*T. HARDEE BASS, III
LAURIE J. BRIGGS
*BRIAN R. DENNEY
JORDAN A. DULCIE
JUAN C. DIAZ AVILA
BRENDA N. FULMER
*MARIANO GARCIA
*JAMES W. GUSTAFSON, JR.
MARA R.P. HATFIELD
ADAM B. HECHT
*JACK P. HILL
*JOSEPH R. JOHNSON
CAMERON M. KENNEDY
KATHERINE A. KIZIAH
MICHAEL H. KUGLER
ANDREA K. LEWIS
WASEEM A. LEWIS
GAETANO V. MURPHY
LINDSAY M. REINHART
*EDWARD W. RICCI
*JOHN SCAROLA
*MATTHEW N. SCHWENCKE
CARTER W. SCOTT
*CHRISTIAN D. SEARCY
CHRISTOPHER K. SPEED
BRIAN P. SULLIVAN
*KAREN E. TERRY
DAVID P. VITALE, JR.
DONALD J. WARD III
*C. CALVIN WARRINER III
CLELL C. WARRINER IV
BORIS L. ZHADANOVSKIY

**OF COUNSEL:**
*EARL L. DENNEY, JR.
*JOHN A. SHIPLEY III (retired)
WILLIAM B. KING

**RESEARCH ASSOCIATES:**
SHANNON M. BAER
SOFINA K. LETTS
MARY ALICE TUCKER

**SHAREHOLDERS**
*BOARD CERTIFIED IN
CIVIL TRIAL
*BOARD CERTIFIED IN
HEALTHCARE
*BOARD CERTIFIED IN
COMMERCIAL & BUSINESS
LITIGATION

**ALSO ADMITTED**
¹ GEORGIA
² MISSISSIPPI
³ NEW JERSEY
⁴ VIRGINIA
⁵ WASHINGTON DC

**PARALEGALS:**
KIMBERLEY AGUILERA
LAZARO BECERRA
NICHOLAS F. DeBELLIS
MICHAEL GAUGER
JOHN C. HOPKINS
VINCENT L. LEONARD, JR.
LESLIE A. McCOWN
HELEN ORTIZ
ROBERT W. PITCHER
ELISABETH A. PITTALUGA
CHRIS R. RODGERS
NYDIA SERRANO
BONNIE S. STARK

March 1, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
9414 7266 9904 2210 9373 31

Florida Department of Education
Turlington Building, Suite 1514
325 West Gaines Street
Tallahassee, FL 32399

9414 7266 9904 2210 9373 48

The School District of Palm Beach County
3300 Forest Hill Boulevard
West Palm Beach, FL 33406

9414 7266 9904 2210 9373 55

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9414 7266 9904 2210 9373 62

As Registered Agent:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9414 7266 9904 2210 9373 79

Department of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

In Re:   Our Client:        ▮▮▮▮▮▮▮▮▮ as Mother and Natural
                            Guardian of ▮▮▮▮▮▮ a minor
         Client's Date of Birth:
         Date of Incident:      2/6/2024
         Our File Number:       20240175





EXHIBIT
Composite
A

Page 2

Dear Sir/Madam:

This law firm represents the interests of ███████████ as Mother and Natural Guardian of ██████ a minor, relative to injuries sustained on or about August 2023-February 2024, while a student at █████████████████████████████████ when her teacher, Damian Conti, engaged in sexual activity/intercourse with the child on and off campus on numerous occasions. ███ a minor of the subject incidents and a student at the above-mentioned school.

Pursuant to Florida Statute 768.28, this letter will serve to notify you or otherwise place you on notice that Claimant, ████ has placed you on notice of intent to initiate litigation against ████████████████████ █████████████████ Holdings, LLC, and other potential Defendants.

PLEASE ACCEPT THIS CLAIM AS OUR FORMAL NOTICE OF INTENT TO PURSUE FILL CLAIMS (STATE AND FEDERAL) ARISING FROM THE SEXUAL ASSAULT ON ████ (A MINOR)" THESE CLAIMS INCLUDE BUT ARE NOT LIMITED TO: NEGLIGENCE; SEXUAL BATTERY; CHILD ABUSE; CIVIL RIGHTS VIOLATIONS; FAILING TO SUPERVISE; FAILING TO REPORT CHILD ABUSE; AND, FAILING TO PROTECT A STUDENT IN THE DISTRICT'S CUSTODY AND CONTROL.

We will bring a formal claim for damages, pursuant to Florida Statute §768.28 for all damages recoverable as a result of the above-mentioned actions and associated negligence that led to ████'s injuries.

To the extent that any potential defendant in this matter may claim sovereign immunity protection under the provisions of Chapter 768, Florida Statutes, this Notice of Claim is sent in fulfillment of Section 768.28, Florida Statutes, on behalf of: *

Claimant:        ███████████████

Address:         █████████████████████

S.S.N.:          ████████████

D.O.B.:          ███████████

Place of Birth:  ████████████████

Case Style:      ████ (a minor) vs. ███████████ et al.



Page 3

Court:              Palm Beach County

**\*Please be advised that this child was the victim of a sexually motivated crime and, as such, we are requested that her name and all of her identifying information be kept confidential.**

There are no adjudicated penalties, fines, fees, victim restitution fund, and other judgments in excess of $200.00, whether imposed by civil, criminal, or administrative tribunal, owed by claimant to the State, its agency, office or subdivision.

This claim arises out of injuries sustained by ███ (a minor). The perpetrator, Damian Conti was a teacher at ████████████ located within the jurisdiction of the Palm Beach County.

*Damages:*      The full extent of damage sustained by ███ (a minor) is not yet known. However, they include but are not limited to past and future mental anguish, past and future medical treatment, and emotional distress.

*Demand:*       Undetermined at this time.

If you have any questions, please do not hesitate to call. If you feel that this notice does not comply with the statutory requirements.  Please contact my office immediately so that we can discuss and correct the defect, if necessary.

     **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the above-named addressees, this 28th day of March, 2024.

Sincerely,

*Victoria Mesa-Estrada*

VICTORIA MESA-ESTRADA, EQUIRE
VME/pmb



WALZ
CERTIFIED
MAILER®

FROM **WALZ**

FORM #45663 VERSION: E0822

**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*Domestic Mail Only*

USPS® ARTICLE NUMBER
9414 7266 9904 2210 9373 79

| | |
|---|---|
| Certified Mail Fee | $ |
| Return Receipt (Hardcopy) | $ |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ |
| Total Postage and Fees | $ |

Postmark
Here

Sent to:
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Reference Information

█████ (a minor) vs. █████ et al.
20240175 VME

PS Form 3801, Facsimile, July 2015

Label #1
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Label #2
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Label #3
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409

A   FOLD AND TEAR THIS WAY ──→ OPTIONAL

Label #5 (OPTIONAL)

**Certified Article Number**
9414 7266 9904 2210 9373 79
**SENDER'S RECORD**

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Label #6 - Return Receipt Barcode (Sender's Record)



9590 9266 9904 2210 9373 72

Label #7 - Certified Mail Article Number

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**



9414 7266 9904 2210 9373 79

FOLD AND TEAR THIS WAY ──→

FOLD AND TEAR THIS WAY ──→

Return Receipt (Form 3811) Barcode

9590 9266 9904 2210 9373 72

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

1. Article Addressed to:
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

3. Service Type:
☒ Certified Mail

Reference Information
█████ (a minor) vs. █████ et al.
20240175 VME

2. Certified Mail (Form 3800) Article Number
9414 7266 9904 2210 9373 79

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION

Thank you for using Return Receipt Service

Thank you for using Return Receipt Service

# U.S. Postal Service™
# CERTIFIED MAIL™ RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9373 62**

| | | |
|---|---|---|
| Certified Mail Fee | $ 4.40 | |
| Return Receipt (Hardcopy) | $ 3.65 | |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | Postmark Here |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ | |

*CERTIFIED COPY*
*NOT A CERTIFIED COPY*

**Sent to:**

████████ Holdings, LLC, as a Registered Agent of ████████
████████████

## Reference Information

███ (a minor) vs. ████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service
# CERTIFIED MAIL RECEIPT
*Domestic Mail Only*

## USPS™ ARTICLE NUMBER

9414 7266 9904 2210 9372 63

| | |
|---|---|
| Certified Mail Fee | $ 440 |
| Return Receipt (Hardcopy) | $ 3.05 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 18.7 |
| Total Postage and Fees | $ |

**Postmark Here**

Sent to:

_____ LLC, as a

Registered Agent of _____

_____

_____

## Reference Information

▇ (a minor) vs. _____, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL™ RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 17

| | | |
|---|---|---|
| Certified Mail Fee | $6.40 | |
| Return Receipt (Hardcopy) | $3.05 | |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | **Postmark Here** |
| Postage | $1.87 | MAR 01 2024 |
| Total Postage and Fees | $ | |

Sent to:

Florida Department of Education
Office of Professional Practices
325 West Gaines Street, Suite 224-E
Tallahassee, FL  32399

### Reference Information

███ (a minor) vs. ████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

NOT A CERTIFIED COPY

# U.S. Postal Service™
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9372 94

| | |
|---|---|
| Certified Mail Fee | $ 4.40 |
| Return Receipt (Hardcopy) | $ 3.05 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 1.82 |
| Total Postage and Fees | $ |

Postmark
Here

*NOT A CERTIFIED COPY*

**Sent to:**

██████████████████████

## Reference Information

██ (a minor) vs. ███████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015



# U.S. Postal Service
# CERTIFIED MAIL RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 24

| | |
|---|---|
| Certified Mail Fee | $4.40 |
| Return Receipt (Hardcopy) | $3.65 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $1.87 |
| Total Postage and Fees | $ 9.92 |

