UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-80457-RLR

G.M. and S.L.,

    Plaintiffs,

v.

SOUTH TECH ACADEMY, INC.,

    Defendant.
_____/

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION TO DISMISS**

**THIS CAUSE** is before the Court on Defendant South Tech Academy, Inc.'s Motion to Dismiss. DE 6. The Court has reviewed the Motion, the Response by Plaintiffs G.M. and S.L. [DE 10], Defendant's Reply [DE 11], and the record and is otherwise fully advised in the premises. For the reasons below, and as more fully set forth in this Order, Defendant's Motion is granted in part and denied in part.

**I.    FACTUAL BACKGROUND**

This case arises from the sexual abuse that a then-minor student, Plaintiff S.L., endured from Damian Conti, a teacher at Defendant South Tech Academy, Inc.

The Court accepts as true the following allegations. Mr. Conti met S.L. when she was sixteen years old and was enrolled at South Tech during the 2023 to 2024 school year. DE 6-2 ¶ 16. Beginning in S.L.'s junior year, Mr. Conti began the process of grooming S.L. *Id.* ¶ 17. Mr. Conti's "alone" time with S.L. was quickly known to multiple individuals, including South Tech's Principal and Assistant Principal. *Id.* ¶ 21. By early October 16, 2023, Mr. Conti gained S.L.'s complete trust, exerted control over S.L., and began to sexually assault S.L. *Id.* ¶¶ 24–26. By

December 2023, rumors widely circulated among South Tech students regarding Mr. Conti's inappropriate behavior toward certain female students, including S.L. *Id.* ¶ 27.

By early January 2024, South Tech administration received at least one parental complaint reporting Mr. Conti's unprofessional and inappropriate actions in the classroom with students. *Id.* ¶ 33. Mr. Conti confessed to S.L. that the year before, he was questioned by South Tech's Assistant Principal about inappropriate conduct with another female student; South Tech took no action at that time. *Id.* ¶ 34. In January 2024, the Assistant Principal was aware that Mr. Conti was transporting students in his car, against school policy. *Id.* ¶ 35. School rumors and social media videos circulated about S.L. and Mr. Conti's relationship. *Id.* ¶¶ 37–40.

On February 5, 2024, South Tech's Principal summoned Mr. Conti and S.L. separately and told them to refrain from speaking to each other to dispel any rumors. *Id.* ¶ 42. On February 6, 2024, a student notified the Principal and other school administrators that he had concrete evidence that Mr. Conti and S.L. were having an ongoing inappropriate romantic relationship. *Id.* ¶ 45. The evidence reviewed by the school police indicated that Mr. Conti was undoubtedly romantically and sexually involved with S.L. *Id.* The Assistant Principal brought S.L. to the main South Tech office, where two police officers read S.L. her Miranda rights and questioned S.L. *Id.* ¶¶ 47–50. S.L. was permitted to call her stepfather, but South Tech did not otherwise attempt to communicate directly with S.L.'s parents. *Id.* ¶ 50. Later that day, the Assistant Principal told S.L. to sign out from school and go home, despite school policy requiring that a parent or guardian must sign the student out early. *Id.* ¶ 51–52.

After leaving school, S.L. contacted Mr. Conti and met him at a nearby Home Depot. *Id.* ¶ 54. Upon information and belief, the pair made a pact to commit suicide together. *Id.*

Meanwhile, S.L.'s parents arrived at South Tech to ask questions about what was occurring—they were told only that S.L. had been ordered to leave the school. *Id.* ¶ 55.  At around 2:10 p.m., Mr. Conti called the Palm Beach County 911 Emergency system, reporting that he was trying to "help someone who [was] threatening with suicide" and that S.L. was "trying to find a park to hang herself." *Id.* ¶ 59.  The police found S.L. hanging by rope around her neck from a tree behind a nearby church; first responders provided cardiopulmonary resuscitation to save S.L.'s life. *Id.* ¶ 61.  Only when S.L.'s parents arrived at the hospital where S.L. was being treated did they learn of the sexual abuse S.L. had endured. *Id.* ¶¶ 62–63.  Mr. Conti was arrested on February 6, 2024. *Id.* ¶ 64.