Postmark Here

MAR 0 2024

**Sent to:** ▮▮▮

### Reference Information

▮ (a minor) vs. ▮▮▮ et al.
20240175 VME

NOT A CERTIFIED COPY

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9372 56**

| | | |
|---|---|---|
| Certified Mail Fee | $ 4.70 | |
| Return Receipt (Hardcopy) | $ 365 | |
| Return Receipt (Electronic) | $ | *(diagonal watermark: NOT A CERTIFIED COPY)* |
| Certified Mail Restricted Delivery | $ | **Postmark Here** |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ 9.70 | MAY 0 1 2024 |

**Sent to:**

█████████████████████

## Reference Information

███ (a minor) vs. ██████████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service™
# CERTIFIED MAIL™ RECEIPT
## Domestic Mail Only

### USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 55

| | | |
|---|---|---|
| Certified Mail Fee | $ 440 | |
| Return Receipt (Hardcopy) | $ 365 | |
| Return Receipt (Electronic) | $ | Postmark Here |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ 96 | |

**Sent to:**

███████████████████████████

### Reference Information

██ (a minor) vs. ████████████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

NOT A CERTIFIED COPY

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9372 32

| | | |
|---|---|---|
| Certified Mail Fee | $440 | |
| Return Receipt (Hardcopy) | $365 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | |
| Postage | $1.87 | |
| Total Postage and Fees | $940 | |

Sent to:

███████████████████

## Reference Information

██ (a minor) vs. ███████████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL™ RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 79

| | | |
|---|---|---|
| Certified Mail Fee | $ 440 | |
| Return Receipt (Hardcopy) | $ 365 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ 187 | |
| Total Postage and Fees | $ 9?? | |

MAR 01 2024

NOT A CERTIFIED COPY

**Sent to:**

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

## Reference Information

███ (a minor) vs. ████████████ et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

Filing # 218524445 E-Filed 03/11/2025 12:10:28 PM

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN AND
FOR PALM BEACH COUNTY, FLORIDA.

CASE NO. 50-2025-CA-002189-XXXA-MB

G.M. individually, and as parent and legal
guardian of JANE DOE, a minor,

        Plaintiff,

vs.

SOUTH TECH ACADEMY, INC.

        Defendant.

_____/

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW, Plaintiff, G.M., individually and as the parent and legal guardian of JANE DOE[1], a minor, (hereinafter referred to as "JANE DOE") by and through the undersigned counsel and file their Complaint against Defendant, SOUTH TECH ACADEMY, INC., (hereinafter referred to as "SOUTH TECH"), pursuant to the Florida Rules of Civil Procedure and in support thereof state as follows:

### JURISDICTION AND VENUE

1.    This is an action for damages that exceed $75,000.00 and for other relief within the jurisdiction of this Court.

2.    At all times material hereto, Plaintiffs, G.M. and JANE DOE were residents of Palm Beach County, Florida.

3.    At all times material hereto, Plaintiff JANE DOE was a minor child who attended SOUTH TECH ACADEMY in Palm Beach County, Florida.

---

[1] Plaintiff is being identified by JANE DOE only, because, as the victim of a sexual battery, her identity is protected from public disclosure under Florida law.  Defendants are both aware of JANE DOE's full name.



EXHIBIT
B

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

4.     At all times material hereto, Defendant SOUTH TECH is a Not-For-Profit Corporation organized pursuant to the laws of the State of Florida, and has its principal place of business in Boynton Beach, County of Palm Beach, Florida.

5.     Venue is proper in Palm Beach County, Florida, because the conduct from which the claim arises occurred in Palm Beach County. Additionally, all natural parties were residents of Palm Beach County, Florida and SOUTH TECH has its principal place of business in same.

## CONDITIONS PRECEDENT

6.     On or about March 7, 2024,  Plaintiffs G.M. and JANE DOE provided written notice of their claim, via certified mail, and pursuant to section §768.28 of the Florida Statutes, to South Tech Academy, Inc., Florida Department of Education, and State of Florida Department of Financial Services. Copies of the letters and green cards are attached as "Composite Exhibit A." The Department of Financial Services or the appropriate agency failed to make final disposition of the claim within six (6) months, which is deemed a final denial of the claim. Upon information and belief, all conditions precedent have been complied with or waived.

## GENERAL ALLEGATIONS

7.     Defendant SOUTH TECH is a public, tuition-free charter school in The School Board of Palm Beach County, Florida's school system serving students in grades 9 through 12. SOUTH TECH  is directed and operated by an eight-member Governing Board of Directors who exercise control over SOUTH TECH, who are in charge of setting the policies and guidelines for the school, and who delegate to staff day-to-day responsibilities for operational matters.

2

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

8.      Defendant SOUTH TECH's Governing Board exercises control over SOUTH TECH's

Executive Director and Principal, who are in charge of its operations, staffing, hiring, discipline,

creating and enforcing policies, school safety, screening new employees, and ensuring that its

staff is not sexually abusing its students. Defendant SOUTH TECH's responsibilities include,

but are not limited to, hiring, firing, supervising, transferring, suspending, disciplining, and

directing the work of all school personnel (including teacher DAMIAN CONTI), and

collaborating with the School's officials, administrators, employees, agents, and representatives

regarding same. Defendant SOUTH TECH is also responsible for creating and enforcing

policies and procedures to keep children, like JANE DOE, safe and protected from all forms of

abuse by teachers, like DAMIAN CONTI (hereinafter referred as "CONTI").

9.      In addition, Defendant SOUTH TECH has adopted rules and regulations for the school,

and has also created policies, procedures and bylaws by which SOUTH TECH is governed and is

required to follow, including all applicable Florida Statutes and State Board Rules. Defendant

SOUTH TECH is thus responsible for enforcing and ensuring compliance with federal and Florida

law and its own rules, regulations, policies, and procedures, including those related to sexual and

psychological abuse of students by teachers. Further, SOUTH TECH's officers, administrators,

teachers and other staff are all subject to mandatory governmental reporting requirements requiring

that they report, investigate, and take action when they know or should have known that a child

was being sexually abused.

10.     SOUTH TECH'S Executive Director, Principal and Board of Directors, are the

3

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

administrative and supervisory heads of the school. Among other things, the Executive Director and Principal (as well as the school's teachers) are responsible for enforcing and ensuring compliance with federal and Florida law and the School Board's rules, regulations, policies, and procedures, including those related to sexual and psychological abuse of students by teachers. The Executive Director, Principal, and Board of Directors are also involved in the hiring, firing, transferring, and disciplining of staff, teachers, and other employees at their school. At all times material hereto, the Executive Director of SOUTH TECH was Carla Lovett.

11.     At all relevant times, each agent, employee, representative, official, administrator, and teacher of Defendant SOUTH TECH, including its governing board members, the Principal, the Assistant Principals, the teachers, and the School Police, was the authorized agent of the other and of Defendant SOUTH TECH and each was acting within the course, scope, and authority of such agency. This includes teacher CONTI. Additionally, each of the foregoing individuals and entities, authorized, ratified, or affirmed each act or omission of each of the other foregoing individuals or entities.

12.     DAMIAN CONTI was employed by SOUTH TECH since 2022 and continued in that position at all times material hereto. CONTI was a teacher at SOUTH TECH and, in that role, he had access to and control over JANE DOE.  Additionally, he was responsible for teaching, supervising and taking appropriate actions to protect JANE DOE.

## FACTS GIVING RISE TO THE CLAIMS

13.     At all times material, Plaintiff, JANE DOE, whose date of birth is May 7, 2007, was a

4

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

minor enrolled student at SOUTH TECH.

14.     SOUTH TECH employed CONTI as a Language Arts Teacher then as an AP English

Teacher from approximately July 27, 2022, until his arrest on February 6, 2024.

15.     At all times material, CONTI was acting under the color of state law and acting with

authority possessed by virtue of his employment as a teacher at SOUTH TECH and pursuant to

the power that he possessed by and through his employment at SOUTH TECH. Through his

official duties as an employee of SOUTH TECH, CONTI met, groomed, sexually assaulted,

harassed and victimized JANE DOE—a minor under his supervision and control. CONTI used his

authority to harass, control and manipulate JANE DOE at SOUTH TECH and beyond. Many of

the acts of improper unlawful and abusive conduct occurred at SOUTH TECH during normal

business hours when neither CONTI nor JANE DOE was being properly supervised, and the

conduct occurred with such frequency and under such open and obvious circumstances that even

minimal supervision would have detected its occurrence. Indeed, the conduct complained of herein

was known to students, staff members and administrators but was ignored and tolerated by SOUTH

TECH.

16.     While employed at SOUTH TECH, CONTI was directed by the school to supervise and

teach minor children. Consequently, CONTI met student, JANE DOE, when she was only sixteen

(16) years old. CONTI was Jane Doe's AP English Teacher during the 2023-24 school year. JANE

DOE was under his direct supervision and control. CONTI was enabled in accomplishing his

psychological and sexual abuse/assault of JANE DOE by the existence of his employee/employer

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

relationship with SOUTH TECH.

17.     Beginning in JANE DOE's junior school year, CONTI began the process of "grooming"
JANE DOE, first, by showing sympathy and encouragement to JANE DOE, offering to serve as
her academic college mentor, and creating after-school "meetups" with JANE DOE near her
student locker to greet her every day.