## II.     PROCEDURAL BACKGROUND

Plaintiff S.L. and her parent and sole guardian, Plaintiff G.M., filed their First Amended Complaint against Defendant South Tech on March 11, 2025, in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County. DE 6-2.  Plaintiff S.L. brings claims for (I) negligent training, supervision, and retention; (II) 42 U.S.C. § 1983 deprivation of S.L.'s civil rights under the Fourth and Fourteenth Amendments; and (III) violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681.  Plaintiff G.M. brings a claim for (IV) loss of consortium.

Defendant has moved to dismiss the state court complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## III.    STANDARD OF REVIEW

The plaintiff bears the burden to establish federal subject-matter jurisdiction. *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005).  In moving to dismiss a complaint under Rule 12(b)(1) for lack of subject-matter jurisdiction, a defendant may attack the

3

complaint facially or factually. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Facial attacks "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in the Complaint are taken as true for the purposes of the motion." *Id.* (citations omitted). By contrast, factual attacks challenge "the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (citation omitted). "No presumption of truth attaches to the plaintiff's allegations, and the existence of a disputed material fact does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim." *Duque Mendez v. Cuccinelli*, 467 F. Supp. 3d 1249, 1254 (S.D. Fla. 2020) (citing *Lawrence*, 919 F.2d at 1529).

A court may also grant a motion to dismiss a complaint if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss should be granted only when the pleading fails to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court ruling on a motion to dismiss a complaint accepts the well-pled factual allegations as true and views the facts in the light most favorable to the plaintiff. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). The court need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019). "Under Rule 12(b)(6), dismissal is proper when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Allen v. USAA Cas. Ins. Co.*, 790 F.3d 1274, 1278 (11th Cir. 2015) (quotation marks omitted).

Finally, arguments raised for the first time in a reply brief are not properly before a reviewing court. *Fed. Trade Comm'n v. Alternatel, Inc.*, No. 08-21433-CIV, 2008 WL 11333090, at *2 (S.D. Fla. Oct. 27, 2008) (collecting cases).

### IV.   ANALYSIS

Defendant has moved to dismiss each count in Plaintiffs' Complaint. The Court begins by addressing G.M.'s loss of filial consortium claim (Count IV) and then addresses in turn the remaining claims brought by S.L. in her individual capacity: a Title IX claim (Count III); negligent supervision, retention, and training (Count I); and a 42 U.S.C. § 1983 claim (Count II).

#### A.   Count IV – Loss of Filial Consortium

Defendant argues that the loss of filial consortium claim brought by G.M., the parent and sole guardian of S.L., must be dismissed for failure to allege compliance with all conditions precedent necessary to maintain her claim pursuant to Florida's statutory waiver of sovereign immunity. *See* Fla. Stat. § 768.28(6). Plaintiffs have not alleged that G.M. provided South Tech and the Department of Financial Services with notice of the claim, DE 6 at 17, which Plaintiffs concede, DE 10 at 16. Therefore, Count IV is dismissed with leave to amend the complaint to allege compliance with the notice requirement. *Fletcher v. City of Miami*, 567 F. Supp. 2d 1389, 1393 (S.D. Fla. 2008) ("A complaint that is brought without first providing statutory notice must be dismissed with leave for plaintiff to amend his complaint to allege compliance with the notice requirement." (citation omitted)).