18.     Despite being fully aware that South Tech's employee policies prohibited fraternizing with
students in many ways, CONTI initiated *prohibited* communications via email, social media
platforms and phone text with JANE DOE to discuss non-school related topics, and did so both
during school hours and evenings.

19.     Further, CONTI also recruited JANE DOE to join SOUTH TECH's after school Volleyball
Club, for which he served as coach, thereby extending and maintaining direct supervision over
JANE DOE, and separately offering one-on-one volleyball lessons to her. This relationship
allowed him to target JANE DOE and isolate her from her classmates and school staff.

20.     By the end of the 2023-24 school's first quarter, CONTI's interest in JANE DOE became
apparent to other students, faculty and staff. CONTI would often provide pretextual reasons to
meet up with JANE DOE by removing JANE DOE from volleyball club practice and taking her
into his classroom, using these manipulative behaviors to gain private access to JANE DOE. First,
he started to confide in JANE DOE about his work life, sharing internal information involving the
school administration and faculty, and giving her personal details about his lifestyle at home. As
he developed trust with JANE DOE, he would let her vent about her own problems and challenges

6

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

in her daily life, acknowledging her feelings of frustration and dissatisfaction. Then, he transitioned into sharing intimate "secrets" about his marriage, including details about his sexual life with his wife.

21.     To lure her into his classroom and separate her from her friends, CONTI encouraged JANE DOE to hang out in his classroom before, during and after school hours, which JANE DOE did multiple days a week, including eating lunch alone with CONTI in his classroom. CONTI's "alone" time with JANE DOE was quickly known to multiple individuals, including Ms. Eileen Turenne (South Tech Principal) and Ms. Erin Kurtz (South Tech Assistant Principal) who frequently saw them together in and around CONTI's classroom, school hallways, and during and after school hours, and observed their friendly and playful interactions, including acts of physical contact between CONTI and JANE DOE. Instead of questioning the overly close personal relationship between CONTI and JANE DOE that was publicly known to students, teachers and administration, SOUTH TECH decided to stick their heads in the sand, ignoring the fact there was no legitimate reason for JANE DOE to be in CONTI's classroom with such frequency, particularly during volleyball practice time.  This type of student-teacher relationship should have been highly alarming to every teacher and/or administrator who observed the nature and frequency of the contact between them.

22.     Further, as CONTI encouraged JANE DOE to share intimate details about her life at home, he was critical of what he perceived as JANE DOE's parents' lack of involvement and convinced her to take him as her mentor and life guide. To gain her trust further, he began to give JANE DOE

7

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

driving lessons after school to assist her in obtaining her unrestricted driver's license.

23.     By early October 2023, CONTI was emailing, texting and calling JANE DOE every day, during and after school hours and had managed to desensitize JANE DOE into allowing physical contact. On or about October 12, 2023, after their regular driving lesson, CONTI physically hugged JANE DOE, which she quickly rejected, and he acknowledged to JANE DOE that the hug was intrusive and apologized. Hours later, CONTI "confessed" to JANE DOE that his feelings towards her had evolved and he now found himself romantically connected to her. Not surprisingly, this so-called "confession" by CONTI sent JANE DOE into a spiral of emotions and state of confusion that her young mind could not comprehend with clarity.

24.     By October 16, 2023, CONTI had successfully gained JANE DOE's complete trust, and lured her into a nearby shopping plaza where he began to sexually assault the child in her vehicle after school. He had also effectively taken full control of tracking her movements, convincing her to allow him to track her location indefinitely via a phone tracking application.

25.     By late October 2023, JANE DOE often found herself alone with CONTI and being sexually assaulted in his classroom, school storage closet and in both of their vehicles, among other locations. CONTI would summon her to his classroom when no other students were around, and into his or her vehicle outside school. CONTI would convince JANE DOE to take joy rides with him throughout Palm Beach County after volleyball lessons and began performing oral sex on her. He would often leave school early after student dismissal time, under the pretext of family emergencies so he could bait JANE DOE to meet him after school at different locations where he

8

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

could sexually assault her before she would go to work or home.

26.     As the sexual abuse escalated, CONTI continued to employ every manipulative tactic to exert control over JANE DOE such as dictating all her movements, constantly inquiring about her whereabouts and with whom she was communicating. To keep tight control over JANE DOE, he would often create situations to be alone with her, such as granting JANE DOE access to the school building through side doors, granting her school passes so she could come meet with him in his classroom alone, preparing school lunch meals for her and inviting her to eat lunch with him alone during school hours. Several teachers and faculty members personally witnessed these lunch meetings, but no one ever questioned, nor reported to the administration anything about this unusual teacher-student relationship between CONTI and JANE DOE.

27.     By early to mid December 2023, rumors widely circulated among SOUTH TECH students regarding CONTI's inappropriate behavior towards certain female students, including JANE DOE. CONTI quickly became aware of what was being said in the school hallways and started pressuring certain students to tell him who had initiated the rumors so he "could put a stop to it."

28.     As the pressure mounted on CONTI, he began to notice that JANE DOE was feeling severely stressed out and hesitant about their inappropriate relationship; in response, he quickly began to give unexplained gifts to JANE DOE and *her* friends to keep her happy and dissipate her concerns. CONTI paid for special items for JANE DOE, including buying jewelry, Apple air pods, clothing, paying her annual subscription to Spotify, food and drinks.  Despite the rumors being quite public among the students, no one in SOUTH TECH's administration or faculty seemed to

9

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

be paying attention to CONTI's over friendly behaviors with female students. In fact, CONTI told JANE DOE he had been praised by Assistant Principal Kurtz for the manner in which he effectively gained the trust and respect of his students due to his youthful, friendly character and personality.

29.     Throughout this time, SOUTH TECH condoned and ratified CONTI's actions, including his violation of school rules and policies, standing by silently and failing to take any meaningful action to investigate and/or protect JANE DOE.

30.     The sexual misconduct of CONTI with JANE DOE originated because of the teacher-student relationship between them while CONTI was a teacher at SOUTH TECH and while he was employed by SOUTH TECH. CONTI took advantage of his position, authority and control over JANE DOE.

31.     SOUTH TECH, its administrators and employees had multiple opportunities to investigate, prevent and report this abuse and, pursuant to Florida Law, all were mandatory reporters. Despite other teachers and administrators frequently seeing CONTI alone with the child during inappropriate times, it wasn't until student rumors began to circulate at school and in social media, that the school made initial inquiries, and even then, they did not take any serious action.

32.     Further, CONTI knew that JANE DOE was particularly vulnerable and susceptible to being sexually abused since she had confessed to him, she had been previously victimized by an adult male as a young child. CONTI used all this information to convince JANE DOE that their romantic relationship was real and had persuaded her to have vaginal sex with him, at times leaving bruises

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

on her body.

33.     In early January 2024, CONTI continued to emotionally manipulate JANE DOE, realizing

her anxiety and vulnerability and controlling her movements. During a prior to this same time,

SOUTH TECH Administration received at least one complaint from parents reporting CONTI's

unprofessional and inappropriate actions in the classroom with students and the rumors about

inappropriate behavior with female students continued to spread.

34.     In early 2024, CONTI was evidently volatile in the classroom with students and SOUTH

TECH administrators should have been aware of his unstable behavior. Around this time, CONTI

confessed to JANE DOE that the prior year, he had been questioned by SOUTH TECH Assistant

Principal Kurtz about inappropriate conduct with another female student and bragged to JANE

DOE about how quickly he had convinced SOUTH TECH that the so-called accusations were

unfounded. Consequently, SOUTH TECH took **no action** against CONTI at that time and he was

only cautioned without any consequences or increased supervision:

> Erin Kurtz <erin.kurtz@pbcharterschools.org>                    Tue, Jan 24, 2023 at 10:50 AM
> To: Damian Conti <damian.conti@pbcharterschools.org>
>
> Good Morning Mr. Conti,
> Thank you for taking the time to speak to me today.  My goal is to make sure that SouthTech students continue to benefit
> from your dynamic teaching and caring presence.  Please remember that giving gifts and spending time with student
> groups outside of school activities is outside of the professional boundaries of a teacher/student relationship.  I am
> confident that you will avoid these situations and still be able to maintain a rapport with your students.
> Thank you,

35.     Just a year after that 2023 communication, SOUTH TECH's Assistant Principal Erin Kurtz

had undoubtedly become aware again of some of CONTI's inappropriate behaviors toward

students, but imposed a discipline and took no steps to protect students, including JANE DOE:

11

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

Erin Kurtz <erin.kurtz@pbcharterschools.org>                    Fri, Jan 12, 2024 at 12:21 PM
To: Damian Conti <damian.conti@pbcharterschools.org>

Good Afternoon,
I want to remind you that you should not be transporting students in your car. If you are transporting them for a field trip,
the appropriate paperwork should be on file and there should always be a minimum of 3 people. Let me know if you have
any questions.

36.      Upon information and belief, SOUTH TECH Administrators had received other

complaints from parents as early as the 2022-23 school year, indicating CONTI's recurring

inappropriate behavior with other female students, and SOUTH TECH took no precautionary

actions at the time.

37.      On or about mid-January 2024, a social media video was circulating among students,

showing JANE DOE getting into CONTI's vehicle at the school's teacher parking lot, which had

prompted the Jan. 12, 2024 email from Assistant Principal Kurtz to CONTI.

38.      As CONTI felt the pressure that was intensifying around him for his predatory behavior,

he continued to control JANE DOE and convinced her that the best plan at the time was to

proactively approach SOUTH TECH Administrators and deny any impropriety by CONTI despite

the fact that he was sexually assaulting her almost every day. Thereafter, on January 23, 2024,

JANE DOE approached SOUTH TECH Principal Turenne and Assistant Principal Kurtz and

alerted them to the rumors that were circulating and denied they were true. CONTI also separately

consulted with Principal Turenne and Assistant Principal Kurtz seeking their advice as to how to

handle the so-called "unfounded rumors."