#### B.   Count III – 20 U.S.C. § 1681

Defendant argues that Plaintiffs do not adequately state a Title IX claim because Plaintiffs have not sufficiently alleged actual notice by Defendant. DE 6 at 15. Title IX provides that "[n]o

5

person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "[A] teacher's sexual harassment of a student constitutes actionable discrimination for the purposes of Title IX." *Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1283 (11th Cir. 2005) (discussing *Franklin v. Gwinett Cnty. Pub. Schs.*, 503 U.S. 60, 74–76 (1992)). The Eleventh Circuit details this Title IX claim as follows:

> . . . In the case of teacher-on-student sexual harassment, our analysis is governed by the Supreme Court's decision in *Gebser v. Lago Vista Independent School District,* 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998).
>
> In *Gebser,* the Supreme Court made plain that not all sexual harassment by teachers is sufficient to impose liability on a school district. Because "Title IX is predicated upon notice to an 'appropriate person' and an opportunity to rectify any violation," *id.* at 290, 118 S.Ct. at 1999 (citing 20 U.S.C. § 1682), the Court explained that school districts may not be held liable on a theory of *respondeat superior* or mere constructive notice, *id.* at 285, 118 S.Ct. at 1997. Rather, Title IX liability arises only where "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct." *Id.* at 277, 118 S.Ct. at 1993.

*Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1254 (11th Cir. 2010). "[L]esser harassment may still provide actual notice of sexually violent conduct, for it is the risk of such conduct that the Title IX recipient has the duty to deter." *Id.* at 1258.

Defendant argues that Plaintiffs have failed to allege that "South Tech administrators received notice of an event, occurring prior to February 6, 2024, that constituted actual notice of Mr. Conti's dangerous sexual propensities," and how those administrators "acted with deliberate indifference to such an event." DE 6 at 16.

Plaintiffs have alleged the following in support of their assertion that Defendant had actual notice. Plaintiffs allege that upon information and belief, as early as the 2022–2023 school year,

6

South Tech administrators had received complaints from parents about Mr. Conti's "inappropriate behavior" with female students. DE 6-2 ¶¶ 33, 36. In January 2023, South Tech's Assistant Principal was aware that Mr. Conti was "giving gifts and spending time" with students outside of school activities, "outside of the professional boundaries of a teacher/student relationship," and wrote to Mr. Conti to state that she was "confident that [he] will avoid these situations and still be able to maintain a rapport with [his] students." *Id.* ¶ 34. South Tech teachers and administrators frequently saw Mr. Conti alone with S.L. during inappropriate times. *Id.* ¶ 31. By December 2023, rumors widely circulated among South Tech students regarding Mr. Conti's inappropriate behavior toward certain female students, including S.L. *Id.* ¶ 27. In January 2024, a social media video circulated among students, showing S.L. getting into Mr. Conti's vehicle at the teacher parking lot; this prompted South Tech's Assistant Principal to inform Mr. Conti that he "should not be transporting students in [his] car." *Id.* ¶¶ 34–35.

Also in January 2024, S.L. and Mr. Conti separately contacted South Tech's Principal and Assistant Principal to alert them to the rumors circulating about Mr. Conti and S.L.'s inappropriate relationship. *Id.* ¶¶ 27, 38. S.L. denied that the rumors were true, and Mr. Conti sought the administrators' advice about how to handle the "unfounded rumors." *Id.* ¶ 38. Before the incident on February 6, 2024, South Tech's Principal heard personally from students about their observations involving Mr. Conti's close relationship with S.L. *Id.* ¶ 41.

The Eleventh Circuit has set a "difficult" standard for actual notice. *Doe v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 521 F. Supp. 3d 1242, 1249 (S.D. Fla. 2019) (discussing *Broward*, 604 F.3d at 1250–53). In the context of teacher-on-student harassment, plaintiffs must establish actual knowledge that a "particular school employee presents a substantial risk to abuse students." *Doe*

7

*No. 60 v. G-Star Sch. of the Arts, Inc.*, No. 16-CV-80446, 2017 WL 2119557, at *6 (S.D. Fla. May 16, 2017). That said, there may be actual notice "where the primary substance of that notice differed significantly from the circumstances of the plaintiff's harassment"; actual notice does not "require notice of the prior harassment of the Title IX plaintiff herself." *Broward*, 604 F.3d at 1257–58 (quoting *Williams v. Bd. of Regents of the Univ. Sys. Of Ga.*, 477 F.3d 1282, 1288–90, 1294 (11th Cir. 2007)).