39.      Despite these evident signs of impropriety by CONTI with female students, SOUTH TECH

administrators chose to ignore the signs of CONTI's predatory behavior and accepted both

12

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

CONTI's and JANE DOE's narrative as truthful without further investigation. Despite the explicit alerts, SOUTH TECH administrators told JANE DOE to "stop worrying so much" and took no action towards CONTI.

40.     By February 1, 2024, the school rumors were still circulating and JANE DOE was feeling anxious, paranoid and frightened that the truth was about to come out while CONTI increased the pressure on JANE DOE to deny their inappropriate relationship at all costs. To dissuade a further investigation, JANE DOE herself reached out *again* to Principal Turenne and Assistant Principal Kurtz to ask for help and provided the school with the names of students that that she believed were responsible for spreading the rumors about CONTI and JANE DOE.

41.     Upon information and belief, Principal Turenne and Assistant Principal Kurtz made minimal attempts to communicate with any of the students that had been identified by JANE DOE as her harassers, failing once again to properly report, document and investigate the alleged rumors and take action to protect JANE DOE from a sexual predator. Despite personally hearing from students about their observations involving CONTI's close relationship with JANE DOE, Principal Turenne failed to respond to CONTI's predatory behaviors and did not take any precautionary action at that time to remove CONTI from school and conduct a full and proper investigation into the students' observations and allegations.

42.     On Monday, February 5th, 2024, SOUTH TECH Principal Turenne summoned both CONTI and JANE DOE separately during school hours. Disregarding the clear warnings that something inappropriate had been happening between CONTI and JANE DOE, Principal Turenne

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

took no action to investigate the "unfounded rumors" against CONTI and told both CONTI and

JANE DOE to simply refrain from speaking to each other to dispel the rumors. No other

precautionary measures were taken by Principal Turenne at that time- CONTI was permitted to

continue teaching students, without any concerns for the wellbeing of any children under SOUTH

TECH's care, and JANE DOE was told she should continue to follow her usual schedule, including

attending her AP English class with CONTI the next day.

43.     Throughout this entire time, JANE DOE's parents were kept in the dark, completely

unaware of the accusations and rumors involving their minor child JANE DOE of SOUTH TECH

had clear knowledge for several weeks by then.

44.     On February 5, 2024, CONTI summoned JANE DOE after school to a nearby plaza and

sexually assaulted JANE DOE one last time.

45.     On the morning of February 6, 2024, a male student came forward and notified Principal

Turenne and other school administrators that he had concrete evidence that CONTI and JANE

DOE were having an ongoing inappropriate romantic relationship. The evidence reviewed by the

school police indicated that CONTI was undoubtedly romantically and sexually involved with

JANE DOE.

*02/06/24 Police Report*

accounts. ▮▮▮▮ stated that he had heard rumors of ▮▮▮▮▮▮▮ and her teacher ▮▮▮▮▮▮▮ of possibly having a
relationship together. ▮▮▮ stated that on 02-06-24 at approximately 0615 hours he checked ▮▮▮▮▮▮▮▮
Instagram and confirmed that they were having a relationship together.

▮▮▮ stated that ▮▮▮▮▮▮ had two separate Instagram pages the ▮▮▮▮▮▮▮▮▮▮
▮▮▮▮. ▮▮▮ stated that he seen conversations with Conti back and forth from one another using the Instagram
page of Conti's named (damejc) He also stated that he seen several pictures of the two kissing.

14

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

46.     Later that same day, as JANE DOE was ending her second school period, JANE DOE was

alerted by a female friend that CONTI had sent an Instagram group message to her and several of

her friends alerting them to permanently delete all digital conversations and pictures with CONTI.

He also wrote that he just had been called into Principal Turenne's office for questioning by school

police and then suspended from work until further notice. CONTI also told JANE DOE to prepare

herself because she was about to be interrogated by school officials.

47.     A few minutes after the Instagram messages were received, Assistant Principal Kurtz

walked into JANE DOE's classroom and asked JANE DOE to follow her into the main office. As

she followed Kurtz, JANE DOE panicked and was severely distressed. Once in the main office,

JANE DOE requested permission to go to the bathroom where she rushed to attempt to delete text

messages between her and CONTI. JANE DOE was visibly unstable and in a state of despair trying

to compose herself before she could come out of the bathroom. She remained in the bathroom for

several minutes, which Assistant Principal Kurtz noticed, leading her to knock on the bathroom

door inquiring why JANE DOE was taking so long to come out.

48.     JANE DOE finally came out of the bathroom and proceeded to the conference room. As

she walked into the room, JANE DOE observed two police officers and Principal Turenne

reviewing what appeared to be pictures or screenshots of JANE DOE's Instagram account on a

cell phone. When they became aware that JANE DOE had entered the room, they hid the phone

and told JANE DOE to take a seat.

49.     At said meeting, JANE DOE was initially told by officers of their investigation into

15

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

allegations of an improper relationship between CONTI and JANE DOE. Officers further stated

that their conversation with JANE DOE was going to be recorded.  When the recording started,

the officers read JANE DOE her Miranda Rights and told her she had the right to remain silent

and not talk to them if she did not wish to. Additionally, JANE DOE was told by school police

officers that they had evidence already confirming her romantic relationship with CONTI.

Although the delivery of Miranda warnings communicated exactly the opposite message, JANE

DOE was told that she has was not in any trouble.

50.     In response, JANE DOE refused to answer any questions and requested to have both her

parents and an attorney present before she would speak to the officers. At that point, Principal

Turenne scolded JANE DOE for not answering the officers' questions, further aggravating JANE

DOE's emotional state at the time, and telling JANE DOE to leave school which JANE DOE

refused to do. JANE DOE was permitted to call her stepfather, whom she quickly told that she was

in trouble and told him she was being accused of having an improper relationship with a teacher.

The school did not make any attempts to communicate directly with JANE DOE's parents and

inform them of their recent findings, including the sexual assault JANE DOE had been subjected

to and the obvious emotional turmoil she was experiencing. Wanting to escape her oppressors,

JANE DOE requested to be permitted to return to class, so she could take a test. Principal Turenne

sent her back to class and told her to return to the main office conference room afterwards to speak

further.

51.     After taking her test, JANE DOE returned to the main office as told and met with Assistant

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

Principal Kurtz. Kurtz asked her to follow her to the school's reception and told her to sign out and to go home. When JANE DOE began to sign herself out of school **as mandated** by Kurtz, the school receptionist in turn inquired as to why JANE DOE was leaving so early without a parent or guardian signing her out as required by school policy.

52.    At this time, SOUTH TECH's receptionist contacted Principal Turenne via the school's radio walkie/talkie system to confirm that JANE DOE was being released from school without her parents' signature. Principal Turenne confirmed and responded **"Yes. Get her out of here"** to which the receptionist followed up by asking her if she had written or verbal consent from JANE DOE's parent or guardian. Turenne replied, **"I will deal with it later, just tell [JANE DOE] to sign on behalf of her parent."** Abiding with what Principal Turenne had just directed, JANE DOE signed out but signed her name instead, and left campus walking to her vehicle which was parked outside school grounds.

| ████████ | Prin | 2/6/24 | 11:28 | home |
|---|---|---|---|---|

53.    On that February 6, 2024 morning, willfully oblivious to the emotional turmoil inflicted on JANE DOE, SOUTH TECH administrators failed to check on JANE DOE's mental state despite the serious allegations that had come to light and the irrefutable evidence that the child had been sexually assaulted by CONTI. No counselor or therapist or anyone with the proper training to provide mental care was made available to check on JANE DOE or speak to the child before she was ordered by Turenne to leave school.

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

54.    After leaving school, JANE DOE immediately made contact with CONTI via phone and

met him at a nearby Home Depot a few minutes later. Upon information and belief, the pair made

a pact to commit suicide together. Once they met, the two walked inside the Home Depot store

together, bought a piece of rope and a chain, and left the store minutes later. Once in the parking

lot, the pair went separate ways, and JANE DOE drove away in her own vehicle alone.

55.    Meanwhile, as JANE DOE proceeded with her plan to commit suicide, JANE DOE's

parents arrived unannounced at SOUTH TECH to ask questions about what was occurring.  To

their surprise, they were told that their child had been ordered to leave school without their consent.

At that point, the parents were told (via a Spanish interpreter) to sit in the conference room and

wait for information but no other information was provided to them.

56.    Despite their inquiries as to the whereabouts of their daughter, JANE DOE, and the reasons

for the meeting, JANE DOE's parents were given vague details and only told by school

administrators that police officers were trying to locate JANE DOE who had left the school

premises. However, at no time did SOUTH TECH administrators inform JANE DOE's parents

that the child had been ordered to leave school premises earlier.

57.    While at school and waiting for news from the police officers, JANE DOE's parents were

able to track JANE DOE's location via their cellphone and immediately shared this information

with the school police officers.

58.    After multiple call attempts from police and JANE DOE's mother to JANE DOE, the child

finally answered her mother's call. As her mother pled with JANE DOE to return to school,

18

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

Principal Turenne snatched the mother's phone from her hands and instead of calmly speaking to

JANE DOE, she chastised the child for "getting [her] in trouble" and demanding her to return to

school. Principal Turenne shouted at JANE DOE over the phone and told her that she had "ten

minutes to return to school" or "[JANE DOE] will be in trouble." Then the child hung up, and no

one heard from JANE DOE again that day.