Here, Plaintiffs' specific allegations concerning Mr. Conti's inappropriate behavior—transporting students in his car, giving gifts, and spending time with student groups outside of school activities—may not alone arise to the Eleventh Circuit's standard for actual notice of potentially sexually violent conduct. *See, e.g.*, *Broward*, 604 F.3d at 1250–53 (finding actual notice from two prior complaints about the teacher's acts of sexual harassment); *Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015) (stating that school administrators knew "weeks before the rape that [the teacher] had been propositioning girls to have sex in bathrooms" and learned "days before the rape" that the teacher "had allegedly inappropriately touched a female student").

But Plaintiffs have also alleged, upon information and belief, that Defendant had previously received complaints from parents regarding Mr. Conti's inappropriate behavior with female students. *See G-Star Sch. of the Arts*, 2017 WL 2119557, at *7 (finding a genuine issue of material fact on the issue of actual notice, given three reports concerning inappropriate behavior of a sexual nature by a teacher directed at a student, despite the teacher's and student's denials of any inappropriate relationship). And at the motion-to-dismiss stage, allegations made "upon information and belief" are permissible when the facts alleged are "peculiarly within the

8

possession and control of the defendant." *Joe Hand Promotions, Inc. v. Goldshtein*, No. 18-60522-CIV, 2018 WL 7080029, at *3 (S.D. Fla. June 18, 2018).

The Court acknowledges that it is a close call as to whether to reasonably infer that the unknown evidence—the prior concerns and parental complaints about Mr. Conti's conduct, alleged upon information and belief—meet the Title IX actual-notice requirement. But at this motion-to-dismiss stage, the Court errs on the side of reasonably inferring that Defendant received complaints that were sufficiently severe to meet the Title IX actual-notice requirement. Therefore, because Plaintiffs have made allegations upon information and belief that the Court has reasonably construed in Plaintiffs' favor, the Court declines at this stage to dismiss Plaintiffs' Title IX count on the basis of actual notice. Also based on this inference, Plaintiffs have adequately alleged that administrators acted with deliberate indifference, in light of the complaints, by failing to conduct a full and proper investigation and failing to take action to protect S.L. or prevent Mr. Conti from continuing his misconduct. *Id.* ¶¶ 107–111. Defendant may raise the issues of actual notice and deliberate indifference again at summary judgment.

Defendant has further argued that S.L.'s Title IX claim must be dismissed because Plaintiffs have not alleged that Defendant is a Title IX funding recipient or that Defendant receives federal financial assistance. DE 6 at 15. Plaintiff concedes this point. DE 10 at 14 n.1. Because the Court has dismissed Count IV with leave to amend, the Court dismisses Count III with leave to amend so that Plaintiffs may adequately allege Defendant's liability under Title IX.

### C.     Count I – Negligent Training, Supervision, and Retention

Under Count I, Plaintiffs bring a claim for negligent supervision, retention, and training. Defendant argues that all three theories of negligence must be dismissed.

9

1. Negligent Supervision

A public school "undoubtedly owes a general duty of supervision to the students placed within its care." *Rupp v. Bryant*, 417 So. 2d 658, 666 (Fla. 1982). Defendant first argues that Plaintiffs do not have a viable negligent supervision claim for the off-campus and non-school-related activities between Mr. Conti and S.L. DE 6 at 7. Plaintiffs have sufficiently alleged detailed acts of sexual abuse by Mr. Conti while on campus and during school-related events. *E.g.*, DE 6-2 ¶ 25. Because a "duty of supervision has been found for student injuries occurring on-school premises as well as off-school premises for school-related activities," the Court declines to dismiss Plaintiff's negligent supervision claim on this basis. *Concepcion By & Through Concepcion v. Archdiocese of Miami By & Through McCarthy*, 693 So. 2d 1103, 1104 (Fla. Dist. Ct. App. 1997) (citing *Rupp*, 417 So. 2d at 667–68).