59.     At around 2:10 pm, the Palm Beach County 911 Emergency system received a call from

CONTI reporting that he was trying to "help someone who [was] threatening with suicide."

CONTI then indicated that "[JANE DOE was] trying to find a park to hang herself" and proceeded

to identify JANE DOE as a minor who was driving, "already ha[d] rope" and that he was driving

trying to find her. CONTI was asked to pull over by the 911 operator, and to stop driving in order

to meet with a police officer.

60.     A few minutes later, CONTI met with police at a nearby Burger King. CONTI provided

JANE DOE's contact information and volunteered other details, including his earlier suspension

from school, and confirming his involvement with JANE DOE:

### Police Report 2/6/2024

```
       CPL ████ ADVISED THAT AS HE GATHERED INFORMATION TO ASSIST ████ IT
WAS DEVELOPED THAT ████ IS A CURRENT SOUTH TECH ACADEMY STUDENT (6161 W
WOOLBRIGHT RD, BOYNTON BEACH, FL) AND DAMIAN IS ONE OF HER SCHOOL TEACHERS.
DAMIAN DISCLOSED TO CPL ████ THAT HE WAS RECENTLY SUSPENDED FROM THE SCHOOL
PENDING AN INVESTIGATION FOR "INAPPROPRIATE RELATIONS" WITH ████ WHO IS 16
YEARS OLD. DAMIAN, 35 YEARS OLD, WENT ON TO TELL HIM THAT HE WAS ASKED TO
LEAVE THE SCHOOL TODAY, 02/06/24.
```

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

▮▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮ ▮▮▮▮▮▮▮▮▮ TODAY, 2/06/24, SHE TOLD HIM SHE HAD A
ROPE AND A CHAIN AND WANTED TO HANG HERSELF AT A PARK. DAMIAN FEELS THAT
BECAUSE SOUTH TECH WAS LOOKING INTO HER HEAVILY, THIS MAY HAVE CONTRIBUTED TO
HER WANTING TO DO THIS. SOUTH TECH ADMINISTRATION WAS PRIVY TO THE ACCUSATIONS
BEING SPREAD ON CAMPUS; DAMIAN AND ▮▮▮▮ WERE TOO CLOSE AND THAT THEY LIKELY
WERE ENGAGING IN INAPPROPRIATE BEHAVIORS. ADMINISTRATION CONFRONTED HIM ABOUT
THE ACCUSATIONS AND THAT WAS HOW HE FOUND OUT. DAMIAN FEELS "THINGS GOT OUT OF
CONTROL, BUT THEY HAD A GOOD BOND." HE WOULD AT TIMES MEET UP AT THE PUBLIX
WHERE SHE WORKED AND ALSO MET UP WITH HER ONE ON ONE AT A NEARBY PARK. DAMIAN
DESCRIBED THE RELATIONSHIP TO BE "ROMANTIC IN NATURE" AND THAT THERE WERE
"FEELINGS THAT SHOULDN'T HAVE BEEN THERE." DAMIAN ADMITS THAT HE "SHOULD HAVE
STOPPED IT." THIS CONVERSATION WAS CAPTURED WITH MY BODY WORN CAMERA.
    I MADE CONTACT WITH PALM BEACH COUNTY SCHOOL BOARD POLICE DEPARTMENT AND
SPOKE TO SCHOOL POLICE OFFICER ▮▮▮▮ WHO CONFIRMED THAT THERE WAS AN ACTIVE
INVESTIGATION ON DAMIAN CONTI FOR ALLEGED LEWD AND LASCIVIOUS CONDUCT WITH
▮▮▮▮ AND WITH AN ADDITIONAL STUDENT, ▮▮▮▮▮▮▮ REFER
TO PALM BEACH COUNTY SCHOOL BOARD POLICE DEPARTMENT CASE ▮▮▮▮▮▮▮▮

61.    After approximately a 30-minute search by PBSO patrol officers and a PBSO helicopter,

JANE DOE was found hanging by rope around her neck from a tree behind a nearby church. PBSO

were the first responders on the scene and were able to provide cardiopulmonary resuscitation,

miraculously saving JANE DOE's life.

62.    Meanwhile, for about two hours upon their arrival at South Tech, JANE DOE's parents

were kept uninformed and remained completely ignorant of the fact that their daughter had been

sexually assaulted multiple times by SOUTH TECH teacher CONTI. At about 3:00 pm, JANE

DOE's parents were told by school police that they needed to go to St. Mary's Hospital to meet

with their daughter. No other information was provided to them at that time.

63.    Upon their arrival at St. Mary's Hospital, JANE DOE's parents heard for the first time ever

from PBSO of the sexual abuse their child JANE DOE had endured for the past four months that

led her to attempt to take her own life.

64.    On February 6, 2024, at approximately 2:30pm, CONTI was arrested. After his arrest,

CONTI made additional admissions to police officers, including his earlier suspension from work

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

at SOUTH TECH that morning pursuant to a school investigation into his relationship with JANE

DOE.

65.     In reviewing the data of both CONTI's and JANE DOE's email, phone, and social media

accounts, law enforcement extracted thousands of messages between CONTI and JANE DOE

throughout the course of the last four months before CONTI's arrest, many of which contained

highly inappropriate and/or explicit sexual content. Several of these communications clearly show

that CONTI inappropriately communicated with JANE DOE while teaching class or while being

on school grounds.

66.     Law enforcement arrested CONTI for three counts of unlawful sexual activity with a minor

under F.S.794.05(1) and four counts for offense against a student by authority figure under F.S.

800.101(2)(a). To this day, CONTI remains in jail and awaits trial.

67.     SOUTH TECH knew or should have known that CONTI was not fit for service as a high

school teacher and that he never should have been permitted to be around children. CONTI had a

clear and undeniable history of abusing his position of power to victimize his students and to

engage in highly inappropriate relationships with them. Despite knowing that and/or having that

information easily available to it, SOUTH TECH continued to employ CONTI and permitted him

to be unsupervised around children, including JANE DOE.

68.     As a result of the Defendants' actions, JANE DOE was sexually assaulted multiple times

and suffered serious and permanent injuries. Additionally, her constitutional rights were violated

including those afforded to her under the Fourth and Fourteenth Amendment.

21

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

## COUNT I – NEGLIGENT TRAINING, SUPERVISION AND RETENTION

69.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 68 above, as if fully stated herein, and further allege:

70.     Defendant, SOUTH TECH, owed a legal duty to select as employees only those fit for service, to supervise employees, and to provide necessary and appropriate discipline, training, and retraining.

71.     It was unreasonable for SOUTH TECH  to select CONTI and continue to employ him, in light of what it knew or should have known and/or learned through a proper investigation.

72.     In addition, it was unreasonable for SOUTH TECH to fail to provide mental health care to the Plaintiff JANE DOE upon learning that she had been victimized by CONTI and was experiencing severe emotional distress and turmoil, and to instead subject her to abandonment by expelling her from the school premises without the knowledge or consent of JANE DOE's parents.

73.     During the course of CONTI's employment, SOUTH TECH became aware or should have become aware of problems with CONTI that indicated his unfitness for service and/or the need for discipline and training. SOUTH TECH had both actual and constructive notice of CONTI's previous and current conduct, including inappropriate relationships with students. Additionally, CONTI used SOUTH TECH's campus to victimize children, including JANE DOE, and committed sex acts on children.

74.     SOUTH TECH breached its duty by failing to take the necessary action to prevent CONTI from victimizing and injuring Plaintiff JANE DOE. Despite its knowledge of CONTI's actions,

22

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

SOUTH TECH continued to employ CONTI as a teacher, which put him in a position of authority over Plaintiff JANE DOE and permitted CONTI to have unsupervised, one-on-one contact with female students, including, but not limited to, the Plaintiff JANE DOE.

75.     SOUTH TECH also breached its duty by failing to identify, address and provide mental health support to the Plaintiff JANE DOE, at the time of discovering that plaintiff JANE DOE had been sexually victimized by CONTI.

76.     At all times material, SOUTH TECH is responsible for maintaining and ensuring the safety of the premises at the school and ensuring that its students are not victimized by teachers that it employs, nor left unsupervised at a time of emotional distress or turmoil.

77.     SOUTH TECH has a duty to supervise its employees and students and to protect its students from abuse by employees.

78.     SOUTH TECH also had a duty to provide appropriate training to CONTI, other teachers, administrators, and students (including JANE DOE), regarding the signs of grooming/predatory behavior, signs of sexual abuse, mandatory reporting requirements, how/when to report, and other appropriate actions to keep students like JANE DOE safe. SOUTH TECH failed to provide this training and, as a direct result, plaintiff JANE DOE was severely and permanently injured, including both psychological and physical injuries.

79.     SOUTH TECH also had a duty to provide appropriate training to teachers, administrators, and students (including JANE DOE), regarding the signs of erratic behavior, suicidal ideation, emotional distress and turmoil, how/when to provide appropriate mental health support, and other

23

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

appropriate actions to keep students like JANE DOE safe. SOUTH TECH failed to provide this training and, as a direct result, JANE DOE was severely and permanently injured, including both psychological and physical injuries.

80.     SOUTH TECH knew or should have known of CONTI's history of inappropriate behavior towards students (including JANE DOE), history of victimizing students, and his unfitness for the job.

81.     SOUTH TECH breached its duty to supervise its teachers and protect plaintiff JANE DOE from abuse by failing to properly investigate and supervise its employees to prevent abuse from occurring.