Defendant next argues that Plaintiffs fail to state a claim for negligent supervision under a theory of vicarious liability or *respondeat superior*. DE 6 at 7–8. Defendant argues that pursuant to Florida's statutory waiver of sovereign immunity, because Mr. Conti's sexual abuse of S.L. was clearly outside the scope of his employment, South Tech cannot be held liable under a theory of vicarious liability. Fla. Stat. § 768.28(9)(a).

Under Florida law, however, negligent supervision is not based upon a theory of vicarious liability—it is a direct negligence claim against the employer. *See, e.g.*, *K. Company Realty LLC v. Pierre*, 376 So. 3d 730, 735 (Fla. Dist. Ct. App. 2023) (discussing negligent supervision as a claim for direct liability); *Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. Dist. Ct. App. 1989) ("By its very nature, an action for negligent retention involves acts which are *not* within the course and scope of employment and allows recovery even when an employer is not vicariously

10

liable under the doctrine of respondeat superior." (emphasis in original)).  Therefore, Plaintiffs' direct-negligence claim is not barred by Florida's waiver of sovereign immunity. *See, e.g.*, *Saphir by & through Saphir v. Broward Cnty. Pub. Sch.*, 744 F. App'x 634, 640 (11th Cir. 2018) (discussing a negligent supervision claim against a public-school board based on a teaching-aide's sexual harassment).

Liability under negligent supervision "occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take action such as 'investigating, discharge or reassignment.'" *Malicki v. Doe*, 814 So. 2d 347, 347 n.15 (Fla. 2002) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. Dist. Ct. App. 1986).  The "negligence of an employer's actions or omissions" are questions of fact that "vary with the circumstances of each case." *Garcia*, 492 So. 2d at 441.  And "because a negligent supervision and retention claim involves the direct negligence of the City, it requires that the actions of the employee be outside the course and scope of the employee's employment." *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610 (Fla. Dist. Ct. App. 2013).

Plaintiffs' negligent supervision claim requires a less stringent knowledge requirement than the actual notice required for Plaintiffs' Title IX claim. *See* Part IV.B.  To successfully plead a negligent supervision claim, Plaintiffs must allege that Defendant should have known of Mr. Conti's unfitness.  Plaintiffs have met their burden.  Plaintiffs have adequately alleged Mr. Conti's unfitness—based on actions outside the course and scope of his employment with Defendant—by alleging that Mr. Conti engaged in sexually abusive conduct, as well as less severe conduct that went against school policies.  Furthermore, Plaintiffs have alleged that after Mr. Conti's employment began, South Tech administrators knew of Mr. Conti's "inappropriate behavior" with

11

female students. *See* Part IV.B.  The year prior, South Tech's Assistant Principal questioned Mr. Conti about inappropriate conduct with another female student. DE 6-2 ¶ 34.  In fall 2023, South Tech administrators knew about Mr. Conti's alone time with S.L. *Id.* ¶ 21.  By early January 2024, South Tech administrators received at least one parental complaint reporting Mr. Conti's unprofessional and inappropriate actions in the classroom with students. *Id.* ¶ 33.  And the Assistant Principal was aware that Mr. Conti was transporting students in his car, against school policy. *Id.* ¶ 35.