82.     The type of harm inflicted on plaintiff JANE DOE was reasonably foreseeable to occur, based on the abundance of unsupervised time that CONTI was allowed to spend in an isolated environment with individual students, his past actions and his inappropriate contact with minor students. Further, the teachers and administration were aware that he was taking measures to ensure that his time with JANE DOE was private—including pulling JANE DOE out of Volleyball practice and taking her to his classroom, and giving her rides and driving lessons outside school. It was during these times that that the Defendant sexually assaulted JANE DOE.

83.     The conduct described above constitutes negligence by SOUTH TECH, for its failure to supervise Defendant CONTI, its failure to protect Plaintiff JANE DOE from abuse by CONTI in his official capacity as a teacher; and its failure to train staff to identify the signs of sexual grooming and a sexual predator, and to promptly provide mental health support to students,

24

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

including JANE DOE at time of crisis.

84.     Because of SOUTH TECH's negligent supervision, retention, and training, Plaintiff JANE

DOE has sustained permanent damages for which compensation is required.

85.     Plaintiff, JANE DOE fell within the zone of foreseeable risk created by CONTI's continued

employment at Defendant SOUTH TECH's school.

86.     As a direct result of SOUTH TECH's negligence, plaintiff JANE DOE was subjected to

serious and permanent injuries. JANE DOE has suffered bodily injury and resulting pain and

suffering, disability, disfigurement, mental anguish, embarrassment, humiliation, loss of capacity

of the enjoyment of life, aggravation of pre-existing conditions, medical care and treatment, loss

of earnings, and loss of ability to earn money. The losses are permanent and/or continuing and

Plaintiff will continue to suffer losses in the future.

WHEREFORE, Plaintiff, JANE DOE, demands judgment against the Defendant SOUTH TECH

ACADEMY for damages exceeding $75,000.00, exclusive of interest and costs, demands taxable

costs, and further demands trial by jury on all issues so triable.

## COUNT II: 42 U.S.C. § 1983 DEPRIVATION OF PLAINTIFF'S CIVIL RIGHTS

87.     Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 68

above, as if fully stated herein, and further allege:

88.     At all times material hereto, Defendant SOUTH TECH was responsible for the charter

school known as South Tech Academy, its agents and employees, including hiring, supervising,

25

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

enforcing policies, overseeing, training and establishing policies, customs, and procedures to conform the conduct of its agents and employees to law.

89.    At all times material, SOUTH TECH and CONTI were acting under the color of state law and CONTI was acting with authority possessed by virtue of his employment as a teacher at SOUTH TECH and pursuant to the power that he possessed by and through his employment at SOUTH TECH. Through his official duties as an employee of SOUTH TECH, CONTI met, groomed, sexually assaulted, harassed and victimized plaintiff JANE DOE—a minor under his supervision and control. CONTI used his authority to harass, control and manipulate JANE DOE at South Tech Academy and beyond.

90.    SOUTH TECH's policies, procedures, customs, and practices of condoning unlawful and/or improper acts and ignoring repeated and blatant violations of school policies by their employees (including CONTI) meant to protect students, like JANE DOE, were direct causes and/or moving force leading to the violations of JANE DOE's civil rights, including but not limited to allowing JANE DOE to be taken off campus in teachers' (including CONTI's) personal vehicles, allowing students to be alone with teachers (i.e. in the classroom, after school, in a vehicle), allowing teachers to communicate with students via text message/cell phone/email and permitting teachers to blatantly violate school policies without corrective action/discipline.

91.    Further, SOUTH TECH's failure to identify, train, discipline, or otherwise properly supervise employees (including CONTI) who have engaged in inappropriate acts, misconduct, and/or the above-mentioned violations directly caused and/or contributed to the violations of

26

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

JANE DOE's civil rights, including SOUTH TECH's condoning of and failure to appropriately respond to violations of policies, practices, customs through appropriate discipline, training, and supervision. JANE DOE's constitutional rights were violated, including but not limited to her rights under the Fourth and Fourteenth Amendment, right to body integrity, and right to personal safety.

92.     SOUTH TECH knew of a need to train and supervise its employees in certain areas and made a deliberate and conscious choice not to take action, including but not limited to taking students off campus in personal vehicles, allowing students to be alone with teachers, inappropriate conduct and/or relationships between teachers and students, blatant violations of school policy, communicating with students by cell phone and text message, identifying sexual predatory behavior by a teacher, mandatory reporting requirements, providing mental health support to students, etc. Despite knowing of these training deficits, SOUTH TECH acted in a deliberately indifferent manner by failing to take appropriate action and/or protect its students, like plaintiff JANE DOE.

93.     SOUTH TECH displayed deliberate indifference to the rights of plaintiff JANE DOE, as secured by the Fourth and Fourteenth Amendments, by allowing CONTI to continue to possess his authority despite his known prior history of engaging in inappropriate relationships with students, violating school policies, frequently spending time alone with female students (including JANE DOE), grooming JANE DOE (i.e. daily text messages, special treatment, frequent time alone), exercise custody over JANE DOE, etc.

27

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

94.     SOUTH TECH displayed deliberate indifference to the rights of JANE DOE, as secured

by the Fourth and Fourteenth Amendments, by allowing CONTI to possess his authority after his

propensity to abuse that authority became evident.

95.     SOUTH TECH's actions and/or inactions directly and proximately led to violations of

plaintiff JANE DOE's civil rights as secured by the Fourth and Fourteenth Amendments. Pursuant

to the Equal Protection Clause, U.S. Const. amend. XIV, § 1, Plaintiff had a constitutional right

to bodily integrity and to be free from sex discrimination, including sexual abuse, molestation,

exploitation, and harassment. Defendant had a duty to provide a safe and nondiscriminatory

environment for its students, free from psychological and sexual violence, and to resolve reports

or complaints of sexual misconduct promptly, equitably, and adequately. Defendant SOUTH

TECH also had an affirmative constitutional duty to protect Plaintiff JANE DOE's rights,

including protecting Plaintiff JANE DOE from sexual abuse by its agents and employees.

96.     SOUTH TECH and its Executive Director Carla Lovett, and Principal Eilene Turenne had

final policy making authority and were charged with enforcing existing policies. SOUTH TECH

and its administrators acted with deliberate indifference to the rights of JANE DOE and/or

permitted, condoned and engaged in practices that were so persistent and widespread as to

constitute a custom.

97.     SOUTH TECH and CONTI had custody of plaintiff JANE DOE which created a special

relationship, including while JANE DOE was on campus, while voluntarily undertaking the

responsibility to supervise the child afterschool and by permitting CONTI and other employees

28

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

to take custody of the child. As a result of this special relationship and while in the Defendants' custody, plaintiff JANE DOE was groomed, harassed, victimized and sexually assaulted.

98.    Further, through these actions and inactions, SOUTH TECH created and/or increased the danger for plaintiff JANE DOE and its failure to protect JANE DOE directly resulted in her injuries, including being sexually assaulted and attempting to commit suicide. SOUTH TECH's actions were egregious and would shock the conscience of any reasonable person.

99.    As a direct and proximate result of the violation of plaintiff JANE DOE's civil rights, JANE DOE has suffered damages, including mental anguish, bodily injury, pain and suffering, disability, disfigurement, emotional distress, humiliation, embarrassment, loss of capacity for the enjoyment of life, expense of medical care and treatment, loss of earning, loss of ability to earn money, and aggravation of a previously existing condition. The losses are permanent and/or continuing and JANE DOE will continue to suffer losses in the future. Plaintiff's constitutional rights were violated, and she was sexually assaulted.

100.   Plaintiff JANE DOE has retained the undersigned attorneys to prosecute this action on her behalf and has agreed to pay them a reasonable fee and to reimburse the costs of this action.

WHEREFORE, JANE DOE demands judgment against SOUTH TECH ACADEMY for compensatory damages, costs, interest, reasonable attorneys' fees pursuant to 42 U.S.C. §1983, § 1988 and such other and further relief as the court deems appropriate. Plaintiff further demands trial by jury.

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

## COUNT III: VIOLATION OF TITLE IX OF THE EDUCATIONAL AMENDMENTS OF 1972, 20 U.S.C. § 1681

101.    Plaintiffs reallege and incorporate the allegations contained in paragraphs 1 through 68, and 100 above, as if fully stated herein, and further allege:

102.    As a student at South Tech Academy, Plaintiff JANE DOE had the right not to be subjected to sex discrimination, including sexual abuse, molestation, exploitation, and harassment. Plaintiff JANE DOE also had a substantive due process right to, and liberty interest in, her bodily integrity.

103.    At all relevant times, Defendant SOUTH TECH had a duty to provide a safe and nondiscriminatory environment for its students, free from sexual harassment and sexual violence, and to resolve reports or complaints of sexual misconduct promptly, equitably, and adequately.

104.    By as early as October 2023, Defendant SOUTH TECH had actual notice that CONTI was preying upon plaintiff JANE DOE and maintaining an inappropriate relationship with JANE DOE. SOUTH TECH, its teachers and administrators knew or should have known that CONTI was frequently alone with this child, spent far more time with the child than is customary for a student-teacher relationship, and otherwise acted in a manner that made it obvious that the relationship was inappropriate.

105.    This notice alerted and informed SOUTH TECH that CONTI had the propensity to sexually abuse, victimize and/or harass female students and, therefore, posed a serious danger to female students of South Tech Academy, including JANE DOE.