Reasonably construing the allegations in the light most favorable to Plaintiffs, South Tech administrators knew of Mr. Conti's violations of school policies for at least a year.  The Court infers that the parental complaint, and the complaints or conduct resulting in South Tech questioning Mr. Conti about his inappropriate behavior—coupled with Mr. Conti's conduct with S.L.—were sufficiently serious as to warrant a stronger response by Defendant. But instead of engaging in a more fulsome investigation, or a more forceful reprimand, Defendant "continued to employ CONTI as a teacher, which put him in a position of authority over Plaintiff Jane Doe and permitted CONTI to have unsupervised, one-on-one contact with female students, including, but not limited to, the Plaintiff." DE 6-2 ¶ 74.

Based on the above, the Court finds that Plaintiffs have adequately stated their negligent supervision claim at this motion-to-dismiss stage.  Because "there is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention or supervision," the Court declines to dismiss Plaintiffs' negligent supervision theory. *Dickinson v. Gonzalez*, 839 So. 2d 709, 713 (Fla. Dist. Ct. App. 2003).

2. Negligent Retention

Defendant similarly argues that Plaintiffs fail to state a claim for negligent retention under a theory of vicarious liability because Plaintiffs' claim is barred by sovereign immunity. DE 6 at 5–6. Like negligent supervision, however, negligent retention is also a direct negligence claim against the employer. *See School Bd. of Orange County v. Coffey*, 524 So. 2d 1052, 1053 (Fla. Dist. Ct. App. 1988) ("The retention and supervision of a teacher by a school board are not acts covered with sovereign immunity."). Additionally, the elements to establish a negligent retention claim are the same elements required to establish a negligent supervision claim. *See Malicki*, 814 So. 2d at 347 n.15 (stating the elements for "negligent supervision or retention"). The Court therefore declines to dismiss Plaintiffs' negligent retention theory for the same reasons that the Court declines to dismiss Plaintiffs' negligent supervision theory. *See* Part IV.C.2.

3. Negligent Training

Defendant argues that Plaintiffs have failed to allege a negligent training claim because Defendant's failure to provide training to its employees is a discretionary function barred from suit based on principles of sovereign immunity. DE 6 at 11; *Gualtieri v. Bogle*, 343 So. 3d 1267, 1275 (Fla. Dist. Ct. App. 2022) (explaining that "discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity" (citation omitted)). Defendant also argues that—to the extent that providing training is an operational function—Plaintiffs' allegations fail to establish that Defendant had actual or constructive notice of a need for training. DE 6 at 11.

In response, Plaintiffs argue that their challenge to Defendant's training program is not against its content or how that training was conducted—challenges that Plaintiffs acknowledge

13

may be barred by sovereign immunity. DE 10 at 7. Instead, Plaintiffs assert that Defendant was negligent in the way it implemented its training program—a challenge that Plaintiffs assert is not barred by sovereign immunity. *Id.*

"Negligent training occurs when an employer 'was negligent in the implementation or operation of the training program.'" *Gutman v. Quest Diagnostics Clinical Laboratories, Inc.*, 707 F. Supp. 2d 1327, 1331 n.4 (S.D. Fla. 2010) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). The Eleventh Circuit has recognized that challenges based on the implementation of a training program—as opposed to determining the content of a training program, which is a discretionary function—may not be barred by sovereign immunity. *See, e.g.*, *Mercado*, 407 F.3d at 1162 ("Because [the plaintiff] only challenges the content of the program, not the way in which the program was implemented, [the defendant] is entitled to sovereign immunity with respect to this claim."); *Lewis v. City of St. Petersburg*, 230 F.3d 1260, 1266 (11th Cir. 2001) (affirming the dismissal of the plaintiff's negligent training claim, finding it barred by sovereign immunity, because the plaintiff "[did] not challenge the implementation or operation of the City's police training program," but the content of the program); *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1118–19 (11th Cir. 2005) (same).