106.    SOUTH TECH, its administrators and employees had a duty to promptly and adequately report/investigate CONTI's conduct and safeguard its students from the risk of sexual harassment,

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

sexual abuse, and exploitation by CONTI, pursuant to federal and Florida law and its own rules,

regulations, policies, and procedures. See, e.g., Florida K-20 Education Code, Fla. Stat. § 1000.01

et seq.; Florida Educational Equity Act, Fla. Stat. § 1000.05 et seq.; the Florida Administrative

Code; the State Board of Education Rules; the Rules of SOUTH TECH; and SOUTH TECH's

Bylaws & Policies.

107.    Each of Defendant SOUTH TECH's officials, administrators, agents, and employees who

received notice of CONTI's dangerous sexual propensities, including SOUTH TECH'S Executive

Director Carla Lovett, the Principal Eileen Turenne and Assistant Principals of SOUTH TECH,

fellow teachers, and various Schools Police officers had the authority, collectively or individually,

to initiate corrective action to remove CONTI and/or to supervise CONTI so as to prevent the risk

he posed to female students in general and the plaintiff in particular.

108.    Defendant SOUTH TECH failed to take appropriate action to either remove or

appropriately supervise CONTI. At all relevant times, Defendant SOUTH TECH failed to conduct

a prompt, impartial, reasonable, reliable, and thorough investigation of the complaints against

CONTI by employees trained and experienced in handling sexual discrimination complaints, as

well as the applicable federal and Florida laws and Defendant's rules, regulations, policies, and

procedures.

109.    At all relevant times, Defendant SOUTH TECH also failed to establish and institute

sufficient corrective measures to safeguard its students from the risk of sexual abuse, molestation,

and exploitation by CONTI. This includes, but is not limited to: (i) SOUTH TECH's failure to

31

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

sufficiently limit, restrict, supervise, and monitor CONTI's behavior, communications, interactions, and relations with female students (including JANE DOE); (ii) SOUTH TECH's failure to take precautions that were sufficient to prevent sexual predation upon JANE DOE by CONTI; (iii) SOUTH TECH's willingness to allow CONTI to frequently be alone with JANE DOE, engage in an abnormally close personal relationship with JANE DOE and overlook JANE DOE's lack of engagement with other students to spend time with CONTI; and (iv) SOUTH TECH's failure to otherwise abide by Federal and Florida law and to establish, implement, and abide by sufficient rules, regulations, policies, and procedures with regard to reporting, investigating, documenting, and redressing psychological and sexual misconduct and abuse.

110.    At all relevant times, Defendant SOUTH TECH was deliberately indifferent to the known dangerous sexual and predatory propensities posed to plaintiff JANE DOE by CONTI. Defendant SOUTH TECH failed to promptly and adequately report, investigate, redress, and otherwise respond to its notice that CONTI posed a serious danger of sexual abuse and exploitation to female students, including plaintiff JANE DOE. Defendant SOUTH TECH knowingly and deliberately exposed its female students, including Plaintiff, to a substantially increased risk of unwarranted and unlawful sexual abuse, exploitation, and harassment by CONTI. At the same time, Defendant SOUTH TECH knowingly and deliberately created and exacerbated an intimidating, hostile, offensive, and abusive educational environment.

111.    Despite its actual notice of CONTI's propensities and inappropriate relationship with plaintiff JANE DOE, Defendant SOUTH TECH continued to allow him unfettered access to JANE

32

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

DOE and, in doing so, made an official decision to ignore the known danger of sexual abuse of female students, like JANE DOE, under Defendant's care.

112.    As a result of Defendant SOUTH TECH's gross failures to adequately respond to its actual notice of CONTI's sexual misconduct and against abuse of female students, Plaintiff JANE DOE was sexually abused and harassed by CONTI.

113.    As a further result, Plaintiff JANE DOE has suffered, and continues to suffer, substantial injuries, harm, and damages. This includes, but is not limited to, severe and permanent emotional, psychological, and physical injuries, pain and suffering, aggravation of injuries, depression, fear, anxieties, inability to function normally in social situations, shame, humiliation, and the inability to enjoy a normal life. Such harms and injuries are continuing and permanent. Plaintiff JANE DOE has also undergone medical and psychological treatment and incurred medical and other expenses.

WHEREFORE, Plaintiff JANE DOE demands compensatory damages, injunctive relief, attorneys' fees and costs under 42 U.S.C. § 1988, pre- and post-judgment interest, and such other relief as this Court deems just and proper. Plaintiff further demands trial by jury.

## COUNT IV – PLAINTIFF G.M.'s CLAIM FOR LOSS OF CONSORTIUM

114.    Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 68, as if fully stated herein, and further allege:

115.    Plaintiff G.M. was at all times hereto, and now, the parent and sole guardian of Plaintiff JANE DOE.

33

G.M. individually, and as parent and legal guardian of JANE DOE, a minor,
v. South Tech Academy, Inc.
First Amended Complaint

116.    Plaintiff G.M. has been caused presently and in the future, to suffer the loss of her child's

company, cooperation, and aid of the other; including the parent/child relationship, affection,

solace, comfort, companionship, fellowship, society, and assistance necessary to a successful

parent/child relation and the familial association has been permanently altered and impaired.

117.    As a direct and proximate result of Defendant's negligence and resulting injuries, Plaintiff

G.M. has suffered the damages outlined above.

WHEREFORE, Plaintiff G.M. demands judgment for damages against Defendant SOUTH

TECH, plus costs, interest and such other and further relief as the Court deems appropriate and

further demands trial by jury.

DATED this 11th day of March 2025.


/s/ Jack Scarola
Jack Scarola
Florida Bar No. 169440
Attorney E-Mail: jsx@searcylaw.com and
_scarolateam@searcylaw.com
/s/ Victoria Mesa-Estrada
Victoria Mesa-Estrada
Florida Bar No.: 76569
Attorney E-Mail: vmestrada@searcylaw.com and
mesateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, PA
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Phone: 561-686-6300
Fax: 561-383-9402
Attorneys for Plaintiff

34

SEARCY DENNEY SCAROLA BARNHART & SHIPLEY P.A.
Attorneys at Law

■ WEST PALM BEACH OFFICE:
2139 PALM BEACH LAKES BLVD.
WEST PALM BEACH, FLORIDA 33409

P.O. BOX 3626
WEST PALM BEACH, FLORIDA 33402

(561) 686-6300
1-800-780-8607
1-800-220-7006 Spanish

☐ TALLAHASSEE OFFICE:
THE TOWLE HOUSE
517 NORTH CALHOUN STREET
TALLAHASSEE, FL 32301-1231

(850) 224-7600
1-888-549-7011

ATTORNEYS AT LAW:
ELISE SHERR ALLISON
*THEODORE "TED" BABBITT
*ROSALYN SIA BAKER-BARNES
*F. GREGORY BARNHART
*T. HARDEE BASS, III
LAURIE J. BRIGGS
*BRIAN R. DENNEY
JORDAN A. DULCIE
JUAN C. DIAZ AVILA
BRENDA S. FULMER
*MARIANO GARCIA
*JAMES W. GUSTAFSON, JR.
MARA R. P. HATFIELD
ADAM S. HECHT
*JACK P. HILL
*JOSEPH R. JOHNSON
CAMERON M. KENNEDY
KATHERINE A. KIZIAH
MICHAEL H. KUGLER
ANDREA A. LEWIS
YASHEEN A. LEWIS
GAETANO V. MURPHY
LINDSAY M. REINHART
*EDWARD V. RICCI
*JOHN SCAROLA
*MATTHEW K. SCHWENCKE
CARTER W. SCOTT [1]
*CHRISTIAN D. SEARCY
CHRISTOPHER K. SPEED [4,5]
BRIAN P. SULLIVAN
*KAREN E. TERRY
DAVID P. VITALE, JR.
DONALD J. WARD III [2,3]
*C. CALVIN WARRINER III
CLELL C. WARRINER IV
BORIS L. ZHADANOVSKIY

OF COUNSEL:
*EARL L. DENNEY, JR. [1]
*JOHN A. SHIPLEY III (retired)
WILLIAM B. KING [2]

RESEARCH ASSOCIATES:
SHANNON M. BAER
SOPHIA K. LETTS
MARY ALICE TUCKER

SHAREHOLDERS
*BOARD CERTIFIED IN CIVIL TRIAL
*BOARD CERTIFIED IN HEALTHCARE
*BOARD CERTIFIED IN COMMERCIAL & BUSINESS LITIGATION

ALSO ADMITTED
[1] GEORGIA
[2] MISSISSIPPI
[3] NEW JERSEY
[4] VIRGINIA
[5] WASHINGTON DC

PARALEGALS:
KIMBERLEY AGUILERA
LAZARO BECERRA
NICHOLAS F. DeBELLIS
MICHAEL GAUGER
JOHN C. HOPKINS
VINCENT L. LEONARD, JR.
LESLIE A. McCOWN
HELEM ORTIZ
ROBERT W. PITCHER
ELISABETH A. PITTALUGA
CHRIS R. RODGERS
NYDIA SERRANO
BONNIE S. STARK

March 1, 2024

CERTIFIED MAIL
RETURN RECEIPT REQUESTED

9414 7266 9904 2210 9373 31

Florida Department of Education
Turlington Building, Suite 1514
325 West Gaines Street
Tallahassee, FL 32399

9414 7266 9904 2210 9373 48

The School District of Palm Beach County
3300 Forest Hill Boulevard
West Palm Beach, FL 33406

9414 7266 9904 2210 9373 55

South Tech Charter Academy, Inc
6161 W. Woolbright Road
Boynton Beach, FL 33437

9414 7266 9904 2210 9373 62

As Registered Agent:
South Tech Schools Holdings, LLC
6161 W Woolbright Road
Boynton Beach, Fl 33437

9414 7266 9904 2210 9373 79

Department of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

| | |
|---|---|
| In Re: Our Client: | [redacted] as Mother and Natural Guardian of [redacted] a minor |
| Client's Date of Birth: | [redacted] |
| Date of Incident: | 2/6/2024 |
| Our File Number: | 20240175 |

EXHIBIT
Composite
A

Page 2

Dear Sir/Madam:

This law firm represents the interests of ███████████ as Mother and Natural Guardian of ███████ a minor, relative to injuries sustained on or about August 2023-February 2024, while a student at South Tech Charter Academy, located at 6161 W. Woolbright Road, Boynton Beach, FL 33437, when her teacher, Damian Conti, engaged in sexual activity/intercourse with the child on and off campus on numerous occasions. ███ a minor of the subject incidents and a student at the above-mentioned school.