Here, Plaintiffs allege the following:

> 78. SOUTH TECH also had a duty to provide appropriate training to CONTI, other teachers, administrators, and students (including Jane Doe), regarding the signs of grooming/predatory behavior, signs of sexual abuse, mandatory reporting requirements, how/when to report, and other appropriate actions to keep students like Jane Doe safe. SOUTH TECH failed to provide this training and, as a direct result, plaintiff Jane Doe was severely and permanently injured, including both psychological and physical injuries.
>
> 79. SOUTH TECH also had a duty to provide appropriate training to teachers, administrators, and students (including Jane Doe), regarding the signs of

> erratic behavior, suicidal ideation, emotional distress and turmoil, how/when to provide appropriate mental health support, and other appropriate actions to keep students like Jane Doe safe. SOUTH TECH failed to provide this training and, as a direct result, Jane Doe was severely and permanently injured, including both psychological and physical injuries.

DE 6-2. Read in the light most favorable to Plaintiffs, Plaintiffs' allegations assert that Defendant negligently implemented its training program by failing to properly train personnel to address predatory behavior as well as mental health concerns. Because Plaintiffs' negligent training claim concerns Defendant's implementation of a training program, the Court declines to dismiss this theory of negligence on sovereign immunity grounds.

### D.   Count II – 42 U.S.C. § 1983

Under 42 U.S.C. § 1983, plaintiffs have a private right of action against persons who, under color of state law, deprive the plaintiffs of their federally protected rights. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendant first argues that Plaintiffs' 42 U.S.C. § 1983 claim should be dismissed because Plaintiffs have not specifically alleged constitutional rights violations, but only make mention of Fourth and Fourteenth Amendment violations. DE 6 at 13. Plaintiffs have, however, clearly alleged S.L.'s Fourth and Fourteenth Amendment rights to bodily integrity and "to be free from sex discrimination, including sexual abuse, molestation, exploitation, and harassment." DE 6-2 ¶ 95; *Broward*, 604 F.3d at 1265–66 (discussing the "constitutional right not to be sexually abused by a state official acting under color of law, a substantive due process right grounded in the Fourteenth Amendment").

Defendant does not appear to contest that Mr. Conti's actions violated S.L.'s constitutional rights to bodily integrity and to be free from sexual abuse. Defendant does argue, however, that

15

to the extent that Plaintiffs have adequately alleged a Fourteenth Amendment violation, Plaintiffs fail to allege any violations by a South Tech administrator, much less a custom or policy of deliberate indifference that caused such a violation. *Id.* at 13–14.

In response, Plaintiffs argue that they have sufficiently alleged a custom or policy of deliberate indifference—based on Defendant's failure to provide adequate training or supervision—that caused the violation of S.L.'s constitutional rights.  The Eleventh Circuit has described the relevant legal standard as follows:

> A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Municipal policy or custom may include a failure to provide adequate training if the deficiency "evidences a deliberate indifference to the rights of its inhabitants." *Id.* at 388, 109 S.Ct. 1197. To establish a city's deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir.1998). A city may be put on notice in two ways. First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent. *Id.* at 1351. Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious. *Id.* at 1351–52.

*Lewis v. City of W. Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the [entity]." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir.1997)).  "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.*  "Even in the absence of an express policy or custom, a local government body can be held liable 'for a single act or decision of a municipal official with final policymaking authority in the area of the

16

act or decision.'" *Cuesta v. School Bd. of Miami–Dade County, Fla.*, 285 F.3d 962, 968 (11th Cir. 2002) (quoting *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996)).

Plaintiffs focus on the second approach to establishing deliberate indifference, which does not require evidence of prior constitutional violations because "the likelihood for constitutional violation is so high that the need for training would be obvious." *Lewis*, 561 F.3d at 1293. Plaintiffs seek to base their claim upon a municipal policy or custom of failing to train or supervise. *Doe v. Faerber*, 446 F. Supp. 2d 1311, 1316–17 (M.D. Fla. 2006) (citing *City of Canton*, 489 U.S. at 387). Failure to train or supervise can form the basis for § 1983 liability if (1) the government entity inadequately trains or supervises its employees, (2) this failure to adequately train or supervise is the policy of the government entity, and (3) the policy causes its employees to violate a citizen's constitutional rights. *Id.* (citing *City of Canton*, 489 U.S. at 389–91).