Pursuant to Florida Statute 768.28, this letter will serve to notify you or otherwise place you on notice that Claimant, ███ has placed you on notice of intent to initiate litigation against South Tech Charter Academy, INC, South Tech Schools Holdings, LLC, and other potential Defendants.

PLEASE ACCEPT THIS CLAIM AS OUR FORMAL NOTICE OF INTENT TO PURSUE FILL CLAIMS (STATE AND FEDERAL) ARISING FROM THE SEXUAL ASSAULT ON ███ (A MINOR)" THESE CLAIMS INCLUDE BUT ARE NOT LIMITED TO: NEGLIGENCE; SEXUAL BATTERY; CHILD ABUSE; CIVIL RIGHTS VIOLATIONS; FAILING TO SUPERVISE; FAILING TO REPORT CHILD ABUSE; AND, FAILING TO PROTECT A STUDENT IN THE DISTRICT'S CUSTODY AND CONTROL.

We will bring a formal claim for damages, pursuant to Florida Statute §768.28 for all damages recoverable as a result of the above-mentioned actions and associated negligence that led to ███ s injuries.

To the extent that any potential defendant in this matter may claim sovereign immunity protection under the provisions of Chapter 768, Florida Statutes, this Notice of Claim is sent in fulfillment of Section 768.28, Florida Statutes, on behalf of: *

Claimant:        ████████████

Address:         ██████████████████

S.S.N.:          ██████████

D.O.B.:          ██████████

Place of Birth:  ██████████████

Case Style:      ███ (a minor) vs. SouthTech Academy, et al.



Page 3

Court:               Palm Beach County

**\*Please be advised that this child was the victim of a sexually motivated crime and, as such, we are requested that her name and all of her identifying information be kept confidential.**

There are no adjudicated penalties, fines, fees, victim restitution fund, and other judgments in excess of $200.00, whether imposed by civil, criminal, or administrative tribunal, owed by claimant to the State, its agency, office or subdivision.

This claim arises out of injuries sustained by ▇▇ (a minor). The perpetrator, Damian Conti was a teacher at South Tech Charter Academy, located within the jurisdiction of the Palm Beach County.

*Damages:*      The full extent of damage sustained by ▇▇ (a minor) is not yet known. However, they include but are not limited to past and future mental anguish, past and future medical treatment, and emotional distress.

*Demand:*        Undetermined at this time.

If you have any questions, please do not hesitate to call. If you feel that this notice does not comply with the statutory requirements. Please contact my office immediately so that we can discuss and correct the defect, if necessary.

        **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished to the above-named addressees, this 28th day of March, 2024.

Sincerely,

VICTORIA MESA-ESTRADA, EQUIRE
VME/pmb



WALZ CERTIFIED MAILER®

FROM **WALZ**

FORM #45563 VERSION: E0822

**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 79

Label #1
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Label #2
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Label #3
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409

| | |
|---|---|
| Certified Mail Fee | $ |
| Return Receipt (Hardcopy) | $ |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ |
| Total Postage and Fees | $ |

Postmark Here

Sent to:
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Reference Information

 (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

A  FOLD AND TEAR THIS WAY → OPTIONAL

B  Label #5 (OPTIONAL)

Certified Article Number
SENDER'S RECORD
9414 7266 9904 2210 9373 79

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

Label #6 - Return Receipt Barcode (Sender's Record)

Label #7 - Certified Mail Article Number

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE

**CERTIFIED MAIL**

9414 7266 9904 2210 9373 79

9590 9266 9904 2210 9373 72

FOLD AND TEAR THIS WAY →

FOLD AND TEAR THIS WAY →

RETURN RECEIPT REQUESTED
USPS® MAIL CARRIER
DETACH ALONG PERFORATION

Thank you for using Return Receipt Service

Return Receipt (Form 3811) Barcode

9590 9266 9904 2210 9373 72

1. Article Addressed to:
Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL 32399-0300

2. Certified Mail (Form 3800) Article Number
9414 7266 9904 2210 9373 79

COMPLETE THIS SECTION ON DELIVERY

A. Signature
X                              ☐ Agent
                               ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:      ☐ No

3. Service Type:
☒ Certified Mail

Reference Information
 (a minor) vs. SouthTech Academy, et al.
20240175 VME

Thank you for using Return Receipt Service

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9373 62**

| | | |
|---|---|---|
| Certified Mail Fee | $ 440 | |
| Return Receipt (Hardcopy) | $ 365 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ 1.87 | MAR 01 2024 |
| Total Postage and Fees | $ 992 | |

**Sent to:**

South Tech Schools Holdings, LLC, as a Registered
Agent of South Tech Charter Academy, Inc
6161 W Woolbright Road
Boynton Beach, FL  33437

## Reference Information

█ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

**9414 7266 9904 2210 9372 63**

| | | |
|---|---|---|
| Certified Mail Fee | $ 440 | |
| Return Receipt (Hardcopy) | $ 365 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | MAR 01 202 |
| Postage | $ 187 | |
| Total Postage and Fees | $ 992 | |

**Sent to:**

South Tech Schools Holdings, LLC, as a
Registered Agent of South Tech Charter
Academy, Inc
6161 W Woolbright Road
Boynton Beach, FL  33437

## Reference Information

■ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 17

| | | |
|---|---|---|
| Certified Mail Fee | $4.40 | |
| Return Receipt (Hardcopy) | $3.05 | |
| Return Receipt (Electronic) | $ | |
| Certified Mail Restricted Delivery | $ | **Postmark Here** |
| Postage | $1.87 | MAR 01 2024 |
| Total Postage and Fees | $9.97 | |

Sent to:

Florida Department of Education
Office of Professional Practices
325 West Gaines Street, Suite 224-E
Tallahassee, FL  32399

### Reference Information

██ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9372 94

| | | |
|---|---|---|
| Certified Mail Fee | $ 4.40 | |
| Return Receipt (Hardcopy) | $ 3.05 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | MAR 01 2025 |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ 9.92 | |

**Sent to:**

South Tech Charter Academy
6161 W Woolbright Rd
Boynton Beach, FL  33437

## Reference Information

███ (a minor) vs. SouthTech Academy, et al.
20240175 VME

**PS Form 3800, Facsimile, July 2015**

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 24

| | |
|---|---|
| Certified Mail Fee | $ 4.40 |
| Return Receipt (Hardcopy) | $ 3.65 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 1.87 |
| Total Postage and Fees | $ 9.97 |

Postmark
Here

Sent to:

MAR 01 2024

South Tech Charter Academy
6161 W Woolbright Rd
Boynton Beach, FL 33437

## Reference Information

███ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9372 56

| | | |
|---|---|---|
| Certified Mail Fee | $ 4.70 | |
| Return Receipt (Hardcopy) | $ 3.65 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | |
| Postage | $ 1.87 | |
| Total Postage and Fees | $ 9.97 | |

MAR 01 2024

**Sent to:**

South Tech Charter Academy
6161 W Woolbright Rd
Boynton Beach, FL  33437

## Reference Information

██ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service
# CERTIFIED MAIL RECEIPT
*Domestic Mail Only*

## USPS ARTICLE NUMBER

9414 7266 9904 2210 9373 55

| | | |
|---|---|---|
| Certified Mail Fee | $ 440 | |
| Return Receipt (Hardcopy) | $ 365 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ 1.87 | |
| Postage | $ | |
| Total Postage and Fees | $ 992 | |

**Sent to:**

South Tech Charter Academy, Inc
6161 W Woolbright Rd
Boynton Beach, FL  33437

## Reference Information

███ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9372 32

| | | |
|---|---|---|
| Certified Mail Fee | $440 | |
| Return Receipt (Hardcopy) | $365 | |
| Return Receipt (Electronic) | $ | **Postmark Here** |
| Certified Mail Restricted Delivery | $ | |
| Postage | $1.87 | |
| Total Postage and Fees | $9.9? | |

**Sent to:**

South Tech Charter Academy
6161 W Woolbright Rd
Boynton Beach, FL 33437

## Reference Information

███ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015

# U.S. Postal Service®
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

## USPS® ARTICLE NUMBER

9414 7266 9904 2210 9373 79

| | |
|---|---|
| Certified Mail Fee | $ 4.40 |
| Return Receipt (Hardcopy) | $ 3.65 |
| Return Receipt (Electronic) | $ |
| Certified Mail Restricted Delivery | $ |
| Postage | $ 1.87 |
| Total Postage and Fees | $ 9.92 |

MAR 0 1 2024

**Postmark Here**

Sent to:

Department Of Financial Services
Division of Risk Management
Bureau of State Liability Claims
200 East Gaines Street
Tallahassee, FL  32399-0300

## Reference Information

█ (a minor) vs. SouthTech Academy, et al.
20240175 VME

PS Form 3800, Facsimile, July 2015