Based on the above principles, at this motion-to-dismiss stage, Plaintiffs have adequately alleged their § 1983 claim. First, Plaintiffs allege that Defendant inadequately trained or supervised its employees, despite knowing of the need to train and supervise its employees in certain areas. DE 6-2 ¶ 92. These included Defendant's awareness of school-policy violations by teachers, such as by taking students off campus in personal vehicles, being alone with students, engaging in inappropriate conduct and relationships with students, and communicating with students by text message and phone call. *Id.* These also included Defendant's awareness of "training deficits" in identifying sexual predatory behavior by a teacher, mandatory reporting requirements, and providing mental health support to students. *Id.*

Second, Plaintiffs allege that this failure to adequately train or supervise was a part of Defendant's policy of condoning and failing to appropriately respond to violations of school

policies meant to protect students. *Id.* ¶ 91.  Plaintiffs allege that Defendant had in place "policies, procedures, customs, and practices of condoning unlawful and/or improper acts and ignoring repeated and blatant violations of school policies by their employees . . . meant to protect students." DE 6-2 ¶ 90.  These policies, procedures, customs, and practices included allowing students to be taken off campus in teachers' personal vehicles; allowing students to be alone with teachers in various settings; allowing teachers to communicate with students by text message, cell phone, and email; and permitting teachers to violate school policies without corrective action. *Id.* Plaintiffs connect these school-policy violations to Mr. Conti's continued ability to groom and engage in an inappropriate relationship with S.L. *Id.* ¶ 93.

Third, Plaintiffs allege that Defendant's failure to train or supervise caused Mr. Conti to violate S.L.'s constitutional rights:

> 93.     SOUTH TECH displayed deliberate indifference to the rights of plaintiff JANE DOE, as secured by the Fourth and Fourteenth Amendments, by allowing CONTI to continue to possess his authority despite his known prior history of engaging in inappropriate relationships with students, violating school policies, frequently spending time alone with female students (including JANE DOE), grooming JANE DOE (i.e. daily text messages, special treatment, frequent time alone), exercise custody over JANE DOE, etc.
>
> 94.     SOUTH TECH displayed deliberate indifference to the rights of JANE DOE, as secured by the Fourth and Fourteenth Amendments, by allowing CONTI to possess his authority after his propensity to abuse that authority became evident.

*Id.*  That is, Plaintiffs allege that Defendant engaged in a custom or practice of tolerating violations of school policy meant to deter and prevent the type of abuse suffered by S.L.  These and Plaintiffs' factual allegations are sufficient at the pleading stage. *See Doe v. Faerber*, 446 F. Supp. 2d 1311, 1316–17 (M.D. Fla. 2006) (denying a motion to dismiss § 1983 claims premised on the school

18

board's policy of "fail[ing] to adequately train its personnel in the prevention of sexual abuse"). The Court therefore declines to dismiss Plaintiffs' § 1983 claim.

## V.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED**:

1. Defendant's Motion to Dismiss [DE 6] is **GRANTED IN PART and DENIED IN PART**. The Motion is granted insofar as Counts III and IV of Plaintiffs' Complaint are **DISMISSED**.

2. The Court's dismissals are **WITH LEAVE TO AMEND**. Plaintiffs shall file a second amended complaint no later than **August 28, 2025**. If Plaintiffs do not elect to file an amended complaint, Plaintiffs shall file a notice stating their intent not to file an amended complaint. No later than **September 11, 2025**, Defendant shall either respond to Plaintiffs' second amended complaint or file its answer to Plaintiffs' First Amended Complaint.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 7th day of August, 2025.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record